UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
PHILADELPHIA DIVISION

|  |  |
|---|---|
| **Road-Con, Inc.**; **Neshaminy Constructors, Inc.**; **Loftus Construction, Inc.**; **PKF-Mark III, Inc.**; and **Scott A. LaCava**,<br><br>　　　　　　Plaintiffs,<br><br>v.<br><br>**City of Philadelphia**; and **James Kenney**, in his official capacity as mayor of the City of Philadelphia,<br><br>　　　　　　Defendants. | Case No. 2:19-cv-01667-JS |

## STATEMENT OF MATERIAL FACTS FOR WHICH THERE IS NO GENUINE ISSUE TO BE TRIED

The plaintiffs respectfully submit this statement of material facts for which there is no genuine issue to be tried, in support of their motion for summary judgment. Each of these facts has either been admitted by the defendants, or is supported with unrebutted declarations.

**I.　　Undisputed Facts Regarding The City's Project Labor Agreements**

1.　　Plaintiffs Road-Con, Inc. ("Road-Con"), Neshaminy Constructors, Inc. ("Neshaminy"), Loftus Construction, Inc. ("Loftus"), and PKF-Mark III ("PKF") are heavy and highway contractors. *See* Defs.' Responses to Requests for Admission ¶¶ 1, 4, 9, 15 (attached as Exhibit 6).

2.　　Road-Con, Neshaminy, Loftus, and PKF are prequalified PennDOT contractors that regularly work on PennDOT projects with employees who are members of the United Steelworkers. *See* Affidavit of Albert D. Hoffman ¶ 5 (attached as Exhibit 1); Affidavit of

Joseph P. Canuso ¶ 5 (attached as Exhibit 2); Affidavit of Kevin J. Loftus ¶ 5 (attached as Exhibit 3); Affidavit of Thomas Isenberg ¶ 5 (attached as Exhibit 4).

3. Road-Con, Neshaminy, Loftus, and PKF have completed projects for government agencies, including PennDOT and SEPTA, which include projects owned by those agencies located within the city of Philadelphia. *See* Affidavit of Albert D. Hoffman ¶ 6 (attached as Exhibit 1); Affidavit of Joseph P. Canuso ¶ 6 (attached as Exhibit 2); Affidavit of Kevin J. Loftus ¶ 6 (attached as Exhibit 3); Affidavit of Thomas Isenberg ¶ 6 (attached as Exhibit 4).

4. Road-Con, Neshaminy, and Loftus are members of the Pennsylvania Heavy and Highway Contractors Bargaining Association (the "Association"). *See* Affidavit of Albert D. Hoffman ¶ 7 (attached as Exhibit 1); Affidavit of Joseph P. Canuso ¶ 7 (attached as Exhibit 2); *See* Affidavit of Kevin J. Loftus ¶ 7 (attached as Exhibit 3).

5. A copy of the collective bargaining agreement between the Association and the United Steelworkers is attached at Exhibit "A" to the Plaintiffs' Requests for Admission. *See* Defs.' Responses to Requests for Admission ¶ 13 (attached as Exhibit 6); Pls.' Requests for Admission at Ex. A (attached as Exhibit 7); Affidavit of Albert D. Hoffman ¶ 8 (attached as Exhibit 1); Affidavit of Joseph P. Canuso ¶ 8 (attached as Exhibit 2); Affidavit of Kevin J. Loftus ¶ 8 (attached as Exhibit 3).

6. The collective-bargaining agreement between the Association and the United Steelworkers governs the terms and conditions of employment at Road-Con, Neshaminy, and Loftus. *See* Affidavit of Albert D. Hoffman ¶ 9 (attached as Exhibit 1); Affidavit of Joseph P. Canuso ¶ 9 (attached as Exhibit 2); *See* Affidavit of Kevin J. Loftus ¶ 9 (attached as Exhibit 3).

7. PKF is a signatory to a collective-bargaining agreement with United Steelworkers Local 15024. *See* Defs.' Responses to Requests for Admission ¶ 17 (attached as Exhibit 6); Affidavit of Thomas Isenberg ¶ 7 (attached as Exhibit 4).

8. A copy of PKF's collective bargaining agreement with the United Steelworkers is attached at Exhibit "B" to the Plaintiffs' Requests for Admission. *See* Defs.' Responses to Requests for Admission ¶ 18; (attached as Exhibit 6); Pls.' Requests for Admission at Ex. B (attached as Exhibit 7); Affidavit of Thomas Isenberg ¶ 8 (attached as Exhibit 4).

9. The collective-bargaining agreement between PKF and the United Steelworkers governs the terms and conditions of employment at PKF. *See* Affidavit of Thomas Isenberg ¶¶ 7–8 (attached as Exhibit 4).

10. Neshaminy and PKF are taxpayers of the City of Philadelphia. *See* Affidavit of Joseph P. Canuso ¶ 11 & Ex. A (attached as Exhibit 2); Affidavit of Thomas Isenberg ¶¶ 10–12 & Exs. A–B (attached as Exhibit 4).

11. Plaintiff Scott A. LaCava ("LaCava") is an employee of Road-Con and a member of the United Steelworkers. *See* Affidavit of Scott A. LaCava ¶ 3 (attached as Exhibit 5).

12. On November 29, 2011, then-Mayor Michael A. Nutter signed Executive Order 15-11. *See* Defs.' Responses to Requests for Admission ¶ 29 (attached as Exhibit 6).

13. A copy of Executive Order 15-11 is attached as Exhibit "C" to the Plaintiffs' Requests for Admission. *See* Defs.' Responses to Requests for Admission ¶ 30 (attached as Exhibit 6); Pls.' Requests for Admission at Ex. C (attached as Exhibit 7).

14. A copy of the Philadelphia Public Projects Labor Agreement is attached as Exhibit "D" to the Plaintiffs' Requests for Admission. *See* Defs.' Responses to Requests for Admission ¶ 32 (attached as Exhibit 6); Pls.' Requests for Admission at Ex. D (attached as Exhibit 7).

15. The Philadelphia Public Projects Labor Agreement serves as a template and the City may modify that template for particular projects for which a PLA is imposed. *See* Defs.' Responses to Requests for Admission ¶ 36 (attached as Exhibit 6).

16. On December 31, 2015, then-Mayor Michael A. Nutter signed Executive Order 8-15. *See* Defs.' Responses to Requests for Admission ¶ 33 (attached as Exhibit 6).

17.  A copy of Executive Order 8-15 is attached as Exhibit "E" to the Plaintiffs' Requests for Admission. *See* Defs.' Responses to Requests for Admission ¶ 34 (attached as Exhibit 6); Pls.' Requests for Admission at Ex. E (attached as Exhibit 7).

18.  The United Steelworkers is neither a member nor an affiliate of the Building Trades Council. *See* Defs.' Responses to Requests for Admission at ¶ 40 (attached as Exhibit 6).

19.  As of June 29, 2020, the City of Philadelphia has never included the United Steelworkers in any of its project labor agreements. *See* Defs.' Responses to Requests for Admission at ¶ 41 (attached as Exhibit 6).

20.  Exhibit "F" to the Plaintiffs' Requests for Admission is a copy of an e-mail exchange between Road-Con and the city of Philadelphia. *See* Defs.' Responses to Requests for Admission ¶ 42 (attached as Exhibit 6).

21.  In March of 2019, the city of Philadelphia issued a solicitation of bids for the 15th Street Bridge Project. *See* Defs.' Responses to Requests for Admission ¶ 45 (attached as Exhibit 6).

22.  The bidding for the 15th Street Bridge Project opened on April 30, 2019. *See* Defs.' Responses to Requests for Admission ¶ 46 (attached as Exhibit 6).

23.  At the time the plaintiffs filed this lawsuit on April 18, 2019, the city planned to use a project labor agreement for the 15th Street Bridge Project. *See* Defs.' Responses to Requests for Admission ¶ 47 (attached as Exhibit 6).

24.  A copy of the Project Labor Agreement that was originally part of the solicitation for the 15th Street Bridge Project is attached at Exhibit "G" to the Plaintiffs' Requests for Admission. *See* Defs.' Responses to Requests for Admission ¶ 48 (attached as Exhibit 6); Pls.' Requests for Admission Ex. G (attached as Exhibit 7).

25.  Plaintiffs Road-Con, Neshaminy, and Loftus were interested in submitting bids for the 15th Street Bridge Project at the time the original complaint was filed on April 18, 2020. *See* Affidavit of Albert D. Hoffman ¶ 13 (attached as Exhibit 1); Affidavit of Joseph

P. Canuso ¶ 12 (attached as Exhibit 2); *See* Affidavit of Kevin J. Loftus ¶ 12 (attached as Exhibit 3).

26. Plaintiff Road-Con submitted a bid for the 15th Street Bridge Project. *See* Defs.' Responses to Requests for Admission ¶ 49 (attached as Exhibit 6); Affidavit of Albert D. Hoffman ¶ 13 (attached as Exhibit 1).

27. Plaintiffs Road Con, Neshaminy, and Loftus are qualified to perform the work on the 15th Street Bridge Project. *See* Affidavit of Albert D. Hoffman ¶ 14 (attached as Exhibit 1); Affidavit of Joseph P. Canuso ¶ 13 (attached as Exhibit 2); *See* Affidavit of Kevin J. Loftus ¶ 13 (attached as Exhibit 3).

28. Plaintiffs Road-Con and Loftus were recommended for qualification to bid on the 15th Street Bridge Project. *See* Defs.' Responses to Requests for Admission ¶ 50 (attached as Exhibit 6).

29. Plaintiffs Road Con, Neshaminy, and Loftus have been pre-qualified by Penn-DOT to perform the type of work necessary to complete the 15th Street Bridge Project. *See* Affidavit of Albert D. Hoffman ¶ 15 (attached as Exhibit 1); Affidavit of Joseph P. Canuso ¶ 14 (attached as Exhibit 2); *See* Affidavit of Kevin J. Loftus ¶ 14 (attached as Exhibit 3).

30. Because Road-Con, Neshaminy, and Loftus maintain a collective bargaining agreement with the United Steelworkers, they cannot perform work on the 15th Street Bridge Project with their current workforces. *See* Affidavit of Albert D. Hoffman ¶ 16 (attached as Exhibit 1); Affidavit of Joseph P. Canuso ¶ 15 (attached as Exhibit 2); *See* Affidavit of Kevin J. Loftus ¶ 15 (attached as Exhibit 3).

31. At the time the original complaint in this lawsuit was filed on April 18, 2019, Mr. LaCava could not work on the 15th Street Bridge Project unless he became a member of one of the unions listed in Schedule A of the 15th Street Bridge Project Labor Agreement and supported that union financially. *See* Affidavit of Scott A. LaCava ¶¶ 5–6 (attached as Exhibit 5).

32.   In March of 2019, the city of Philadelphia solicited bids for the Runway Project. *See* Defs.' Responses to Requests for Admission ¶ 54 (attached as Exhibit 6).

33.   At the time the plaintiffs filed this lawsuit on April 18, 2019, the city planned to use a project labor agreement for the Runway Project. *See* Defs.' Responses to Requests for Admission ¶ 55 (attached as Exhibit 6).

34.   A copy of the Project Labor Agreement that was originally part of the solicitation for the Runway Project is attached at Exhibit "H" to the Plaintiffs' Requests for Admission. *See* Defs.' Responses to Requests for Admission ¶ 56 (attached as Exhibit 6); Pls.' Requests for Admission at Ex. H (attached as Exhibit 7).

35.   Plaintiff Road-Con was interested in submitting a bid for the Runway Project at the time the original complaint was filed on April 18, 2020. *See* Affidavit of Albert D. Hoffman ¶ 18 (attached as Exhibit 1).

36.   Plaintiff Road-Con submitted a bid for the Runway Project. *See* Defs.' Responses to Requests for Admission ¶ 57 (attached as Exhibit 6); *See* Affidavit of Albert D. Hoffman ¶ 18 (attached as Exhibit 1).

37.   Plaintiff Road-Con is qualified to perform the work on the Runway Project. *See* Affidavit of Albert D. Hoffman ¶ 19 (attached as Exhibit 1).

38.   Plaintiff Road-Con was recommended for qualification to bid on the Runway Project. *See* Defs.' Responses to Requests for Admission ¶ 58 (attached as Exhibit 6); *See* Affidavit of Albert D. Hoffman ¶ 20 (attached as Exhibit 1).

39.   Because Road-Con maintains a collective-bargaining agreement with the United Steelworkers, it could not perform work on the Runway Project with its current workforces at the time the original complaint was filed. *See* Affidavit of Albert D. Hoffman ¶ 21 (attached as Exhibit 1).

40.   At the time the original complaint in this lawsuit was filed on April 18, 2019, Mr. LaCava could not work on the Runway Project unless he became a member of one of the

unions chosen by the city to participate in the Runway Project PLA and supported that union financially. *See* Affidavit of Scott A. LaCava ¶¶ 5–6 (attached as Exhibit 5).

41.   Because plaintiffs Road-Con, Neshaminy, Loftus, and PKF maintain a collective-bargaining agreement with the United Steelworkers, they were inelible to perform work on any city of Philadelphia public-works subject to a project labor agreement with their current workforces. *See* Affidavit of Albert D. Hoffman ¶ 22 (attached as Exhibit 1); Affidavit of Joseph P. Canuso ¶ 16 (attached as Exhibit 2); *See* Affidavit of Kevin J. Loftus ¶ 16 (attached as Exhibit 3); Affidavit of Thomas Isenberg ¶ 13 (attached as Exhibit 4).

42.   Because Mr. LaCava belongs to the United Steelworkers rather than a union belonging to the Philadelphia Building & Construction Trades Council, he was ineligible to perform work on any city of Philadelphia public-works project subject to a project labor agreement. *See* Affidavit of Scott A. LaCava ¶¶ 5–6 (attached as Exhibit 5).

43.   The city of Philadelphia used a project labor agreement on a majority of the public-works construction projects with an estimated cost in excess of $3,000,000 procured by the City from January 1, 2016, to April 18, 2019. *See* Stipulation of the Parties (attached as Exhibit 8).

## II.    Undisputed Facts Regarding The City's Diversity-And-Inclusion Goals

44.   Executive Orders 15-11 and 8-15 impose diversity-and-inclusion requirements on every union and contractor that performs city work subject to a project labor agreement. *See* Defs.' Responses to Requests for Admission ¶¶ 30, 34 (attached as Exhibit 6); Pls.' Requests for Admission at Ex. C (attached as Exhibit 7) (Executive Order 15-11); Pls.' Requests for Admission at Ex. E (attached as Exhibit 7) (Executive Order 8-15).

45.   Section 1(a)(iv) of Executive Order 8-15 allows a union to obtain city work subject to a PLA only if it "has identified member diversity as an organizational value and has established objectives for maintaining and increasing diversity among its apprentice and journeyman members." Pls.' Requests for Admission at Ex. E (attached as Exhibit 7) (text

of Executive Order 8-15); Defs.' Responses to Requests for Admission ¶ 34 (attached as Exhibit 6) (acknowledging authenticity of Executive Order 8-15).

46.  Section 5(e) of Executive Order 8-15 requires the city's project labor agreements to "[i]nclude diversity goals for appropriate labor organizations and contractors and requirements for annual reporting by participating labor organizations on their efforts and progress toward increasing diversity." Pls.' Requests for Admission at Ex. E (attached as Exhibit 7) (text of Executive Order 8-15); Defs.' Responses to Requests for Admission ¶ 34 (attached as Exhibit 6) (acknowledging authenticity of Executive Order 8-15).

47.  The Philadelphia Public Project Labor Agreement describes and implements the city's diversity requirements in Schedule C, which appears on pages 22–24 of the Philadelphia Public Projects Labor Agreement. Pls.' Requests for Admission at Ex. D (attached as Exhibit 7) (Philadelphia Public Projects Labor Agreement); Defs.' Responses to Requests for Admission ¶ 32 (attached as Exhibit 6) (acknowledging authenticity of Philadelphia Public Projects Labor Agreement).

48.  Section 1(c) of Schedule C establishes the numerical "goals" for unions and contractors that work on city construction projects. It says:

> The City shall establish goals for workforce diversity in City and City-funded construction projects. The current goals are based on the March 2009 Report of the Mayor's Advisory Commission on Construction Industry Diversity. For male minority and women employment in the Public Works Project [the goals] shall be at least:
>
> Male Minority: Thirty two (32) percent of all construction employment hours
>
> Women: Seven (7) percent of all construction employment hours.

Pls.' Requests for Admission at Ex. D (attached as Exhibit 7) (Philadelphia Public Projects Labor Agreement); Defs.' Responses to Requests for Admission ¶ 32 (attached as Exhibit 6) (acknowledging authenticity of Philadelphia Public Projects Labor Agreement).

49.   Section 2(b) of Schedule C specifies the diversity requirements for participating unions:

> The Union(s) shall set participation goals that will significantly increase participation of minority males and women. Such goals shall be consistent with the Commission Report and such Commission updates as may be issued.

Pls.' Requests for Admission at Ex. D (attached as Exhibit 7) (Philadelphia Public Projects Labor Agreement); Defs.' Responses to Requests for Admission ¶ 32 (attached as Exhibit 6) (acknowledging authenticity of Philadelphia Public Projects Labor Agreement).

50.   Sections 3(b) and 3(d) of Schedule C specify the diversity requirements for participating contractors. Section 3(b) says:

> The Contractors shall use their best efforts to add minority males and women to their permanent or steady workforces. The Contractors shall provide workforce demographic information to the City in advance of project commencement.

Pls.' Requests for Admission at Ex. D (attached as Exhibit 7) (Philadelphia Public Projects Labor Agreement); Defs.' Responses to Requests for Admission ¶ 32 (attached as Exhibit 6) (acknowledging authenticity of Philadelphia Public Projects Labor Agreement).

51.   Section 3(d) of Schedule C says:

> The Contractors shall use their best efforts to meet or exceed the goals established for minority males and women participation in Section 1 of this Schedule C.

Pls.' Requests for Admission at Ex. D (attached as Exhibit 7) (Philadelphia Public Projects Labor Agreement); Defs.' Responses to Requests for Admission ¶ 32 (attached as Exhibit 6) (acknowledging authenticity of Philadelphia Public Projects Labor Agreement).

## III.   Undisputed Facts Regarding The City's Unwillingness To Include The United Steelworkers In Its Project Labor Agreements

52.   For nearly a decade, the United Steelworkers and Steelworker-affiliated contractors have been asking the city of Philadelphia to amend its project labor agreement to allow

them to work on city construction projects. Declaration of Walter S. Zimolong ¶¶ 7–36 (attached as Exhibit 12).

53.  Inquiries and requests to include the United Steelworkers and Steelworker-affiliated contractors in the city's PLA have been made repeatedly by letter and by e-mail. Declaration of Walter S. Zimolong ¶¶ 7–36 (attached as Exhibit 12).

54.  One of these requests came from Crossing Construction Company, Inc., which wrote to city officials on March 31, 2011, and expressed interest in bidding on a city construction project subject to a PLA. *See* Decl. of Walter S. Zimolong ¶ 8 (attached as Exhibit 12); Ex. A to Zimolong Decl.

55.  Crossing Construction is a Steelworker-affiliated contractor, and it informed the city of its intent to bid on this project notwithstanding the PLA. *See* Decl. of Walter S. Zimolong ¶ 8 (attached as Exhibit 12); Ex. A to Zimolong Decl.

56.  On April 12, 2011, the city's law department wrote to Joseph M. Padavan, the president of United Steelworkers Local 15253, and explained that the city's PLA requires employees of city contractors to belong to a union affiliated with the Philadelphia Building and Construction Trades Council, and that Steelworker-affiliated contractors were therefore ineligible to work on city projects subject to a PLA:

> [N]o other labor organizations except those affiliated with the Philadelphia Building and Construction Trades has been identified as capable or stepped forward to request inclusion in a City sponsored project labor agreement. The City is currently unaware of the involvement of United Steelworkers members in City public works projects. . . .
>
> Unfortunately, for Project #70013, the project schedule will not permit the City to accommodate your interest in changing the requirements of this bid.

Decl. of Walter S. Zimolong ¶ 9 (attached as Exhibit 12); Ex. B to Zimolong Decl.

57.  The city's letter of April 12, 2011, did leave open the possibility that the city might consider including the United Steelworkers in future project labor agreements, but it made no promises in that regard. Decl. of Walter S. Zimolong ¶ 9 (attached as Exhibit 12); Ex. B

to Zimolong Decl. The letter also mentioned the diversity-and-inclusion goals imposed on signatories to the city's PLA, and it emphasized that the United Steelworkers would be required to agree to those requirements if it were to become a signatory:

> Equally important to the City is that the signatory unions have agreed to very significant goals and processes to increase diversity among their members, and to support local employment and diversity among the public works contractors. . . . The terms of the current project labor agreement related to union diversity will be required.

*Id.*

58.   On April 27, 2011, Joseph M. Padavan, the president of United Steelworkers Local 15253, wrote back to the city's chief deputy city solicitor and made clear that his union was willing and able to comply with the city's diversity-and-inclusion goals:

> We are in full agreement with all aspects of the PLA put in place by the City of Philadelphia and the Public Works Department. The terms of the current project labor agreement related to union diversity create no problem for my union or any of our contractors. We do not expect you to change any requirements of this bid except for the right of the United Steelworkers Union to be a part of this project, with the right to use our members and our Benefit Plans that cover our members.

Decl. of Walter S. Zimolong ¶ 10 (attached as Exhibit 12); Ex. C to Zimolong Decl.

59.   Mr. Padavan closed his letter of April 27, 2011, with an appeal to include the Steelworkers in the city's project labor agreement:

> The United Steelworkers Union, Local 15253, has a state certified Apprenticeship Program and is very progressive in the recruitment of minority candidates. We have many members that live in the Philadelphia area. We agree that you must have cohesiveness in such complex, costly, and time sensitive projects. Our members deserve the right to be a part of this PLA project and all future PLA's authorized by the City of Philadelphia and any of its departments.

Decl. of Walter S. Zimolong ¶ 10 (attached as Exhibit 12); Ex. C to Zimolong Decl.

60.   There is no evidence that the city ever responded to Mr. Padavan's letter of April 27, 2011. Decl. of Walter S. Zimolong ¶ 11 (attached as Exhibit 12).

61.  On August 13, 2013, Arnold Shep Cohen, an attorney representing United Steel-workers Local 15024, wrote to city officials and asked them to allow the United Steelwork-ers to become a signatory to the city's project labor agreement. *See* Decl. of Walter S. Zim-olong ¶ 12 (attached as Exhibit 12); Ex. D to Zimolong Decl.

62.  United Steelworkers Local 15024 has a collective-bargaining agreement with PKF-Mark III, Inc., one of the plaintiffs in this lawsuit. *See* Decl. of Walter S. Zimolong ¶ 12 (attached as Exhibit 12).

63.  There is no evidence that the city ever responded to Mr. Cohen's letter of August 13, 2013. Decl. of Walter S. Zimolong ¶ 13 (attached as Exhibit 12).

64.  On August 30, 2013, Ronald L. Tobia, yet another attorney representing United Steelworkers Local 15024, wrote to city officials and reiterated the request to allow the United Steelworkers to become a signatory to the city's project labor agreement. *See* Decl. of Walter S. Zimolong ¶ 14 (attached as Exhibit 12); Ex. E to Zimolong Decl.

65.  There is no evidence that the city ever responded to Mr. Tobia's letter of August 30, 2013. Decl. of Walter S. Zimolong ¶ 15 (attached as Exhibit 12).

66.  On September 12, 2018, John E. Shinn, the District 4 Director of the United Steel-workers, and Glenn Ely, the president of PKF-Mark III, co-wrote a letter to the city of Philadelphia's law department and asked it to allow the United Steelworkers to become a signatory to the project labor agreement. *See* Decl. of Walter S. Zimolong ¶ 16 (attached as Exhibit 12); Ex. F to Zimolong Decl.

67.  In response to this letter and other correspondence, Deputy Mayor Richard Lazer wrote to Walter S. Zimolong, counsel for the plaintiffs, on November 26, 2018, and ex-plained that the city would be "willing" to include the following language in its project labor agreements, which would allow the United Steelworkers and its affiliated contractors to obtain city work subject to the PLA:

> In the event that a contractor bound by a Collective Bargaining Agreement (CBA) with the United Steelworkers (USW) is the successful bidder, the

contractor will be permitted to utilize its USW workforce and its USW CBA provided that the contractor adheres to the conditions and economic terms of the agreement excluding any hiring hall obligation or union security provision. And provided further that the USW contractor is either a protected contractor, under the terms of the Harmony Agreement of February 24, 1994 or has been organized by USW pursuant to paragraph 3 (b) of the Harmony Agreement for at least 120 days prior to the issuance of any bid specification for the Project and provided that it normally performs the type of work being let in the geographical area of the project.

Decl. of Walter S. Zimolong ¶ 17 (attached as Exhibit 12); Ex. G to Zimolong Decl.

68. Mr. Lazer's letter of November 26, 2018, also said that the city would "require" the United Steelworkers to "agree to the conditions of Schedule C of the PLA," which contains the city's diversity-and-inclusion requirements. Decl. of Walter S. Zimolong ¶ 17 (attached as Exhibit 12); Ex. G to Zimolong Decl.

69. Mr. Lazer's letter of November 26, 2018, closed by saying: "We can begin including the new USW language in PLAs as soon as we have received the required affirmation from the United Steelworkers." Decl. of Walter S. Zimolong ¶ 17 (attached as Exhibit 12); Ex. G to Zimolong Decl. at 2.

70. On January 3, 2019, Nathan Kilbert, an assistant general counsel for the United Steelworkers, wrote to Mr. Lazer in response to the letter that Mr. Lazer sent to Mr. Zimolong on November 26, 2018. Decl. of Walter S. Zimolong ¶ 18 (attached as Exhibit 12); Ex. H to Zimolong Decl.

71. In his letter of January 3, 2019, Mr. Kilbert asked Mr. Lazer some questions about what the diversity-and-inclusion requirements would require of the United Steelworkers:

The USW has a few questions related to the obligations contained in Schedule C of the PLA. The USW desires to increase the representation of minority men and women in construction occupations, and it would take seriously its obligations under Schedule C if it became a party to a City of Philadelphia PLA. The USW desires to know what participation goals under Schedule C have been found to be appropriate, both for the project workforce and for apprenticeship programs, for other unions and on other projects. The USW also wishes to understand what types of outreach efforts to minority men and women are regarded as appropriate and what alternatives to apprenticeship recruitment it should consider evaluating. Would it be possible

for your office to answer these questions or to provide example reports of compliant activities by other unions (redacted, if necessary)?

Finally, the USW is concerned with the third party monitoring discussed in Schedule C. Could you indicate whether any current projects are subject to such monitoring, and how many projects have been subject to such monitoring since 2008? What range of costs could be expected if third party monitoring is implemented on a specific project?

Decl. of Walter S. Zimolong ¶ 18 (attached as Exhibit 12); Ex. H to Zimolong Decl.

72.    There is no evidence that the city ever responded to Mr. Kilbert's letter of January 3, 2019. Decl. of Walter S. Zimolong ¶ 19 (attached as Exhibit 12).

73.    There is no evidence that Mr. Lazer or any city official has ever answered the questions in Mr. Kilbert's letter of January 3, 2019. Decl. of Walter S. Zimolong ¶ 19 (attached as Exhibit 12).

74.    After Mr. Kilbert's letter of January 3, 2019, both Mr. Kilbert and Walter S. Zimolong, counsel for the plaintiffs, made repeated and unsuccessful efforts to follow up with Mr. Lazer about adding the United Steelworkers to the city's project labor agreement. Decl. of Walter S. Zimolong ¶¶ 20–36 (attached as Exhibit 12); Exs. I–O to Zimolong Decl.

75.    Each of these efforts was met with silence (or near silence) from Mr. Lazer and city officials. Decl. of Walter S. Zimolong ¶¶ 20–36 (attached as Exhibit 12); Exs. I–O to Zimolong Decl.

76.    On March 5, 2019, Mr. Zimolong e-mailed Mr. Lazer and wrote:

Mr. Lazer:

You should recall that I represent PKF Mark III, a USW signatory contractor. Copied on this email is Nate Kilbert, assistant general counsel to the USW. Mr. Kilbert and I would like to arrange for a conference call with you to discuss finalizing the changes to the Philadelphia PLA that would include the USW.

Mr. Kilbert and I are available this Friday, March 8, 2019 and next Thursday, March 14, 2019. Please let us know if either of those dates work for you and we can circulate a conference call number.

Decl. of Walter S. Zimolong ¶ 21 (attached as Exhibit 12); Ex. I to Zimolong Decl.

77.  Mr. Kilbert was cc'd on Mr. Zimolong's e-mail of March 5, 2019. Decl. of Walter S. Zimolong ¶ 21 (attached as Exhibit 12); Ex. I to Zimolong Decl.

78.  Mr. Lazer did not respond to Mr. Zimolong's e-mail of March 5, 2019. Decl. of Walter S. Zimolong ¶ 22 (attached as Exhibit 12).

79.  On March 14, 2019, Mr. Zimolong e-mailed Mr. Lazer again and wrote:

> Mr. Lazer:
>
> We are following up on the below. Please let us know you[r] availability.

Decl. of Walter S. Zimolong ¶ 23 (attached as Exhibit 12); Ex. J to Zimolong Decl.

80.  On March 14, 2019, Mr. Lazer responded to Mr. Zimolong's e-mail of March 14, 2019, and wrote:

> Mr. Zimolong
>
> Let me follow up with my folks and will get back with you.
>
> Rich

Decl. of Walter S. Zimolong ¶ 24 (attached as Exhibit 12); Ex. K to Zimolong Decl.

81.  Later on March 14, 2019, Mr. Zimolong e-mailed Mr. Lazer again and wrote:

> Mr. Lazer:
>
> What did your folks say?

Decl. of Walter S. Zimolong ¶ 25 (attached as Exhibit 12); Ex. K to Zimolong Decl.

82.  Mr. Lazer did not respond to Mr. Zimolong's follow-up e-mail of March 14, 2019. Decl. of Walter S. Zimolong ¶ 26 (attached as Exhibit 12).

83.  On March 19, 2019, Mr. Zimolong e-mailed Mr. Lazer once again, this time cc'ing Mr. Kilbert and Albert Hoffman, the president of Road-Con. Decl. of Walter S. Zimolong ¶ 27 (attached as Exhibit 12); Ex. L to Zimolong Decl.

84.  In that e-mail of March 19, 2019, Mr. Zimolong wrote:

> Mr. Lazer:

I am reaching out again regarding the Philadelphia PLA and the USW. Road-Con, Inc. ("Road-Con") is a USW signatory contractor. I understand that Road-Con is interested in bidding on the above referenced project that is subject to the – unamended – PLA. Road-Con has inquired with Anthony Santaniello, Public Works Manager, about the impact of the PLA on USW signatory contractors. Mr. Santaniello said he would forward the inquiry to the Law Department.

At the time of the discussion between Road-Con and Mr. Santaniello, Road-Con was unaware of the considerable progress we have made toward resolving the issues that currently prevent USW signatories from bidding on Philadelphia projects subject to the standard PLA. I can only assume based on Mr. Santaniello's reply that he was as well.

From my perspective, we are at the 1 yard line in getting this issue resolved. I believe the final impediment towards resolution is squaring away some questions that counsel for the USW, Nate Kilbert (who is copied on this email), had. Since this bid is imminent, it['s] time for everyone to lean in here to get this situation resolved and avoid what would be needless litigation, especially since we all agree in princip[le] that the USW should be included in the PLA.

Therefore, can you please provide us with dates for a final phone call or in person meeting with you so that whatever questions the USW has can get resolved and USW contractors, like Road-Con, can move forwar[d] with bidding on Philadelphia projects and establishing a good working relationship with the City?

Decl. of Walter S. Zimolong ¶ 27 (attached as Exhibit 12); Ex. L to Zimolong Decl.

85.   Mr. Lazer did not respond to Mr. Zimolong's e-mail of March 19, 2019. Decl. of Walter S. Zimolong ¶ 28.

86.   On March 22, 2019, Mr. Zimolong e-mailed Mr. Lazer again. Decl. of Walter S. Zimolong ¶ 29 (attached as Exhibit 12); Ex. L to Zimolong Decl.

87.   In that e-mail of March 22, 2019, Mr. Zimolong wrote:

Mr. Lazer:

I am following up on the below.

Decl. of Walter S. Zimolong ¶ 29 (attached as Exhibit 12); Ex. L to Zimolong Decl.

88. Mr. Lazer did not respond to Mr. Zimolong's follow-up e-mail of March 22, 2019. Decl. of Walter S. Zimolong ¶ 30.

89. On March 28, 2019, Samantha M. Hart, an employee of Road-Con, e-mailed city officials Anthony Santaniello and Theresa Pilla. Decl. of Walter S. Zimolong ¶ 31 (attached as Exhibit 12); Ex. N to Zimolong Decl.

90. In that e-mail of March 28, 2019, Ms. Hart wrote:

> Road Con, Inc is a signatory with the United Steel Workers (heavy and Highway construction). Can the United Steel Workers be added to the Project Labor Agreement?

Decl. of Walter S. Zimolong ¶ 31 (attached as Exhibit 12); Ex. N to Zimolong Decl.

91. On March 28, 2019, Mr. Pilla responded to Ms. Hart's e-mail and wrote:

> Regarding the project labor agreement, per our law department: The United Steelworkers are not one of the unions that are signatory to the Project Labor Agreement for this project. As stated in Article IV of the Project Labor Agreement, the "Unions" (defined as the Affiliates of the Philadelphia Building and Construction Trades Council), are the sole and exclusive bargaining representatives of all craft employees working on the Project within the scope of this Agreement. Also, the Union(s) are recognized as the source of employment referrals.

Decl. of Walter S. Zimolong ¶ 32 (attached as Exhibit 8); Ex. N to Zimolong Decl.

92. Finally, on March 29, 2019, Nathan Kilbert wrote to Mr. Lazer. Decl. of Walter S. Zimolong ¶ 33 (attached as Exhibit 12); Ex. O to Zimolong Decl.

93. In that letter of March 29, 2019, Mr. Kilbert wrote:

> Deputy Mayor Lazer,
>
> I wrote to you on January 3 regarding the potential participation of the [United Steelworkers] in City of Philadelphia Project Labor Agreements and posing certain questions related to the obligations contained in Schedule C of the PLA. I have enclosed a copy of that letter. Unfortunately, despite several attempts at follow-up by me and by Wally Zimolong, attorney for USW-represented contractor PKF Mark Ill, we have received no substantive response.
>
> In your November 26, 2018, letter to Mr. Zimolong, you expressed the City's willingness to modify the PLA language to permit USW-represented

contractors to participate. My January 3 letter was an attempt to engage in good faith to facilitate USW agreement to the terms of the PLA.

This week, the City informed Road-Con, Inc., a USW-represented contractor, that affiliates of the Philadelphia Building and Construction Trades Council are the sole and exclusive bargaining representatives of all craft employees working on a projects within the scope of the PLA. A copy of this March 28 correspondence is attached.

Has the City's position regarding USW-represented contractors' participation in City PLAs changed? If not, please provide the information requested in my January 3 letter and refrain from awarding contracts based upon bidding processes that are arbitrarily excluding USW-represented contractors, including Runway 6-24 Pavement Rehabilitation at the Northeast Philadelphia Airport and the 15 111 Street Bridge Rehab.

Kindly advise as to the City's position as soon as possible.

Decl. of Walter S. Zimolong ¶ 33 (attached as Exhibit 12); Ex. O to Zimolong Decl.

94. There is no evidence that the city ever responded to Mr. Kilbert's letter of March 29, 2019. Decl. of Walter S. Zimolong ¶ 34 (attached as Exhibit 12).

95. Deputy Mayor Richard Lazer has stated the following in a sworn declaration:

[I]n or around 2018 the City engaged in discussions with the United Steelworkers in an attempt to include the United Steelworkers as a signatory to the City's PLAs. The discussions were ultimately unsuccessful because the United Steelworkers believed that their organization could not comply with the diversity and inclusion goals of the City's PLAs.

Declaration of Richard Lazer ¶ 11 (attached as Exhibit 13).

96. Deputy Mayor Richard Lazer has stated that the city's diversity-and-inclusion goals were the but-for cause of the city's refusal to add the United Steelworkers as a signatory to the PLA. Declaration of Richard Lazer ¶ 11 (attached as Exhibit 13).

97. The United Steelworkers has been excluded from the city's project labor agreement on account of the city's diversity-and-inclusion goals, which has rendered its members and affiliated contractors ineligible to work on city projects subject to a PLA. Declaration of Richard Lazer ¶ 11 (attached as Exhibit 13).

## IV. Undisputed Facts Regarding The City Of Philadelphia's Discrimination Against Steelworker-Affiliated Contractors

98. Plaintiff Road-Con submitted the lowest responsible bid on a project five or six years ago to install safety bollards in front of the Philadelphia Airport terminal, and this contract did not have a project labor agreement attached to it. Hoffman Dep. 34:17–35:3 (attached as Exhibit 14).

99. Despite the fact that Road-Con submitted the lowest responsible bid for the Philadelphia Airport project, the city refused to award the contract to Road-Con. Hoffman Dep. 32:14–18; 35:2–35:5 (attached as Exhibit 14).

100. When Albert D. Hoffman, the President of Road-Con, asked city officials why the city would not award the Philadelphia Airport project to Road-Con, despite the fact that Road-Con had submitted the lowest responsible bid, Mr. Hoffman was told that "we were not of the right union type and it was causing some internal friction inside the City." Hoffman Dep. 35:15–17; 37:25–38:8 (attached as Exhibit 14).

101. In the winter of 2019, Road-Con submitted the lowest responsible bid on another city of Philadelphia contract that did not have a project labor agreement attached, yet the city never presented a contract to Road-Con despite the fact that Road-Con had submitted the lowest responsible bid. Hoffman Dep. 31:16–32:13; 33:24–34:2; 37:5–24 (attached as Exhibit 14).

102. So on at least two occasions, Road-Con has submitted the lowest responsible bid on a city of Philadelphia contract that did not have a PLA attached, yet the city still refused to execute the contract with Road-Con despite the fact Road-Con submitted the lowest responsible bid. Hoffman Dep. 32:9–13 (attached as Exhibit 14).

## V. Undisputed Facts Regarding Executive Order 4-20

103. On October 15, 2020, Mayor James Kenney unilaterally rescinded Executive Order 8-15 and replaced it with a new executive order that governs the city's project labor agreements. *See* Executive Order 4-20 (attached as Exhibit 15).

104. Executive Order 4-20 continues to enforce the diversity-and-inclusion goals that appear in Schedule C of Philadelphia Public Projects Labor Agreement. *See* Executive Order 4-20 §§ 1(a)(iv), 4(c) (attached as Exhibit 15).

Respectfully submitted.

|  |  |
|---|---|
| WALTER S. ZIMOLONG | /s/ Jonathan F. Mitchell |
| Pennsylvania Bar No. 89151 | JONATHAN F. MITCHELL |
| Zimolong, LLC | Pennsylvania Bar No. 91505 |
| P.O. Box 552 | Mitchell Law PLLC |
| Villanova, Pennsylvania 19085 | 111 Congress Avenue, Suite 400 |
| (215) 665-0842 (phone) | Austin, Texas 78701 |
| wally@zimolonglaw.com | (512) 686-3940 (phone) |
|  | (512) 686-3941 (fax) |
|  | jonathan@mitchell.law |

Dated: December 6, 2021                     *Counsel for Plaintiffs*

# CERTIFICATE OF SERVICE

I certify that on December 6, 2021, I served this document through CM/ECF upon:

AMY M. KIRBY
LYDIA FURST
Deputy City Solicitor
City of Philadelphia Law Department
1515 Arch Street, 15th Floor
Philadelphia, Pennsylvania 19102
(215) 683-3566
amy.kirby@phila.gov
lydia.furst@phila.gov

*Counsel for Defendants*

EDWARD T. KANG
SUSAN MOON O
Kang Haggerty & Fetbroyt LLC
123 South Broad Street, Suite 1670
Philadelphia, Pennsylvania 19109
(215) 525-5850
ekang@khflaw.com
so@khflaw.com

*Counsel for Intervenors*

 /s/ Jonathan F. Mitchell
JONATHAN F. MITCHELL
*Counsel for Plaintiffs*