# Exhibit 6
(Defendants' Answers to Plaintiffs' First Set of Requests For Admission)

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ROAD-CON, INC.; NESHAMINY CONSTRUCTORS, INC.; LOFTUS CONSTRUCTION, INC.; PKF-MARK III; and SCOTT A LAVACA<br>    Plaintiff<br><br>vs.<br><br>THE CITY OF PHILADELPHIA; and JAMES KENNEY, In his official capacity as Mayor of the City of Philadelphia<br>    Defendants | Case No.<br>2:19-cv-01667-JS |

## DEFENDANTS' RESPONSES AND OBJECTIONS TO PLAINTIFFS' REQUESTS FOR ADMISSION

Pursuant to Rule 36 of the Federal Rules of Civil Procedure, Defendants Mayor James Kenney and the City of Philadelphia (the "City"), by and through their undersigned attorneys, respond to Plaintiffs' Requests for Admission (the "Requests") as follows.

## GENERAL OBJECTIONS

1. The City objects to all of the Requests on the basis that they repeat nearly verbatim allegations contained in the Second Amended Complaint in this case. The City has already answered the Second Amended Complaint and admitted or denied each allegation contained therein. As the Requests are duplicative of the pleadings in this case, they unnecessarily burden the City and do not assist in resolving the issues in this case.

## SPECIFIC RESPONSES TO REQUESTS FOR ADMISSION

1. Plaintiff Road-Con, Inc. ("Road-Con") is a heavy and highway contractor.

**ANSWER:** Admitted.

2. Road-Con's principal place of business is located at 902 Camaro Run Drive, West Chester, Pennsylvania 19380.

**ANSWER:** After reasonable inquiry, the information that the City knows or can readily obtain is insufficient to enable it to admit or deny this Request.

3. Road-Con is a prequalified PennDOT contractor that regularly works on PennDOT projects with employees who are members of the United Steelworkers.

**ANSWER:** After reasonable inquiry, the information that the City knows or can readily obtain is insufficient to enable it to admit or deny this Request.

4. Neshaminy Constructors, Inc. ("Neshaminy") is a heavy and highway contractor.

**ANSWER:** Admitted.

5. Neshaminy's principal place of business is located at 1839 Bustleton Pike, P.O. Box 405, Feasterville-Trevose, Pennsylvania 19053-7309.

**ANSWER:** After reasonable inquiry, the information that the City knows or can readily obtain is insufficient to enable it to admit or deny this Request.

6. Neshaminy is a taxpayer of the City of Philadelphia.

**ANSWER:** After reasonable inquiry, the information that the City knows or can readily obtain is insufficient to enable it to admit or deny this Request.

7. Neshaminy pays Business Income and Receipts Tax (BIRT).

**ANSWER:** After reasonable inquiry, the information that the City knows or can readily obtain is insufficient to enable it to admit or deny this Request.

8. Neshaminy is a prequalified PennDOT contractor that regularly works on PennDOT projects with employees who are members of the United Steelworkers.

**ANSWER:** After reasonable inquiry, the information that the City knows or can readily

obtain is insufficient to enable it to admit or deny this Request.

9. Loftus Construction, Inc. ("Loftus") is a heavy and highway contractor.

**ANSWER:** Admitted.

10. Loftus's principal place of business is located at 1903 Taylors Lane, Cinnaminson, New Jersey 08077.

**ANSWER:** After reasonable inquiry, the information that the City knows or can readily obtain is insufficient to enable it to admit or deny this Request.

11. Loftus is a prequalified PennDOT contractor that regularly works on PennDOT projects with employees who are members of the United Steelworkers.

**ANSWER:** After reasonable inquiry, the information that the City knows or can readily obtain is insufficient to enable it to admit or deny this Request.

12. Road-Con, Neshaminy, and Loftus are members of the Pennsylvania Heavy and Highway Contractors Bargaining Association (the "Association").

**ANSWER:** After reasonable inquiry, the information that the City knows or can readily obtain is insufficient to enable it to admit or deny this Request.

13. A copy of the collective bargaining agreement between the Association and the United Steelworkers is attached at Exhibit "A."

**ANSWER:** Admitted.

14. The collective-bargaining agreement between the Association and the United Steelworkers governs the terms and conditions of employment at Road-Con, Neshaminy, and Loftus.

**ANSWER:** The City objects to this Request on the grounds that it calls for a legal conclusion that is an ultimate legal issue in the case. Subject to and without waiver of the

foregoing objection, after reasonable inquiry, the information that the City knows or can readily obtain is insufficient to enable it to admit or deny this Request.

15. PKF-Mark III ("PKF") is a heavy and highway contractor.

**ANSWER:** Admitted.

16. PKF's principal place of business is located at 170 Pheasant Run, Newtown, Pennsylvania 18940.

**ANSWER:** After reasonable inquiry, the information that the City knows or can readily obtain is insufficient to enable it to admit or deny this Request.

17. PKF is a signatory to a collective-bargaining agreement with United Steelworkers Local 15024.

**ANSWER:** Admitted.

18. A true and correct copy of PKF's collective bargaining agreement with the United Steelworkers is attached at Exhibit "B."

**ANSWER:** Admitted.

19. The collective-bargaining agreement between PFK and the United Steelworkers governs the terms and conditions of employment at PKF.

**ANSWER:** The City objects to this Request on the grounds that it calls for a legal conclusion that is an ultimate legal issue in the case. Subject to and without waiver of the foregoing objection, after reasonable inquiry, the information that the City knows or can readily obtain is insufficient to enable it to admit or deny this Request.

20. PKF is a prequalified PennDOT contractor that regularly works on PennDOT projects with employees who are members of the United Steelworkers.

**ANSWER:** After reasonable inquiry, the information that the City knows or can readily

obtain is insufficient to enable it to admit or deny this Request.

21. PKF is also a taxpayer of the City of Philadelphia.

**ANSWER:** After reasonable inquiry, the information that the City knows or can readily obtain is insufficient to enable it to admit or deny this Request.

22. PKF pays Business Income and Receipts Tax (BIRT), sales and use tax, and city wage taxes to the city.

**ANSWER:** After reasonable inquiry, the information that the City knows or can readily obtain is insufficient to enable it to admit or deny this Request.

23. Scott A. LaCava ("LaCava") is an adult individual who resides in the Commonwealth of Pennsylvania.

**ANSWER:** After reasonable inquiry, the information that the City knows or can readily obtain is insufficient to enable it to admit or deny this Request.

24. LaCava is an employee of Road-Con.

**ANSWER:** After reasonable inquiry, the information that the City knows or can readily obtain is insufficient to enable it to admit or deny this Request.

25. LaCava is a member of the United Steelworkers.

**ANSWER:** After reasonable inquiry, the information that the City knows or can readily obtain is insufficient to enable it to admit or deny this Request.

26. The employees of Road-Con, Neshaminy, Loftus, and PKF have chosen the United Steelworkers to be their bargaining representative.

**ANSWER:** After reasonable inquiry, the information that the City knows or can readily obtain is insufficient to enable it to admit or deny this Request.

27. The collective-bargaining agreement between PFK and the United Steelworkers

governs the terms and conditions of employment at PKF.

**ANSWER:** The City objects to this Request on the grounds that it calls for a legal conclusion that is an ultimate legal issue in the case. Subject to and without waiver of the foregoing objection, after reasonable inquiry, the information that the City knows or can readily obtain is insufficient to enable it to admit or deny this Request.

28. Road-Con, Neshaminy, Loftus, and PKF have completed many projects for state and federal agencies, including PennDOT and SEPTA, which include projects owned by those agencies located within the City.

**ANSWER:** After reasonable inquiry, the information that the City knows or can readily obtain is insufficient to enable it to admit or deny this Request.

29. On November 29, 2011, then-Mayor Michael A. Nutter signed the Executive Order 15-11.

**ANSWER:** Admitted.

30. An authentic copy of Executive Order 15-11 is attached as Exhibit "C."

**ANSWER:** Admitted.

31. Attached to the Executive Order 15-11 is a document entitled "Philadelphia Public Projects Labor Agreement."

**ANSWER:** Admitted.

32. An authentic copy of the Philadelphia Public Projects Labor Agreement is attached to this stipulation as Exhibit "D."

**ANSWER:** Admitted.

33. On December 31, 2015, then-Mayor Michael A. Nutter signed the Executive Order 8-15.

**ANSWER:** Admitted.

34. An authentic copy of Executive Order 8-15 is attached as Exhibit "E."

**ANSWER:** Admitted.

35. Attached to the Executive Order 8-15 is a document entitled "Philadelphia Public Projects Labor Agreement."

**ANSWER:** Denied. There is no document entitled "Philadelphia Public Projects Labor Agreement attached to Executive Order 8-15.

36. This Philadelphia Public Projects Labor Agreement serves as a model project labor agreement for the city to use when it decides to impose a project labor agreement on a public-works project.

**ANSWER:** The City objects to this Request on the grounds that the term "model" is vague and undefined. The City admits only that the Philadelphia Public Projects Labor Agreement serves as a template and that the City may modify the template for particular projects.

37. The City has been imposing project labor agreements on all public-works construction projects with an estimated cost in excess of $3,000,000.

**ANSWER:** Denied.

38. The City and the Mayor have imposed project labor agreements even when a City Agency has not recommended a PLA for a particular public-works project.

**ANSWER:** Denied.

39. The unions currently affiliated with the Philadelphia Building & Construction Trades Council are:

a. I.B.E.W. Local 98;

b. I.B.E.W. Local 269;

c. I.B.E.W. Local 654;

d. Elevator Constructors Local 5;

e. SEIU 32BJ;

f. Insulators & Allied Workers Local 14;

g. Insulators & Allied Workers Local 89;

h. Cement Masons Plasters Union Local 592;

i. Operative Plasters and Cement Masons' Local 8;

j. Iron Workers Local 401;

k. Iron Workers Local 451;

l. Laborers' District Council of the Metropolitan Philadelphia Area and Vicinity;

m. Laborers' Local 135;

n. Laborers' Local 57;

o. Laborers' Local 332;

p. Laborers' Local 413;

q. Operating Engineers Local 835;

r. Operating Engineers Local 542;

s. Painters & Allied Trades, District Council 21;

t. Plumbers Local 690;

u. Reinforced Iron Workers Riggers & Machinery Movers Local Union 405;

v. Roofers Local 30;

w. IATSE Local 8;

x. Sheetmetal Workers Local 19;

y. Sprinklerfitters Local 692;

z. Steamfitters Local 420;

aa. Teamster Locals 312, 384, and 107; and

bb. Bricklayers and Allied Craftworkers Local 1.

**ANSWER:** After reasonable inquiry, the information that the City knows or can readily obtain is insufficient to enable it to admit or deny this Request.

40. As of the date on which this request for admission is answered, the United Steelworkers is neither a member nor an affiliate of the Building Trades Council.

**ANSWER:** Admitted.

41. As of the date on which this request for admission is answered, the City has never included the United Steelworkers in any of its project labor agreements.

**ANSWER:** Admitted.

42. A true and correct copy of the city's response to an e-mail inquiry sent by Road-Con on March 28, 2019, is attached at Ex. "F."

**ANSWER:** Admitted. However, the City makes no admission with respect to the admissibility of Ex. F into evidence.

43. Road-Con, Neshaminy, Loftus, and PKF are qualified in all respects to perform work on City public-works projects that are subject to a project labor agreement.

**ANSWER:** Denied.

44. At the time the original complaint in this lawsuit was filed on April 18,

9

2019, the Mayor and the City were imposing project labor agreements on all public works construction projects procured by the City with an estimated cost in excess of $3,000,000.

**ANSWER:** Denied.

45. In March 2019, the City issued a solicited bids for the 15th Street Bridge Project.

**ANSWER:** Admitted.

46. The bidding for the 15th Street Bridge Project opened on April 23, 2019.

**ANSWER:** Denied. Per the PHL Contracts website, opening of bids for this project occurred on April 30, 2019.

47. At the time the original complaint in this lawsuit was filed on April 18, 2019, the city was using a project labor agreement on the 15th Street Bridge Project.

**ANSWER:** Denied as stated. The City admits that at the time the original complaint in this lawsuit was filed, the city planned to use a project labor agreement for the 15th Street Bridge Project. However, the City withdrew the Project Labor Agreement for this Project and the project proceeded without any Project Labor Agreement.

48. An authentic copy of the Project Labor Agreement that was originally part of the solicitation for the 15th Street Bridge Project is attached at Exhibit "G."

**ANSWER:** Admitted.

49. Plaintiffs Road-Con, Neshaminy, and Loftus were interested in submitting bids for the 15th Street Bridge Project at the time the original

complaint was filed on April 18, 2020.

**ANSWER:** After reasonable inquiry, the information that the City knows or can readily obtain is insufficient to enable it to admit or deny this Request. At this time, the City can admit only that Plaintiff Road-Con submitted a bid for the 15th Street Bridge Project.

50. Plaintiffs Road Con, Neshaminy, and Loftus are qualified to perform the work on the 15th Street Bridge Project.

**ANSWER:** After reasonable inquiry, the information that the City knows or can readily obtain is insufficient to enable it to admit or deny this Request. At this time, the City can admit only that Plaintiffs Road-Con and Loftus were recommended for qualification to bid on the 15th Street Bridge Project.

51. Plaintiff Road Con, Neshaminy, and Loftus have been pre-qualified by PennDOT to perform the type of work necessary to complete the 15th Street Bridge Project.

**ANSWER:** After reasonable inquiry, the information that the City knows or can readily obtain is insufficient to enable it to admit or deny this Request.

52. Because Road-Con, Neshaminy, and Loftus maintain a collective bargaining agreement with the United Steelworkers, they cannot perform work on the 15th Street Bridge Project with their current workforces.

**ANSWER:** The City objects to this Request on the grounds that it calls for a legal conclusion that is an ultimate legal issue in the case. Subject to and without waiver of the foregoing objection, after reasonable inquiry, the information that the City knows or can readily obtain is insufficient to enable it to admit or deny this Request.

53. At the time the original complaint in this lawsuit was filed on April 18,

2019, LaCava could not work on the 15th Street Bridge Project unless he became a member of one of the unions listed in Schedule A of the 15th Street Bridge Project Labor Agreement and supported that union financially.

**ANSWER:** The City objects to this Request on the grounds that it calls for a legal conclusion that is an ultimate legal issue in the case. Subject to and without waiver of the foregoing objection, after reasonable inquiry, the information that the City knows or can readily obtain is insufficient to enable it to admit or deny this Request.

54. In March 2019, the City solicited bids for the Runway Project.

**ANSWER:** Admitted.

55. At the time the original complaint in this lawsuit was filed on April 18, 2019, the city was using a project labor agreement on the Runway Project (the "Runway Project PLA").

**ANSWER:** Denied as stated. The City admits that at the time the original complaint in this lawsuit was filed, the city planned to use a project labor agreement for the Runway Project. However, the City withdrew the Project Labor Agreement for this Project and the project proceeded without any Project Labor Agreement.

56. An authentic copy of the Runway Project PLA that was originally a part of the solicitation for the Runway Project is attached at Exhibit "H."

**ANSWER:** Admitted.

57. Plaintiffs Road-Con and Loftus were interested in submitting bids for the Runway Project at the time the original complaint was filed on April 18, 2020.

**ANSWER:** After reasonable inquiry, the information that the City knows or can readily obtain is insufficient to enable it to admit or deny this Request. At this time, the City can

admit only that Plaintiff Road-Con submitted a bid for the Runway Project.

> 58. Plaintiffs Road-Con and Loftus are qualified to perform the work on the Runway Project.

**ANSWER:** After reasonable inquiry, the information that the City knows or can readily obtain is insufficient to enable it to admit or deny this Request. At this time, the City can admit only that Plaintiff Road-Con was recommended for qualification to bid on the Runway Project.

> 59. Because Road-Con and Loftus maintain a collective-bargaining agreement with the United Steelworkers, they could not perform work on the Runway Project with their current workforces at the time the original complaint was filed.

**ANSWER:** The City objects to this Request on the grounds that it calls for a legal conclusion that is an ultimate legal issue in the case. Subject to and without waiver of the foregoing objection, after reasonable inquiry, the information that the City knows or can readily obtain is insufficient to enable it to admit or deny this Request.

> 60. Because Road-Con and Loftus maintain a collective-bargaining agreement with the United Steelworkers, they could not perform work on the Runway Project with their current workforces at the time the original complaint was filed.

**ANSWER:** The City objects to this Request on the grounds that it calls for a legal conclusion that is an ultimate legal issue in the case. Subject to and without waiver of the foregoing objection, after reasonable inquiry, the information that the City knows or can readily obtain is insufficient to enable it to admit or deny this Request.

13

Date: June 29, 2020  Respectfully Submitted,

/s/ Lydia Furst
Amy M. Kirby
Deputy City Solicitor
Pa. Attorney ID No. 323938
Lydia M. Furst
Deputy City Solicitor
Pa Attorney ID No. 307450
City of Philadelphia
Law Department
1515 Arch Street, 15th Floor
Philadelphia, PA 19102
(215) 683-3573
amy.kirby@phila.gov
lydia.furst@phila.gov

# CERTIFICATE OF SERVICE

   I hereby certify that, on the date set forth below, I served a true and correct copy of the foregoing Responses and Objections to Plaintiffs' Requests for Admission by email on the following counsel:

Walter S. Zimolong
Zimolong, LLC
P.O. Box 552
Villanova, Pennsylvania 19085
(215) 665-0842
wally@zimolonglaw.com

Jonathan F. Mitchell
Mitchell Law PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
(512) 686-3940 (phone)
(512) 686-3941 (fax)
jonathan@mitchell.law

*Counsel for Plaintiffs*

                BY: /s/ Lydia Furst
                    Deputy City Solicitor

Dated: June 29, 2020