**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| Road-Con, Inc., Neshaminy Constructors, Inc., Loftus Construction, Inc., PKF-Mark III, and Scott A. Lavaca | : : : | |
| Plaintiffs | : : | CIVIL ACTION NO. 2:19-cv-01667-JS |
| vs. | : : | |
| City of Philadelphia and James Kenney, in his official Capacity as Mayor of the City of Philadelphia | : : | |
| Defendants | : | |

# **ORDER**

AND NOW, this _____ day of _____, 2021, upon consideration of Defendants' Motion for Summary Judgment and any response thereto, it is hereby **ORDERED** and **DECREED** that Defendants' Motion for Summary Judgment is **GRANTED** and the case **DISMISSED WITH PREJUDICE**.

BY THE COURT:

_____
Juan R. Sánchez J.

Dated: _____

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| Road-Con, Inc., Neshaminy Constructors, Inc., Loftus Construction, Inc., PKF-Mark III, and Scott A. Lavaca | : : : | |
| Plaintiffs | : : | CIVIL ACTION NO. 2:19-cv-01667-JS |
| vs. | : : | |
| City of Philadelphia and James Kenney, in his official Capacity as Mayor of the City of Philadelphia | : : | |
| Defendants | : | |

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

As set forth herein, Defendants the City of Philadelphia and Mayor James Kenney, in his official capacity, move under Federal Rule of Civil Procedure Rule 56, for summary judgment on Plaintiffs claims, Count I-The Project Labor Agreements and Executive Orders violate 42 U.S.C. §1983 and the First and Fourteenth Amendment; Count II-The Project Labor Agreements and Executive Orders Violated 42 U.S.C. § 1981 And the Equal Protection Clause By Imposing Diversity-And-Inclusion Requirements On Contractors and Unions; Count III-The Project Labor Agreements and Executive Orders Violate State and City Competitive-Bidding Laws; and Count IV-The Project Labor Agreements and Executive Orders Were Imposed in Violation of the City Charter. As set forth more fully in the attached Memorandum of Law and Statement of Undisputed Facts, there are no genuine issues of material fact and Defendants are entitled to judgement as a matter of law.

WHEREFORE, for these reasons and those set forth more fully in the accompanying Memorandum of Law, incorporated herein, the City of Philadelphia and Mayor Kenney in his

official capacity, respectfully requests that the Court grant summary judgment in their favor and against Plaintiffs on all claims.

Date:  December 6, 2021

Respectfully Submitted,

/s/ Lydia Furst_____
Amy M. Kirby, Deputy City Solicitor
Pa. Attorney ID No. 323938
Lydia M. Furst, Divisional Deputy City Solicitor
Pa Attorney ID No. 307450
City of Philadelphia Law Department
1515 Arch Street, 15th Floor
Philadelphia, PA 19102
(215) 683-3573
amy.kirby@phila.gov
lydia.furst@phila.gov

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| Road-Con, Inc., Neshaminy Constructors, Inc., Loftus Construction, Inc., PKF-Mark III, and Scott A. Lavaca | : : : : | |
| Plaintiffs | : : | CIVIL ACTION NO. 2:19-cv-01667-JS |
| vs. | : : | |
| City of Philadelphia and James Kenney, in his official Capacity as Mayor of the City of Philadelphia Defendants | : : | |

# DEFENDANTS' MEMORANDUM OF LAW
# IN SUPPORT OF THEIR SECOND MOTION FOR SUMMARY JUDGMENT

## I.     INTRODUCTION

A Project Labor Agreement ("PLA") is a pre-hire collective bargaining agreement between a contractor and labor organizations that establishes the terms and conditions of employment for a specific construction project. Until recently, Defendants, the City of Philadelphia and Mayor James Kenney in his official capacity ("City" or "Defendants") required PLAs on some public works projects to ensure that time-sensitive and complex projects were completed timely and efficiently. In 2020, after Plaintiffs initiated this case, the City issued a new Executive Order, which significantly changed the City's PLA practices in response to recent developments in First Amendment and competitive bidding law. Despite these changes that bar the PLA terms challenged in this case from being used in future PLAs, Plaintiffs continue to pursue their claims and improperly seek to enjoin the City from *any* future use of a PLA.

Plaintiffs – four contractors who occasionally seek work on City projects and an employee of one of those contractors – assert numerous claims challenging the City's use of PLAs. For the reasons articulated below, each of Plaintiffs' claims fail, both as a matter of law,

and because Plaintiffs have failed to establish material facts to support these claims on the merits.

## II. FACTS

The City incorporates by reference its Statement of Material Facts in its entirety. By way of brief summary, the City following key facts are undisputed:

- The City has used PLAs in the past under old Executive Orders that pre-dated recent changes in First Amendment and competitive bidding law. Under the City's new Executive Order that reflects these changes in the law, any PLAs used by the City will not require employees to join or pay fees to a union as a condition of working on a PLA project. *See* City Statement of Facts ("City Facts") ¶¶ 1-9.

- None of the Plaintiffs or their employees have been compelled to join or financially support a union as a result of the City's use of PLAs. *See id.* ¶¶ 32-89.

- The City's PLAs require contractors and unions to use "best efforts" to recruit a diverse workforce but do not impose any diversity quota on contractors or unions. *See id.* ¶¶ 10-25.

## III. LEGAL STANDARD

Summary judgment should be granted if the movant can show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" Fed. R. Civ. P 56(a)). In deciding summary judgment, "a court must view the facts in the light most favorable to the non-moving party, and make every reasonable inference in that party's favor." *MRO Corp. v. Humana Inc.*, 383 F. Supp. 3d 417, 421 (E.D. Pa. 2019) (internal quotations omitted). Once the moving party has met its initial burden, the non-moving party must then designate facts that show there is a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

## IV. ARGUMENT

Plaintiffs assert four claims. First, they assert that the City's PLA practices violate the First Amendment by allegedly requiring employees of City contractors to join a union that is a

PLA signatory. Second, Plaintiffs assert Equal Protection and 42 U.S.C. § 1981 claims that challenge the City's failure to include the United Steelworkers union ("USW") as a signatory to past City PLAs as racially discriminatory. Plaintiffs also allege that the City's use of PLAs violates state competitive bidding laws and the City's Home Rule Charter. As argued below, each of Plaintiffs' claims fail, both as a matter of law, and because Plaintiffs have failed to establish material facts to support these claims on the merits.

### A. Plaintiffs' First Amendment, Competitive Bidding, and Home Rule Charter Claims Are Moot

Plaintiffs' First Amendment, competitive bidding, and Home Rule Charter claims are all moot and must be dismissed.

In 2019, following the decisions in *Janus v. Am. Fed'n of State, Cty., & Mun. Emps., Council 31*, 138 S. Ct. 2448, (2018) and *Allan Myers, L.P. v. Dep't of Transportation*, 202 A.3d 205 (Pa. Commw. Ct. 2019), the City re-evaluated its PLAs practices. In 2020, the Mayor issued a new Executive Order related to PLAs. Unlike previous EOs related to PLAs, EO 5-20 prohibits City PLAs from requiring employees to join a labor organization or to pay agency fees as a condition of performing work under the PLA. *See* City Facts ¶¶ 1-9. If Plaintiff Contractors bid on City projects with PLAs, they have no basis to fear that the City's PLA will compel their employees to join a labor organization or pay agency fees. Because the new EO specifically prohibits the conduct challenged in Plaintiffs' First Amendment, competitive bidding, and Home Rule Charter claims – the requirement that workers on City PLA projects be members of a signatory union – those claims are moot.

A case becomes moot if, after the case is initiated, there is "no longer a live controversy." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000). Where the defendant has voluntarily ceased the offending conduct after the lawsuit was filed, a court

3

may dismiss the case as moot if "it is absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Fields v. Speaker of the Pa. House of Representatives*, 936 F.3d 142, 161 (3d Cir. 2019) (internal quotations omitted). When "the defendant ceases because of a new statute or a ruling in a completely different case, its argument for mootness is much stronger." *Hartnett v. Pennsylvania State Educ. Ass'n,* 963 F.3d 301, 307 (3d Cir. 2020) (*citing Lighthouse Inst. for Evangelism, Inc. v. City of Long Branch*, 510 F.3d 253, 260 (3d Cir. 2007)).

Here, the City did just that. After the decisions in *Janus* and *Allan Myers*, the Mayor issued a new Executive Order in response to those decisions. The Third Circuit considered a similar situation recently and dismissed the claim as moot. *See Hartnett Hartnett v. Pennsylvania State Educ. Ass'n*, 963 F.3d 301, 307 (3d Cir. 2020) (holding a challenge to agency fee collection moot because the union at issue had stopped collecting fees after the Supreme Court decided *Janus*, concluding "we see no reasonable likelihood that the unions will try to collect agency fees from the teachers ever again").[1] The City's revisions to the PLA process at issue here result from changes in the law and there is no basis to conclude that the City would revert back to its prior PLA practices, no matter the outcome of this case. Accordingly, Plaintiffs' claims that are based on alleged harm caused by past PLAs' requirement that membership in a signatory union was a condition of working on a project are now moot and the City is entitled to summary judgment.[2]

---

[1] In this case, it is the City's position that its past usage of PLAs did not violate the First Amendment rights of Plaintiff Contractors or Mr. LaCava, even under *Janus*, because discovery in this case revealed no instances of compelled speech or compelled association. However, the City acknowledges that *Janus* altered the law of freedom of association and compelled speech under the First Amendment and that *Allan Myers* altered the law of competitive bidding and, after re-evaluating, decided to change its practices related to PLAs going forward.

[2] In the alternative, the City is entitled to summary judgment because Plaintiffs lack an injury-in-fact and therefore lack standing for the same reason that the claims discussed in this Section are moot. *See Rockwell Int'l Corp. v. United States*, 549 U.S. 457, 473-74 (2007) (holding that

4

B.     **Plaintiffs Lack Standing to Assert Two Claims**

Plaintiffs lack standing to pursue their Equal Protection and First Amendment claims because they have not established any impact or injury to their Equal Protection or First Amendment rights. To have Article III standing, a plaintiff must have suffered an injury in fact, an "invasion of a legally protected interest" which is both "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). "An alleged injury must be 'certainly impending' to constitute injury in fact." *Geneva Coll. v. Sebelius*, 929 F. Supp. 2d 402, 418 (W.D. Pa. 2013), *on reconsideration in part* (May 8, 2013) (citing *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990)). While standing is evaluated based upon the facts that existed at the time the Complaint was filed, the elements of standing "are not mere pleading requirements, but rather an indispensable part of the plaintiff's case, [therefore] each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *Lujan*, 504 U.S. 561.

      1.     <u>Plaintiffs Have No Standing to Pursue Their Equal Protection Claim Because the Alleged Constitutional Violation Is Against the United Steelworkers, Not Plaintiffs.</u>

Plaintiffs lack standing to assert their Equal Protection claim, because the allege a violation of the United Steelworkers' – not Plaintiffs' – rights. Plaintiffs do not have the right to stand in the shoes of the USW and seek to vindicate an alleged violation of USW's constitutional right to equal protection. *See Bush v. Dept. of Human Services*, 2014 WL 47764, *2 (E.D. Pa 2014) (*unreported opinion*) (Father cannot bring a Section 1983 claim against shelter where daughter and granddaughter were housed because does not have standing to do so). Indeed, the

---

"when a plaintiff files a complaint in federal court and then voluntarily amends the complaint, courts look to the amended complaint to determine jurisdiction").

USW has stated unequivocally that it does not believe its Equal Protection rights were violated by the City. *See* City Facts. Accordingly, Plaintiffs lack standing as to their Equal Protection claim and the City is entitled to summary judgment against Plaintiffs on this claim.

2. <u>Plaintiffs Cannot Establish any First Amendment Injury.</u>

To establish Article III standing to assert a First Amendment claim, a plaintiff must prove an injury in fact *to his or her First Amendment rights*. *See Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008). The Supreme Court has recognized that a compelled speech violation occurs when the "complaining speaker's own message [is] affected by the speech it was forced to accommodate." *Rumsfeld v. Forum for Acad. & Institutional Rights, Inc.*, 547 U.S. 47, 49 (2006). Further, a compelled speech claim based upon alleged compelled unionization will only be ripe for review when compelled unionization and compulsory payment of dues is imminent. *See Harris v. Quinn*, 573 U.S. 616, 657 n.30 (2014). The recent, seminal cases on this issue involved clearly justiciable injuries in fact. In *Janus,* allegations included the automatic deduction of payments to unions from nonmember public employees' wages. *See Janus v. Am. Fed'n of State, Cty., & Mun. Employees, Council 31*, 138 S. Ct. 2448, 2486, 201 L. Ed. 2d 924 (2018). Similarly, allegations in *Harris* included automatic deduction of payments to unions from Illinois home health aides' salaries, which were paid through Medicaid. 573 U.S. at 625-26. Plaintiffs have no such allegations in this case.

The Third Amended Complaint alleges, without further factual information, that the City requires city contractors to compel their employees to join a union to work on City construction projects that use a PLA. 3rd Am. Compl. (Doc. No. 28) at ¶ 49. This is simply not true. First, as explained above, the new Executive Order bars any such requirement in City PLAs going forward. Second, the City has only used PLAs on some (not all) City projects with an estimated

cost over $3 million. *See* City Facts ¶ 6. And third, each of the Plaintiffs testified that they have *never* been compelled to join or financially support unions selected by the City, nor have they ever required their employees to do so. *See* City Facts ¶¶ 32-89.

There is no indication in the record that an injury to Plaintiffs' rights to free speech and association either has occurred or is imminent. Accordingly, Plaintiffs cannot establish any injury to their First Amendment rights, and Defendants are entitled to summary judgment on Count I.

    **C.**    **Defendants Are Entitled to Summary Judgment on Plaintiffs' First Amendment Claim Because the City's Use of PLAs is Rationally Related to Legitimate City Objectives.**

Even if Plaintiffs' First Amendment claim were not moot and even if they demonstrated injury-in-fact, their First Amendment claim *still* fails because the City's use of PLAs is rationally related to the City objective of timely and efficient completion of important City public works projects.

When the government does not "directly and substantially interfere" with associational rights, rational basis review applies. *See Lyng v. Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am., UAW,* 485 U.S. 360, 365-66 (1998) (applying rational basis review to First Amendment challenge to amendment to Food Stamp Act that restricted benefits if any member of the household was on strike); *Hanten v. Sch. Dist. of Riverview Gardens*, 13 F. Supp. 2d 971, 976 (E.D. Mo. 1998), *aff'd*, 183 F.3d 799 (8th Cir. 1999) (applying rational basis review, based on *Lyng*, in a First Amendment challenge to a School District's use of PLAs brought by a non-union contractor and employees). The City's use of PLAs is constitutional because doing so is rationally related to an important government objective: to make sure big projects are completed on time and on budget, and are an efficient use of taxpayer dollars.

These City objectives are not seriously in dispute. Indeed, the goals the City seeks to achieve by requiring PLAs have been explicitly recognized as legitimate by the United States Supreme Court and the Pennsylvania Commonwealth Court. *See Bldg. & Const. Trades Council of Metro. Dist. v. Associated Builders & Contractors of Massachusetts/Rhode Island, Inc.*, 507 U.S. 218, 232 (1993) (PLA appropriately used "to ensure an efficient project that would be completed as quickly and effectively as possible at the lowest cost," and to "ensure completion of . . . projects on schedule"); *Sossong v. Shaler Area Sch. Dist.* 945 A.2d 788, 794 (Pa. Cmwth. 2008) (upholding the use of a PLA because School District was concerned about prompt completion of projects).

The City's use of PLAs is rationally related to these purposes. The Executive Order explains that the City uses PLAs to prevent "labor disruptions such as strikes, lockouts or slowdowns," which can thwart the City objective of efficient and timely completion of time-sensitive projects. *See* City Facts Ex. A at p.1. The two City projects at issue in this case were both particularly time-sensitive, as reflected in the PLA recommendation memo for each project. *See* City Facts Exs. I & J.

The City's selection of appropriate labor unions for past PLAs was also rational. As explained by Deputy Mayor of Labor Richard Lazer, the City did not include the USW as a signatory to past City PLAs because (1) many City projects did not involve the type of work typically performed by USW tradespeople and (2) the USW had indicated they were unwilling to sign on to certain provisions in the City's PLAs to which other signatory unions were bound. *See* City Facts ¶¶ 18-19 & Ex. E ¶¶ 9-10.[3]

---

[3] Even under the exacting scrutiny or strict scrutiny standards (neither of which apply here), the City's use of PLAs is constitutional. Timely and efficient completion of projects and increase in labor diversity are compelling City interests and the City's use of PLAs on complex and time-

8

For this additional reason, the Court should grant summary judgment in favor of Defendants on Count I.

### D. Defendants Are Entitled to Summary Judgment on Plaintiffs' 42 U.S.C § 1981 and Equal Protection Claims.

Next, this Court should grant summary judgment on both the 42 U.S.C § 1981 and Equal Protection claims because Plaintiffs fail to properly plead a § 1981 under § 1983 (the exclusive remedy for § 1981 harm) and because Plaintiffs fail to show that PLAs cause any discrimination, let alone against Plaintiffs.

#### 1. Plaintiffs' failure to plead their 42 U.S.C § 1981 under 42 U.S.C § 1983 is fatal, as Section 1981 does not create an independent cause of action.

42 U.S. C § 1981 does not create an independent cause of action and Plaintiffs fatally failed to plead their § 1981 discrimination claim under § 1983. *McGovern v. City of Philadelphia*, 554 F.3d 114, 116-17 (3d Cir. 2009). While § 1981 creates a right, it does not provide a remedy. *Id* at 118; *see also Jett v. Dallas Independent School District*, 491 U.S. 701 (1989) (finding that § 1981 provides extensive rights but does not itself provide a remedy against state actors). Thus, plaintiffs must use § 1983 as the mechanism to provide a remedy for rights asserted under § 1981. Having failed to do so, Plaintiffs' § 1981 claim simply cannot move forward.

#### 2. Plaintiffs' § 1981 and Equal Protection Claims Fail Because They Did Not Prove Intentional Discrimination Against Plaintiffs.

Alternatively, even assuming *arguendo* that Plaintiffs' § 1981 claim survives this fatal pleading error, it still fails because Plaintiffs have failed to show any intentional discrimination. Their Equal Protection claim fails for the same reason. In short, the record is devoid of any

---

sensitive projects, with individual PLA recommendations made by City agencies on a project-by-project basis, is narrowly tailored to those objectives.

evidence that the minority participation goals in the PLA require Plaintiffs to take any affirmative action to change the makeup of their workforce; required for intentional discrimination. Further, Plaintiffs cannot show there is any intentional discrimination directed at them or USW. A keystone of both § 1981 and the Equal Protection Clause is intentional discrimination. *See Collins v. Kimberly-Clark Pennsylvania, LLC*, 247 F. Supp. 3d 571, 588 (E.D. Pa.), *aff'd,* 708 F. App'x 48 (3d Cir. 2017) (unreported) ("[Under § 1981] the plaintiff has the burden of proving by the preponderance of the evidence a *prima facie* case of discrimination."); *Hassan v. City of New York,* 804 F.3d 277, 294 (3d Cir. 2015), *as amended* (Feb. 2, 2016) ("To state an equal-protection claim, Plaintiffs must allege (and ultimately prove) intentional discrimination.").

To purportedly "prove" intentional discrimination against USW because of its lack of diversity of its membership, Plaintiffs rely on a statement made by Deputy Mayor of Labor Richard Lazer in his declaration as well as the letters between counsel for the parties. Mr. Lazer's declaration states that:

> [I]n or around 2018 the City engaged in discussions with [USW] in an attempt to include [them] as a signatory to the City's PLAs. The discussions were ultimately unsuccessful because [USW] believed that their organization could not comply with the diversity and inclusion goals of the City's PLAs.

City Facts ¶ 18, Ex. G. Taken in context with the contemporaneous conversations regarding inclusion of the Steelworkers in PLAs, this comment does not prove intentional discrimination.

First, nothing in this statement suggests that USW were not included in PLAs for an improper discriminatory reason. Instead, it is undisputed that the evidence showed the City's willingness in November 2018 to include USW in future PLAs, provided that they agreed to Schedule C. City Facts ¶14 (articulating diversity goals and monitoring requirements for both labor organizations and contractors.) USW responded that it was committed to increasing the

diversity of its members but also that it was "concerned" about the third-party monitoring discussed in Schedule C. City Facts ¶18. Thus, in this context, Mr. Lazer's statement is quite obviously a reference to USW's reticence with respect to provisions of Schedule C, not an admission that the City was excluding USW because of the group's racial makeup.

Indeed, the undisputed evidence is that discussions regarding inclusion of USW ultimately failed because the *Allan Myers* decision required the City to reevaluate how it used PLAs. City Facts ¶¶19-20. Specifically, the January 2019 decision in *Allan Myers* required the City to reevaluate both its approach to PLAs overall and whether it could include the USW in PLAs using the PennDOT model, which was disapproved by the Commonwealth Court. (*Id.*). This cannot support a finding of discrimination under § 1981. *See Comcast Corp. v. National Ass'n of African-American Owned Media*, 140 S.Ct. 1009 (2020) (in order to prove a § 1981 claim a plaintiff must "prove that, but for race, it would not have suffered the loss of a legally protected right.")

        3.        <u>The Goals in the Project Labor Agreement and Executive Order Do Not Amount to Intentional Discrimination.</u>

Plaintiffs further allege that the PLA and EO violates § 1981 and the Equal Protection Clause because they "compel[] participating unions to set goals that will change the racial and demographic makeup of their workforces." 3rd Am. Compl. (Doc. No. 28) at ¶ 142.

The PLA and EO compel no such action. Instead, the PLA and EO merely articulate the laudable *goal* of increasing diversity. But the record is crystal clear that the City's diversity *goals* for PLA signatories are not *mandates or quotas*.[4] Indeed, federal courts have consistently upheld

---

[4] As succinctly explained in *Grutter v. Bollinger* 539 U.S. 306, 335 (2003), "Properly understood, a 'quota' is a program in which a certain fixed number of proportion of opportunities are 'reserved exclusively for certain minority groups'" (*quoting Richmond v. J.A. Croson Co.,* 488 U.S. 469), while "a 'permissible goal…require[s] only a good-faith effort…to come within a

11

race-conscious workplace diversity efforts — such as targeted or expanded recruitment and mere diversity goals — which are devoid of explicit consideration of race or ethnicity. *See, e.g., Hammer v. Ashcroft*, 383 F.3d 722, 725 (8th Cir. 2004) ("[a]n employer's affirmative efforts to recruit minority and female applicants does not constitute discrimination . . . An inclusive recruitment effort enables employers to generate the largest pool of qualified applicants and helps to ensure that minorities and women are not discriminatorily excluded from employment"); *McHenry v. Pa. State Sys. of Higher Educ.*, 50 F. Supp. 2d 401, 411 (E.D. Pa. 1999) (state university's policy "inten[ding] to recruit the broadest possible pool of applicants," including affirmative recruitment of minorities, did not discriminate against white males).

The PLA and EO plainly do not set quotas. Instead, they set non-binding, aspirational goals for the City, labor unions and contractors to try to meet. *See* City Facts Ex. B at Sched. C ¶ 1(b), 1(c), 3(b). Nonbinding diversity goals such as those in Schedule C of the template PLA do not impose any benefit or detriment on the basis of race. Schedule C does not give any union or contractor contracting preference on the basis of race, nor exclude any unions or contractors because of their racial makeup. City Facts ¶ 15, Ex. E. Moreover, the record is absent evidence that Plaintiffs have in fact changed the racial makeup of their workforces to bid on any projects subject to PLAs. *See City Facts, generally.* Accordingly, Plaintiffs' fail to prove a viable claim under either 42 U.S.C. §1981 or the Equal Protection clause. *See Gen. Bldg. Contractors Ass'n, Inc. v. Pennsylvania*, 458 U.S. 375, 391 (1982) (holding that the Equal Protection clause, like 42 U.S.C. § 1981, can only be violated with purposeful discrimination.)

---

range demarcated by the goal itself.'" (*quoting Sheet Metal Workers v. EEOC,* 478 U.S. 421 (1986)).

4. There is No Discrimination Against Plaintiff

Plaintiffs cannot allege violations of the Equal Protection clause or 42 U.S.C. § 1981 as they are not the aggrieved party. Specifically, under 42 USC § 1981, "[l]iability … is personal in nature, much like under §1983, and cannot be imposed vicariously. Because liability is premised on intentional discrimination, personal involvement of a [party] is essential." *Boykin v. Bloomsburg Univ. of Pennsylvania,* 893 F. Supp. 400, 406 (M.D. Pa. 1995), *aff'd,* 91 F.3d 122 (3d Cir. 1996). Here, Plaintiffs only allege that USW was excluded from PLAs on the basis of race. Accordingly, Plaintiffs' Section 1981 and Equal Protection claims fail.

Plaintiffs' discrimination allegation is also belied by USW's November letter. City Facts ¶ 22-23. *See* Ex. I, USW Letter at 2, which stated that USW "strongly supports the efforts of the City and other jurisdictions to increase minority and female representation in construction occupations" and that USW is "willing to comply with the requirements of Schedule C as soon as we receive answers to the clarifying questions we sought nearly three years ago." *See id.* at 2.

### E. PLAs Do Not Per Se Violate Pennsylvania's Competitive Bidding Laws Nor Merit the Sweeping Injunction Which Plaintiffs Seek.

Plaintiffs also allege that the City's use of PLAs on the 15th Street and Runway Projects violated state competitive bidding laws and seek to bar the City's use of *any* PLA on *any* future public works project.

As a matter of law, there is no basis for that overreaching request. *See Ameron, Inc. v. U.S. Army Corps of Engineers,* 787 F.2d 875, 888 (3d Cir.), *on reh'g,* 809 F.2d 979 (3d Cir. 1986), *citing Califano v. Yamasaki*, 442 U.S. 682, 702 (1979) ("[I]njunctive relief should be no broader than necessary to provide full relief to the aggrieved party."). "Injunctions, which carry possible contempt penalties for their violation must be tailored to remedy the specific

harms shown rather than to enjoin all possible breaches of the law." *Davis v. Romney*, 490 F.2d 1360, 1370 (3d Cir. 1974).

Project labor agreements remain permissible under Pennsylvania law; there is no legal basis for a ban on all present or future PLAs. *See Allan Myers, L.P. v. Dep't of Transportation* 202 A.3d 205, 211 (Pa. Commw. Ct. 2019) ("[I]n certain circumstances a PLA has been held not to interfere with competitive bidding."); *See also A. Pickett Const., Inc. v. Luzerne County Convention Ctr. Auth.*, 738 A.2d 20, 22 (Pa. Commw. 1999) (rejecting a challenge to PLA on a convention center construction project that required adherence to a tight inflexible construction deadline); *Sossong*, 945 A.2d at 794 (upholding the use of a PLA where the School District was concerned about the prompt completion of projects and was informed that the PLA "would ensure completion of the projects on schedule").

Further, applying the principles that federal and state precedent supply, determining if a PLA comports with the state's competitive bidding laws requires a fact-intensive, project-specific inquire which is incompatible with any type of categorical injunction against the City's use of PLAs.

### F. The Project Labor Agreements and Executive Orders Do Not Violate the City's Home Rule Charter.

Lastly, Count IV of the Third Amended Complaint claims that the Mayor's use of an Executive Order to guide the use of PLAs violates the City Home Rule Charter, Section 8-200 (the "Charter"). Plaintiffs allege that Executive Orders 15-11, 8-15[5] and 5-20 improperly allow

---

[5] Although Executive Order 8-15 rescinded Executive Order 15-11, Plaintiffs' reference both, apparently because Executive Order 15-11 is still referenced in some City documents related to PLAs.

the Mayor to directly regulate the process for procuring City contracts. (Amen. Comp. para. 163.) Plaintiffs are wrong.[6]

Plaintiffs misunderstand the nature of the bid preferences referenced in Charter Section 8-200. Section 8-200 is part of Chapter 2 of Article VIII of the Charter, which states the general rule that all contracts, with a few noted exceptions, "shall be awarded to the lowest responsible bidder" and sets forth the circumstances under which an exception to that general rule can be made. Phila. Home Rule Charter § 8-200; City Facts ¶ 83, Ex. Q. But the use of PLAs on City projects in no way implicates Section 8-200's lowest responsible bidder requirement. The mayor's use of an Executive Order to guide the use of PLAs certainly does not violate Charter Section 8-200. The City is thus entitled to summary judgment on the Home Rule Charter claim.

## V. CONCLUSION

For all the above reasons, Defendants respectfully request that the Court grant summary judgment in their favor.

Dated: December 6, 2021

Respectfully Submitted,

/s/ Lydia Furst
Amy M. Kirby
Deputy City Solicitor
Attorney I.D. No. 323938
Lydia M. Furst
Divisional Deputy City Solicitor
Attorney I.D. No. 307340
City of Philadelphia Law Department
1515 Arch Street, 15th Floor
Philadelphia, PA 19102
amy.kirby@phila.gov
lydia.furst@phila.gov

---

[6] Regardless, an Executive Order is not itself essential to use of a PLA on a City contract. It functions merely as a tool to lay out standard parameters of PLA use. The City's Procurement Department could choose to use a PLA regardless of whether or not the Executive Orders were in place.

# CERTIFICATE OF SERVICE

I hereby certify that, on the date set forth below, I served a true and correct copy of the foregoing by Notice of Docket Activity sent automatically by CM/ECF on the following counsel who are registered as CM/ECF filing users and have consented to accepting electronic service through CM/ECF:

Walter S. Zimolong
Zimolong, LLC
P.O. Box 552
Villanova, Pennsylvania 19085
(215) 665-0842
wally@zimolonglaw.com

Jonathan F. Mitchell
Mitchell Law PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
(512) 686-3940 (phone)
(512) 686-3941 (fax)
jonathan@mitchell.law

*Counsel for Plaintiffs*

Edward T. Kang
Michael Weinert
Kang Haggerty & Fetbroyt LLC
123 S Broad St
Suite 1670
Philadelphia, PA 19109
215-525-5850
ekang@khflaw.com
mweinert@khflaw.com

*Counsel for Intervenors*

By: /s/ Lydia Furst
Divisional Deputy City Solicitor

Dated: December 6, 2021