IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| Road-Con, Inc., Neshaminy Constructors, Inc., Loftus Construction, Inc., PKF-Mark III, and Scott A. Lavaca | : : : | |
| Plaintiffs | : : | CIVIL ACTION NO. 2:19-cv-01667-JS |
| vs. | : : | |
| City of Philadelphia and James Kenney, in his official Capacity as Mayor of the City of Philadelphia | : : : | |
| Defendants | : | |

# [PROPOSED] ORDER

AND NOW, this ___ day of _____, 2021, upon consideration of Plaintiffs' Second Motion for Summary Judgment and Defendants' and Intervenor-Defendants' Responses thereto, it is hereby ORDERED that the motion is DENIED WITH PREJUDICE.

_____
Juan R. Sánchez, C.J.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Road-Con, Inc., Neshaminy Constructors, Inc., Loftus Construction, Inc., PKF-Mark III, and Scott A. Lavaca : <br> Plaintiffs : <br> : <br> vs. : <br> : <br> City of Philadelphia and James Kenney, in his official Capacity as Mayor of the City of Philadelphia : <br> Defendants : | CIVIL ACTION <br> NO. 2:19-cv-01667-JS |

# DEFENDANTS' RESPONSE IN OPPOSITION
# TO PLAINTIFFS' SECOND MOTION FOR SUMMARY JUDGMENT

Defendants file this response in opposition to Plaintiffs' Motion for Summary Judgment.

The Court should deny the motion for the reasons explained in the accompanying memorandum.

WHEREFORE, Defendants respectfully request that this Court deny Plaintiffs' motion.

Date: December 20, 2021

Respectfully Submitted,

/s/ Lydia Furst_____
Amy M. Kirby
Deputy City Solicitor
Pa. Attorney ID No. 323938
Lydia M. Furst
Divisional Deputy City Solicitor
Pa Attorney ID No. 307450
City of Philadelphia Law Department
1515 Arch Street, 15th Floor
Philadelphia, PA 19102
(215) 683-3573
amy.kirby@phila.gov
lydia.furst@phila.gov

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| Road-Con, Inc., Neshaminy Constructors, Inc., Loftus Construction, Inc., PKF-Mark III, and Scott A. Lavaca | : : : : | |
| Plaintiffs | : : | CIVIL ACTION NO. 2:19-cv-01667-JS |
| vs. | : : | |
| City of Philadelphia and James Kenney, in his official Capacity as Mayor of the City of Philadelphia | : : : | |
| Defendants | : | |

**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION
TO PLAINTIFFS' SECOND MOTION FOR SUMMARY JUDGMENT**

## I.  INTRODUCTION

Plaintiffs attempt to paint the City of Philadelphia's ("City") use of all Project Labor Agreements ("PLA") as inappropriate and in violation of the federal Constitution, state and local laws, and discriminatory against Plaintiffs. This broad-brush characterization is without legal merit. A wholesale prohibition on PLAs, as Plaintiffs' demand, is a gross overreach which should be rejected.

## II.  FACTS

The City incorporates by reference its Response to Plaintiffs' Statement of Material Facts in its entirety. By way of brief summary, the City following key facts are undisputed:

- The City has used PLAs in the past under old Executive Orders that pre-dated recent changes in First Amendment and competitive bidding law. Under the City's new Executive Order that reflects these changes in the law, any PLAs used by the City will not require employees to join or pay fees to a union as a condition of working on a PLA project. *See* City Additional Facts ("City Add'l Facts") ¶¶ 49-56.
- The City's PLAs require contractors and unions to use "best efforts" to recruit a diverse workforce but do not impose any diversity quota on contractors or unions. *See id*.
- None of the Plaintiffs or their employees have been compelled to join or financially support a union as a result of the City's use of PLAs. *See id.* ¶¶ 1-48.

## III. LEGAL STANDARD

Summary judgment should be granted "if the movant can show 'that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Charter Oak Inc. Co. v. Maglio Fresh Food*, 979 F. Supp. 2d 581, 592 (E.D. Pa. 2013) (quoting Fed.R. Civ. P 56(a)). "A dispute is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Edmonson v. Lincoln Natl. Life Ins. Co.*, 899 F. Supp. 2d 310, 317 (E.D. Pa. 2012) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "A factual dispute is 'material' if it 'might affect the outcome of the suit under the governing law.'" *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, (1986)).

In deciding summary judgment, a court "must view the facts in the light most favorable to the non-moving party," and make every reasonable inference in that party's favor. *MRO Corp. v. Humana Inc.*, 383 F. Supp. 3d 417 421 (E.D. Pa. 2019). Once the moving party has met its initial burden, the non-moving party must then designate facts that show there is a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

## IV. ARGUMENT

### A. Plaintiffs Are Not Entitled to Summary Judgment Because They Lack Standing and Their Claims Are Moot

1. <u>Plaintiffs Lack Standing on Two Claims</u>

Plaintiffs lack standing to pursue their Equal Protection and First Amendment claims because they have not established any injury to their Equal Protection or First Amendment rights. To have Article III standing, a plaintiff must have suffered an injury in fact, an "invasion of a legally protected interest" which is both "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). "An alleged injury must be 'certainly impending' to constitute injury in fact." *Geneva Coll. v.*

*Sebelius*, 929 F. Supp. 2d 402, 418 (W.D. Pa. 2013), *on reconsideration in part* (May 8, 2013) (citing *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990)). While standing is evaluated based upon the facts that existed at the time the Complaint was filed, the elements of standing "are not mere pleading requirements, but rather an indispensable part of the plaintiff's case, [therefore] each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *Lujan*, 504 U.S. 561.

As to their First Amendment claim (Count I), Plaintiffs have no material facts that show injury to their First Amendment rights. To establish Article III standing to assert a First Amendment claim, a plaintiff must prove an injury in fact *to his or her First Amendment rights*. *See Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008). The Supreme Court has recognized that a compelled speech violation occurs when the "complaining speaker's own message [is] affected by the speech it was forced to accommodate." *Rumsfeld v. Forum for Acad. & Institutional Rights, Inc.*, 547 U.S. 47, 49 (2006). Further, a compelled speech claim based upon alleged compelled unionization will only be ripe for review when compelled unionization and compulsory payment of dues is imminent. *See Harris v. Quinn*, 573 U.S. 616, 657 n.30 (2014). The recent, seminal cases on this issue involved clearly justiciable injuries in fact. In *Janus,* allegations included the automatic deduction of payments to unions from nonmember public employees' wages. *See Janus v. Am. Fed'n of State, Cty., & Mun. Employees, Council 31*, 138 S. Ct. 2448, 2486, 201 L. Ed. 2d 924 (2018). Similarly, allegations in *Harris* included automatic deduction of payments to unions from Illinois home health aides' salaries, which were paid through Medicaid. 573 U.S. at 625-26. Neither contractor Plaintiffs nor Mr. LaCava have such allegations in this case.

The Third Amended Complaint alleges, without further factual information, that the City requires city contractors to compel their employees to join a union to work on City construction projects that use a PLA. 3rd Am. Compl. (Doc. No. 28) at ¶ 49. This is simply not true. Each of the Plaintiffs testified that they have *never* been compelled to join or financially support unions selected by the City, nor have they ever required their employees to do so. *See* City Add'l Facts ¶¶ 1-48. This is unsurprising, as the City only used PLAs on *some* City projects with an estimated cost over $3 million, *see* City Facts ¶ 6, and, unlike in *Janus* and *Harris*, the employers and employees here are participants in the construction industry and obtain work from many different sources.

As to their Equal Protection claim (Count II), Plaintiffs lack standing because they allege a violation of the United Steelworkers' – not Plaintiffs' – rights. Plaintiffs do not have the right to stand in the shoes of the USW and seek to vindicate an alleged violation of USW's constitutional right to Equal Protection. *See Bush v. Dept. of Human Services*, 2014 WL 47764, *2 (E.D. Pa 2014) (*unreported opinion*) (Father cannot bring a Section 1983 claim against shelter where daughter and granddaughter were housed because does not have standing to do so). Indeed, the USW has stated unequivocally that it does not believe its Equal Protection rights were violated by the City. *See* City Add'l Facts ¶ 68 & Ex. H.

Accordingly, Plaintiffs lack standing as to their First Amendment and Equal Protection claims and they are not entitled to summary judgment against the City on these claims.

2. Three of Plaintiffs' Claims Are Moot

Plaintiffs' First Amendment, competitive bidding, and Home Rule Charter claims are all moot. In 2019, following the decisions in *Janus v. Am. Fed'n of State, Cty., & Mun. Emps., Council 31*, 138 S. Ct. 2448, (2018) and *Allan Myers, L.P. v. Dep't of Transportation*, 202 A.3d

4

205 (Pa. Commw. Ct. 2019), the City re-evaluated its PLAs practices. In 2020, the Mayor issued a new Executive Order related to PLAs, which prohibits City PLAs from requiring employees to join a labor organization or to pay agency fees as a condition of performing work under the PLA. *See* City Add'l Facts ¶¶ 49-50. If Plaintiff Contractors bid on City projects with PLAs, they have no basis to fear that the City's PLA will compel their employees to join a labor organization or pay agency fees.

A case becomes moot if, after the case is initiated, there is "no longer a live controversy." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000). Where the defendant has voluntarily ceased the offending conduct after the lawsuit was filed, a court may dismiss the case as moot if "it is absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Fields v. Speaker of the Pa. House of Representatives*, 936 F.3d 142, 161 (3d Cir. 2019) (internal quotations omitted). When "the defendant ceases because of a new statute or a ruling in a completely different case, its argument for mootness is much stronger." *Hartnett v. Pennsylvania State Educ. Ass'n,* 963 F.3d 301, 307 (3d Cir. 2020) (*citing Lighthouse Inst. for Evangelism, Inc. v. City of Long Branch*, 510 F.3d 253, 260 (3d Cir. 2007)).

Here, the City did just that. After the decisions in *Janus* and *Allan Myers*, the Mayor issued a new Executive Order in response to those decisions. The Third Circuit considered a similar situation recently and dismissed the claim as moot. *See Hartnett v. Pennsylvania State Educ. Ass'n*, 963 F.3d 301, 307 (3d Cir. 2020) (holding a challenge to agency fee collection moot because the union at issue had stopped collecting fees after the Supreme Court decided *Janus*, concluding "we see no reasonable likelihood that the unions will try to collect agency fees from

the teachers ever again").[1] The City's revisions to the PLA process at issue here result from changes in the law. Unlike in *City of Mesquite v. Aladdin's Castle*, 455 U.S. 283 (1982), on which Plaintiffs rely to argue their claims are not moot, there is no basis to conclude that the City would revert back to its prior PLA practices, even if this case were dismissed. *See City of Mesquite*, 455 U.S. at 289 n.11 (declining to find the case moot and noting that the city had stated that it would re-enact the challenged provision if the case was dismissed). Accordingly, Plaintiffs' claims that are based on alleged harm caused by past PLAs' requirement that membership in a signatory union was a condition of working on a project are now moot.[2]

Plaintiffs' argument that their claims cannot be moot because they seek nominal damages is unavailing. Plaintiffs rely on *Burns v. PA Dep't of Correction*, which held that an inmate's *procedural due process claim* was not moot where the defendant Department of Corrections made a "voluntary promise to refrain from the future seizure of funds from [the plaintiff's] inmate account" because the plaintiff's procedural due process injury "was . . . complete at the time that his account was originally assessed . . . ." 544 F.3d 279, 283–84 (3d Cir. 2008). This case is inapposite, as Plaintiffs are not asserting a procedural due process claim. Further, even if Plaintiffs' claim for Section 1983 nominal damages is not moot, this claim fails because, as

---

[1] In this case, it is the City's position that its past usage of PLAs did not violate the First Amendment rights of Plaintiff Contractors or Mr. LaCava, even under *Janus*. Discovery in this case revealed no instances of compelled speech or compelled association. However, the City acknowledges that *Janus* altered the law of freedom of association and compelled speech under the First Amendment and that *Allan Myers* altered the law of competitive bidding and, after re-evaluating, decided to change its practices related to PLAs going forward.

[2] In the alternative, the City is entitled to summary judgment because Plaintiffs lack an injury-in-fact and therefore lack standing for the same reason that the claims discussed in this Section are moot. *See Rockwell Int'l Corp. v. United States*, 549 U.S. 457, 473-74 (2007) (holding that "when a plaintiff files a complaint in federal court and then voluntarily amends the complaint, courts look to the amended complaint to determine jurisdiction").

6

discussed above, Plaintiffs have not proved that they have any actual First Amendment or Equal Protection injury. *See Coastal Outdoor Advert. Grp., LLC v. Twp. of Union, N.J.*, 676 F. Supp. 2d 337, 350 (D.N.J. 2009), *aff'd sub nom. Coastal Outdoor Advert. Grp., L.L.C. v. Twp. of Union, N.J.*, 402 F. App'x 690 (3d Cir. 2010) (stating well-settled principle of law that, unlike procedural due process claims, First Amendment and Equal Protection claims require actual injury for plaintiffs to be awarded nominal damages).

**B. Plaintiffs Are Not Entitled to Summary Judgment on Their First Amendment Claim**

Even if Plaintiffs' First Amendment claim were not moot and even if they demonstrated injury-in-fact, their First Amendment claim *still* fails because the record is undisputed that the City's use of PLAs is rationally related to the City objective of timely and efficient completion of important City public works projects.

When the government does not "directly and substantially interfere" with associational rights, rational basis review applies. *See Lyng v. Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am., UAW,* 485 U.S. 360, 365-66 (1998) (applying rational basis review to First Amendment challenge to amendment to Food Stamp Act that restricted benefits if any member of the household was on strike); *Hanten v. Sch. Dist. of Riverview Gardens*, 13 F. Supp. 2d 971, 976 (E.D. Mo. 1998), *aff'd*, 183 F.3d 799 (8th Cir. 1999) (applying rational basis review, based on *Lyng*, in a First Amendment challenge to a School District's use of PLAs brought by a non-union contractor and employees). The City's use of PLAs is constitutional because it is rationally related to an important government objective: to make sure big projects are completed on time and on budget, and are an efficient use of taxpayer dollars.

The goals the City seeks to achieve by requiring PLAs have been explicitly recognized as legitimate by the United States Supreme Court and the Pennsylvania Commonwealth Court. *See*

*Bldg. & Const. Trades Council of Metro. Dist. v. Associated Builders & Contractors of Massachusetts/Rhode Island, Inc.*, 507 U.S. 218, 232 (1993) (PLA appropriately used "to ensure an efficient project that would be completed as quickly and effectively as possible at the lowest cost," and to "ensure completion of . . . projects on schedule"); *Sossong v. Shaler Area Sch. Dist.* 945 A.2d 788, 794 (Pa. Cmwth. 2008) (upholding the use of a PLA because School District was concerned about prompt completion of projects).

The City's use of PLAs is rationally related to these purposes. The Executive Order explains that the City uses PLAs to prevent "labor disruptions such as strikes, lockouts or slowdowns," which can thwart the City objective of efficient and timely completion of time-sensitive projects. *See* City Facts Ex. A at p.1. The two City projects at issue in this case were both particularly time-sensitive, as reflected in the PLA recommendation memo for each project. *See* City Add'l Facts Exs. E & F.

The City's selection of appropriate labor unions for past PLAs was also rational. As explained by Deputy Mayor of Labor Richard Lazer, the City did not include the USW as a signatory to past City PLAs because (1) many City projects did not involve the type of work typically performed by USW tradespeople and (2) the USW had indicated they were unwilling to sign on to certain provisions in the City's PLAs to which other signatory unions were bound. *See* City Add'l Facts ¶¶ 57-66.[3]

---

[3] Even under the exacting scrutiny or strict scrutiny standards (neither of which apply here), the City's use of PLAs is constitutional. Timely and efficient completion of projects and increase in labor diversity are compelling City interests and the City's use of PLAs on complex and time-sensitive projects, with individual PLA recommendations made by City agencies on a project-by-project basis, is narrowly tailored to those objectives.

Because Plaintiffs have failed to establish material facts showing that the City's use of PLAs is not related to a legitimate City goal, they are not entitled to summary judgment on their First Amendment claim.

**C. The City's Diversity Goals in Project Labor Agreements Do Not Violate 42 U.S.C § 1981 or the Equal Protection Clause.**

Even if Plaintiffs had standing to assert such a claim, their Section 1981 and Equal Protection Claim fails because Plaintiffs have not established material facts showing that racial discrimination against the USW caused them to not be included in the City's PLAs. To find discrimination under § 1981 or the Equal Protection Clause, Plaintiffs must show that the City's conduct did in fact cause their alleged injury. *See Univ. of Texas Sw. Med. Ctr. v. Nassar,* 570 U.S. 338, 346, (2013); *Hazen Paper Co. v. Biggins,* 507 U.S. 604, 610, 113 S.Ct. 1701, 123 L.Ed.2d 338 (1993) (In intentional-discrimination cases, "liability depends on whether the protected trait" "actually motivated the employer's decision" and "had a determinative influence on the outcome").

Here, the City did not engage in any conduct that amounted to discrimination against Plaintiffs.[4] Plaintiffs' claim is premised on a 2018 discussion between the City and the USW, which nearly resulted in the USW signing on to the City's PLA but was ultimately unsuccessful because the USW expressed concerns regarding monitoring provisions to which other signatory unions were bound. Add'l Facts Ex. G ¶¶ 4-8. During these negotiations, USW and the City not once indicates that USW was denied inclusion in the PLA because they could not meet diversity

---

[4] Plaintiffs seem to bring this claim on behalf of USW, who are not a party to this litigation. This in itself cannot create a cause of action against Plaintiffs. Under 42 USC § 1981, "[l]iability … is personal in nature, much like under §1983, and cannot be imposed vicariously. Because liability is premised on intentional discrimination, personal involvement of a [party] is essential." *Boykin v. Bloomsburg Univ. of Pennsylvania,* 893 F. Supp. 400, 406 (M.D. Pa. 1995), *aff'd,* 91 F.3d 122 (3d Cir. 1996).

requirements. *See* Plaintiffs' Facts ¶ 44-97.[5] Instead, the only statement Plaintiffs rely on to attempt to prove but-for causation is from Mr. Lazer in his declaration where he states that the USW were not included in the PLA because "the United Steelworkers believe that their organization could not comply with the diversity and inclusion goals of the City's PLAs." Plaintiffs Facts ¶ 95 *citing* Lazer Declaration ¶ 11. But this statement does not establish or even suggest that the City was excluding USW from the PLA on the basis of race. Indeed, in its January 3, 2019 letter to Mr. Lazer, USW indicated that it "desires to increase the representation of minority men and women in construction occupations, and it would take seriously its obligations under Schedule C [of the PLA]." Plaintiffs Facts ¶ 71. Instead, USW indicated that it was "concerned with the third party monitoring discussed in Schedule C . . . " and wanted to know more about how often the monitoring took place and the costs thereof. This statement made by USW led to Mr. Lazer's belief that USW was concerned about their ability to agree to the same terms as other signatory unions. City Response to Plaintiffs Facts ¶ 60; City Add'l Facts Ex. G (2021 Lazer Declaration explaining breakdown in negotiations related to *Allan Myers* decision). This is not but-for causation sufficient to prove discrimination and Plaintiffs' Equal Protection claim fails for the same reasons.

Moreover, the City places no mandatory requirement on contractors or unions to diversify their workforces. Instead, the PLA establishes goals, not *mandates or quotas*.[6] *See* City

---

[5] Additionally, these facts are not appropriately considered because they are made through an affidavit not based on personal knowledge, but instead though claims made by Plaintiffs' counsel in this matter. All evidence presented by Mr. Zimolong that is not based on his personal knowledge should be rejected. *Maldonado v. Ramirez* 757 F.2d 48, 51 (3d Cir. 1985) (rejecting evidence presented by defendant's attorney that failed to show any personal knowledge, but instead relied on conclusions reached by inferring information from the exhibits attached to his affidavit).

[6] As succinctly explained in *Grutter v. Bollinger* 539 U.S. 306, 335 (2003), "Properly understood, a 'quota' is a program in which a certain fixed number of proportion of opportunities

Add'l Facts ¶ 55, & Template PLA at Schedule C. Without mandates to meet or intent to exclude those who don't meet them, there can be no intentional discrimination required by 42 U.S.C §1981 or the Equal Protection Clause.[7]

Plaintiffs' reliance on *City of Richmond v. J.A. Croson Co.*, 488 U.S. 469 (1989) is misplaced. In *City of Richmond,* Richmond *required* 30% participation by minority subcontractors on projects let by that city. *Id.* at 477. If contractors could not comply or be awarded a wavier, they were ineligible to contract with Richmond. *Id.* at 478. In those circumstances the Court found that "the city [had] failed to demonstrate a compelling interest in apportioning public contracting opportunities on the basis of race." *Id.* at 505. There is no such apportioning here. Plaintiffs have not pointed to, nor is there any evidence that the City requires any level of minority participation of PLA signatories, nor that failure to meet any of the goals precludes a contract award. Without a mandate or a penalty, the City's diversity goal does not amount to discrimination.

Lastly, Plaintiffs argue that the City's diversity and inclusion goals violate article I, section 28 of the Pennsylvania Constitution. For the same reasons their § 1981 and Equal Protection claims fail (that there are no diversity mandates in the PLA, merely goals) this too fails. Moreover, Plaintiffs failed to allege this count in their Third Amended Complaint. Instead, they merely add this new and previously unpled argument to their Motion for Summary Judgment. Thus, they cannot argue this claim for the first time here. *See, e.g.*, *Morrow v.*

---

are 'reserved exclusively for certain minority groups'" (*quoting Richmond v. J.A. Croson Co.,* 488 U.S. 469), while "a 'permissible goal require[s] only a good-faith effort…to come within a range demarcated by the goal itself.'" (*quoting Sheet Metal Workers v. EEOC,* 478 U.S. 421 (1986)).

[7] For this same reason Plaintiffs' Claim that the City's diversity goals violated the Pennsylvania Constitution also fails.

*Bassman*, 515 F. Supp. 587, 599 (S.D. Ohio 1981), *aff'd*, 785 F.2d 309 (6th Cir. 1986) (denying motion for summary judgment in favor of plaintiff as premature where amended complaint had not yet been filed); *see also* F.R.C.P. 56(d) (providing that the Court may deny or defer a Motion for Summary Judgment where the nonmovant has no opportunity to present facts essential to justify opposition).

### D. All PLAs Cannot be Found to Violate Competitive Bidding Laws on Future Projects

Plaintiffs argue that the City's use of project labor agreements does not allow for fair and open competition because they "patently discriminate against contractors who employ members of the United Steelworkers." Pls. Mot. Summ. Judg. (Doc. No. 76) at 12. Plaintiffs argue that this is true for all projects that implement PLAs, not just the ones that are the subject of this litigation or even for all PLAs that would allegedly exclude the USW. This overly broad argument fails.

The United States Supreme Court has upheld the use of PLAs by municipalities. In *Bldg. & Const. Trades Council of Metro. Dist. v. Associated Builders & Contractors of Massachusetts/Rhode Island, Inc.*, known as "*Boston Harbor*," the Court held that the Massachusetts Water Resources Authority's ("MWRA") use of a PLA for its cleanup project of Boston Harbor was not preempted, noting that "MWRA was attempting to ensure an efficient project that would be completed as quickly and effectively as possible at the lowest cost." *Bldg. & Const. Trades Council of Metro. Dist. v. Associated Builders & Contractors of Massachusetts/Rhode Island, Inc. ("Boston Harbor")*, 507 U.S. 218, 232 (1993). The Court also reasoned that in the context of the construction industry, contractors have choices as to which projects they will pursue, and public entities should be permitted to impose requirements on contractors that they believe will ensure efficiency and timeliness of their projects. *Id.* at 231-32.

Similarly, Pennsylvania courts have long held that PLAs do not violate competitive bidding laws when they are used to ensure that complex time-sensitive construction projects run smoothly with minimal delays. In *A. Pickett Const., Inc. v. Luzerne County Convention Center Authority*, 738 A.2d 20 (Pa. Cmwth. 1999), the inclusion of a PLA was approved in order to: 1) avoid costly delays occasioned by labor disruption; 2) promote labor harmony for the duration of the project; 3) ensure adherence to a tight inflexible construction deadline; 4) allow for significant cost savings and management flexibility for the project, and; 5) assure a large pool of skilled and experienced labor for the project. *Id.* at 22; *see also Sossong v. Shaler Area School Dist.* 945 A.2d 788, 794 (Pa. Cmwth. 2008) (upholding the use of a PLA because School District was concerned about the prompt completion of projects and was informed that PLA "would ensure completion of the projects on schedule").

Even in *Allan Myers*, the Pennsylvania Commonwealth Court concluded that "[t]he use of a PLA is permitted where the contracting agency can establish extraordinary circumstances." *See Allan Myers*, 202 A.3d. at 215. That case should not be used to impose a blanket prohibition on any use of PLAs by the City. Indeed, the City has used PLAs in the past for appropriate projects. The 15th Street Bridge Project initially included a PLA because the complex and time sensitive nature of the work demanded it – the project required completion by the end of calendar year 2020 in order to allow the Police to move into their new headquarters on time.[8] *See* City Additional Facts at ¶ 47. Similarly, the Runway Project lent itself to the use of a PLA due to its need for multiple trades and time-sensitive nature. *See id.* at ¶ 48.

---

[8] In fact, the time sensitive nature of the contract necessitated the City's removal of the PLA in order to avoid it being held up by this litigation.

Even if, as Plaintiffs contend, the non-inclusion of the United Steelworkers as a signatory to a given City PLA affected their ability to bid on that contract, that cannot and does not invalidate all PLAs, as the Plaintiffs demand. The United Steelworkers can become a signatory to a future PLA. City Add'l Facts ¶ 63, Ex G, ¶¶ 7-9. Plaintiffs' requested relief is far too broad and would invalidate a valuable, legal tool which should remain available to municipalities under Pennsylvania law.[9] See *Ameron, Inc. v. U.S. Army Corps of Engineers,* 787 F.2d 875, 888 (3d Cir.), *on reh'g,* 809 F.2d 979 (3d Cir. 1986), citing *Califano v. Yamasaki*, 442 U.S. 682 (1979) ("[I]njunctive relief should be no broader than necessary to provide full relief to the aggrieved party.").

### E. The Executive Order does not Violate the City's Home Rule Charter.

Lastly, Plaintiffs argue that the Mayor's use of an Executive Order to allow the use of PLAs on some City contracts violates the City Home Rule Charter, Section 8-200 by conferring bid preferences on businesses located in or doing business in Philadelphia. The Executive Order does no such thing.

First, the use of a PLA pursuant to the Executive Order is not a bid preference, but instead a bidding requirement related to responsibility. *See A. Pickett Const., Inc. v. Luzerne County Convention Center Authority*, 738 A.2d 20, 24 (Pa. Cmwth. 1999) (municipality's assessment of responsibility can properly include the "need for promptness and timely completion of a project."). This distinction is clearly evidenced by the use of actual "bid preferences" in certain contracts. City Code Section 17-109 provides for price preferences for local bidders, and has nothing to do with the use of PLAs on City projects. Code Section 17-109

---

[9] Further, in *Allan Myers* the court looked to 62 Pa. C.S.A Sec. 512(g) to discuss competitive bidding. This court already determined that this does not apply here. ECF # 20 at 18 n.9

14

was enacted after the adoption of the "local bidding language" in the Home Rule Charter that Plaintiff discusses herein. Philadelphia Code Section 17-109 n72.

Even if the use of PLAs could be regarded as a bid preference for local bidders rather than a bidding requirement, Plaintiff's reading of the Executive Order does not confer such preference. The Executive Order merely states that "Appropriate Labor Organizations" can be included in a PLA. The unions included in any given PLA are not static. The City is free to determine which unions, local or not, and including the United Steelworkers, are appropriate for a project on any given PLA. Accordingly, the plain language of the Executive Order and the City Charter preclude summary judgment in favor of Plaintiffs.

## V. CONCLUSION

For all of these reasons, Defendants respectfully request that the Court deny Plaintiffs' Motion for Summary Judgment.

Date:  December 20, 2021                                Respectfully Submitted,

/s/ Lydia Furst_____
Amy M. Kirby
Deputy City Solicitor
Pa. Attorney ID No. 323938
Lydia M. Furst
Divisional Deputy City Solicitor
Pa Attorney ID No. 307450
City of Philadelphia Law Department
1515 Arch Street, 15th Floor
Philadelphia, PA 19102
(215) 683-3573
amy.kirby@phila.gov
lydia.furst@phila.gov

# CERTIFICATE OF SERVICE

I hereby certify that, on the date set forth below, I served a true and correct copy of the foregoing by Notice of Docket Activity sent automatically by CM/ECF on the following counsel who are registered as CM/ECF filing users and have consented to accepting electronic service through CM/ECF:

Walter S. Zimolong
Zimolong, LLC
P.O. Box 552
Villanova, Pennsylvania 19085
(215) 665-0842
wally@zimolonglaw.com

Jonathan F. Mitchell
Mitchell Law PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
(512) 686-3940 (phone)
(512) 686-3941 (fax)
jonathan@mitchell.law

*Counsel for Plaintiffs*

Edward T. Kang
Michael Weinert
Kang Haggerty & Fetbroyt LLC
123 S Broad St
Suite 1670
Philadelphia, PA 19109
215-525-5850
ekang@khflaw.com
mweinert@khflaw.com

*Counsel for Intervenors*

By: /s/ Lydia Furst
     Divisional Deputy City Solicitor

Dated: December 20, 2021