UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
PHILADELPHIA DIVISION

| | |
|---|---|
| **Road-Con, Inc.**, at al.<br><br>    Plaintiffs,<br><br>v.<br><br>**City of Philadelphia**,<br><br>    Defendants. | Case No. 2:19-cv-01667-JS |

**PLAINTIFFS' RESPONSE TO INTERVENORS' BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

I. **THE INTERVENORS ARE NOT ENTITLED TO SUMMARY JUDGMENT ON THE PLAINTIFFS' FIRST AND FOURTEENTH AMENDMENT CLAIMS**

The intervenors begin by attacking the plaintiffs' standing. *See* Intervenors' Br., ECF No. 77-2, at 3–5. But this Court has already ruled the plaintiffs have standing to assert their First and Fourteenth Amendment claims,[1] and the intervenors' brief provides no reason to depart from the Court's previous analysis. Their observation that project labor agreements were imposed on only some and not all city projects does nothing to defeat the plaintiffs' standing to challenge the city's use of PLAs. Their insistence that Mr. LaCava was never "forced" to join or pay a Council-affiliated union is likewise irrelevant to standing. It is undisputed that the city required employees of city contractors to join or pay a Council-affiliated union as a *condition* of receiving city work, and that is more than enough to establish injury in fact for Mr. LaCava and the contractor plaintiffs. *See* Memorandum, ECF No. 20, at 11 n.5. And the contractor plaintiffs are not required to show that they "bid on and were denied a contract under any PLA." Intervenors' Br., ECF No. 77-2, at 4–5. They need only show that they stand "able and ready" to bid on city projects, and that the PLAs

---

1. *See* Memorandum, ECF No. 20, at 11 n.5 ("The plaintiffs . . . have standing to bring this case").

prevent them from doing so on an equal basis. *See Northeast Florida Chapter of Associated General Contractors of America v. City of Jacksonville*, 508 U.S. 656, 666 (1993) ("To establish standing, therefore, a party challenging a set-aside program like Jacksonville's need only demonstrate that it is able and ready to bid on contracts and that a discriminatory policy prevents it from doing so on an equal basis.").

The intervenors claim that rational-basis review should apply to the city's project labor agreement. *See* Intervenors' Br., ECF No. 77-2, at 5–6. But that stance is incompatible with *Janus*, which holds that either "exacting scrutiny" or "strict scrutiny" applies to arrangements that require public employees to financially support a union, and explicitly rejected the dissenting opinion's argument for rational-basis review. *See Janus*, 138 S. Ct. at 2465 ("This form of minimal scrutiny is foreign to our free-speech jurisprudence."). No different standard of review should apply to project labor agreements that require employees of city contractors to join and support a city-approved union as a condition of working on a city construction project. The ruling in *Hanten v. School District of Riverview Gardens*, 13 F. Supp. 2d 971, 976 (E.D. Mo. 1998), *aff'd*, 183 F.3d 799 (8th Cir. 1999), on which the intervenors rely, long pre-dates *Janus*, and its decision to apply rational-basis review to a project labor agreement can no longer be sustained given *Janus*'s repudiation of rational-basis review for public-sector agency shops. *See Janus*, 138 S. Ct. at 2465.

The intervenors' attempt to invoke the "market participant" doctrine from *Boston Harbor* is irrelevant to the plaintiffs' claims under the First and Fourteenth Amendment. *See* Intervenors' Br., ECF No. 77-2, at 7–9 (citing *Bldg. & Const. Trades Council of Metro. Dist. v. Associated Builders & Contractors of Massachusetts/Rhode Island, Inc.* ("*Boston Harbor*"), 507 U.S. 218 (1993)). *Boston Harbor* used the market-participant doctrine to defeat a challenge to project labor agreements brought under the National Labor Relations Act. *See Boston Harbor*, 507 U.S. at 226–33. But the Court has already dismissed the plaintiffs' NLRA claims in this case. *See* Memorandum, ECF No. 20, at 15 ("The Supreme Court's holding in Boston Harbor forecloses Plaintiffs' NLRA claim here."). There is no

"market participant" exception to the First Amendment holding of *Janus*, so the intervenors' effort to invoke the "market participant" doctrine in response to the plaintiffs' First Amendment claims goes nowhere.

Finally, the intervenors argue that *Janus* cannot support a blanket prohibition on the use of project labor agreements. But the plaintiffs are asking this Court to enjoin only the use of project labor agreements that require the employees of city contractors to join, pay, or associate with a union as a condition of performing work on a city project. *See* Proposed Final Judgment, ECF No. 74-2, p. 2 ¶ 2 (defining "project labor agreement" as "any requirement that an employee of a city contractor or subcontractor join, pay, or associate with a union as a condition of performing work on a city project."). Those were the types of PLAs that the city had been imposing under Executive Orders 15-11 and 8-15, and *Janus* unequivocally forbids a government employer from conditioning its work on an employee's willingness to join or pay a city-approved union.

Indeed, the situation under the city's PLAs is even worse than *Janus*, because the city has been requiring the employees of its contractors to both *join and subsidize* a city-approved union as a condition of working on city construction projects. In *Janus*, the employee was put to the choice of merely subsidizing a union or resigning from state employment. The choice imposed by the City of Philadelphia, by contrast, requires workers to either join and subsdize a city-approved union, or else relinquish any prospect of working on a city construction project. This regime cannot be sustained under the First Amendment. Employees have a constitutional right to decide whether they will join or support a union, and no governmental entity can withhold employment opportunities from those who decline union membership or who decide to join a union that does not appear on a city-approved list.

## II. THE INTERVENORS ARE NOT ENTITLED TO SUMMARY JUDGMENT ON THE PLAINTIFFS' 42 U.S.C. § 1981 AND EQUAL-PROTECTION CLAIMS

The intervenors are wrong to assert that only "racial minorities" can assert race-discrimination claims under 42 U.S.C. § 1981 and the Equal Protection Clause. *See* Intervenors' Br., ECF No. 77-2, at 11 ("To establish a discrimination claim, a plaintiff must show . . . that he belongs to a racial minority." (citation and internal quotation marks omitted)); *id.* ("Plaintiffs have not met their burden to show that they are a racial minority."). Section 1981 and the Equal Protection Clause protect whites from racial discrimination on the same terms that they protect members of racial minority groups. *See McDonald v. Santa Fe Trail Transportation Co.*, 427 U.S. 273, 287 (1976) ("[W]e cannot accept the view that the terms of s 1981 exclude its application to racial discrimination against white persons."); *id.* at 295 ("[T]he Act [Civil Rights Act of 1866] was meant, by its broad terms, to proscribe discrimination in the making or enforcement of contracts against, or in favor of, any race."); *Adarand Constructors, Inc. v. Pena*, 515 U.S. 200, 224 (1995) ("[T]he standard of review under the Equal Protection Clause is not dependent on the race of those burdened or benefited by a particular classification." (citation and internal quotation marks omitted)).

The intervenors are equally off-base in their attempt to pass off the city's diversity-and-inclusion goals as mere suggestions rather than requirements. *See* Intervenors' Br., ECF No. 77-2, at 12. Section 2(b) of Schedule C says:

> The Union(s) shall set participation goals that *will significantly increase participation of minority males and women*. Such goals shall be consistent with the Commission Report and such Commission updates as may be issued.

Philadelphia Public Projects Labor Agreement, Schedule C § 2(b) (emphasis added).[2] This language compels participating unions to set goals that "will" change the racial and demographic makeup of their workforces—and it requires that these goals produce a *result* that "significantly increase[s] participation of minority males and women." A union that stands

---

2. Philadelphia Public Projects Labor Agreement is attached as Exhibit "D" to the plaintiffs' requests for admission, which appears in the record at ECF No. 75-7.

pat and fails to *increase* the participation of minority males and women is violating its contract with the city. This explicitly requires participating unions to change the racial and demographic makeup of their workforces as a condition of receiving city work — and that is flatly unlawful under 42 U.S.C. § 1981 and the Equal Protection Clause.

And the intervenors are wrong to claim that only a "mandate or quota" can qualify as "intentional discrimination" under 42 U.S.C. § 1981 and the Equal Protection Clause. *See* Intervenors' Br., ECF No. 77-2, at 12 (citing *Grutter v. Bollinger*, 539 U.S. 306 (2003)). Any form of conscious discriminatory preference is "intentional" discrimination, regardless of whether it takes the form of a rigid quota or a contextualized plus factor. *See Gratz v. Bollinger*, 539 U.S. 244, 261 (2003) (disapproving affirmative-action program that did not establish a quota, but automatically conferred a 20-point bonus on every applicant from an "underrepresented" racial or ethnic minority group). *Grutter* did not deny that the University of Michigan's "holistic" use of racial preferences qualifies as "intentional" racial discrimination; it merely held that this intentional racial justification was justified by a supposedly "compelling state interest" in attaining a diverse student body. *See Grutter*, 539 U.S. at 325. *Grutter*'s holding extends no further than the context of public-university admissions, and it cannot be invoked to justify race and sex preferences in government contracting.

Finally, the plaintiffs are not purporting to sue on behalf of the United Steelworkers; they are suing to vindicate their *own* rights under 42 U.S.C. § 1981 and the Equal Protection Clause. So it does not matter whether United Steelworkers agrees with the plaintiffs' arguments. *See* Intervenors' Br., ECF No. 77-2, at 12 (observing that the United Steelworkers "disagrees that PLAs violate § 1981 and disavows any authority or right of Plaintiffs to assert any harm on USW's behalf."). The city is discriminating against Mr. LaCava (and all white male tradesmen) by attempting to limit the construction employment hours available to white men and discouraging contractors and unions from employing white men on city construction projects. And the city is discriminating against the contractor plaintiffs by

requiring them to "*add* minority males and women to their permanent or steady workforces" as a condition of receiving city work. *See* Philadelphia Public Projects Labor Agreement, Schedule C, § 3(b) (emphasis added) (attached as Ex. "D" to plaintiffs' requests for admission, which is in turn attached as Ex. 7 to plaintiffs' statement of material facts, ECF No. 75-7). Each of the plaintiffs is suffering a violation of its rights under section 1981 and the Equal Protection Clause, and that remains the case regardless of whether the United Steelworkers supports the city's diversity-and-inclusion goals.

### III. THE INTERVENORS ARE NOT ENTITLED TO SUMMARY JUDGMENT ON THE PLAINTIFFS' CLAIMS UNDER STATE AND CITY COMPETITIVE-BIDDING LAWS

The state and city competitive-bidding laws require contracts to be awarded to the "lowest responsible bidder." The intervenors claim that compliance with the city's PLAs is necessary to establish oneself as a "responsible" bidder, but that is untenable. *See* Intervenors' Br., ECF No. 77-2, at 13–14. A contractor does not need a unionized workforce to qualify as a "responsible bidder" under the city charter—much less a unionized workforce that affiliates with a union belonging to the Philadelphia Building and Construction Trades Council. And a contractor does not need to comport with the city's "diversity goals" to qualify as a "responsible bidder" either, so long as it is not engaged in unlawful discrimination against women or racial minorities. A contractor is "responsible" if it obeys the law and performs its work competently; the city of Philadelphia is not permitted to define "responsible bidder" in a manner that allows it to exclude the entire universe of non-union contractors (and other disfavored entities) from city construction projects.

The intervenors also complain that the plaintiffs' requested remedy is overbroad because *Allan Myers* acknowledges that Pennsylvania's competitive-bidding laws might allow for PLAs in "extraordinary circumstances." *See Allan Myers, L.P. v. Dep't of Transportation*, 202 A.3d 205, 215 (Pa. Cmwlth. Ct. 2019) ("The use of a PLA is permitted where the contracting agency can establish extraordinary circumstances, and PennDOT did

not make that demonstration in this case."). But the burden is on the *city* to demonstrate that extraordinary circumstances exist, *id.*, and the city has made no attempt to explain how "extraordinary circumstances" could justify the imposition of a PLA on *any* city construction project. *Allan Myers* makes clear that a municipality cannot use "boilerplate" justifications (such as "time is of the essence") to demonstrate "extraordinary circumstances." *See id.* Yet the city has invoked nothing but vague and conclusory boilerplate in its efforts to justify its PLAs,[3] hardly a demonstration of the "extraordinary circumstances" that *Allan Myers* requires.

If the city believes that it might be able to demonstrate "extraordinary circumstances" that could justify imposing a PLA on a future city contract, then the Court could add the following language after paragraph 2 on page 2 of the proposed final judgment:

> If the defendants believe that "extraordinary circumstances" would allow them to impose a project labor agreement on a future contract in a manner consistent with Pennsylvania's competitive-bidding laws, then the defendants may ask this Court to modify the injunction to allow them to impose a project labor agreement on that particular contract, and the Court will modify the injunction to allow the project labor agreement if the defendants carry their burden of demonstrating "extraordinary circumstances" under *Allan Myers, L.P. v. Dep't of Transportation*, 202 A.3d 205, 215 (Pa. Cmwlth. Ct. 2019).

*See* Proposed Final Judgment, (ECF No. 74-2), at p. 2 ¶ 2. The Court should not include this paragraph if it concludes that the city's PLA violates the First Amendment, because there is no "extraordinary circumstances" caveat to the holding of *Janus*.

---

3. *See, e.g.*, Executive Order 5-20 ("WHEREAS, the City's history with Project Labor Agreements has demonstrated that such agreements are a valuable public contracting approach for ensuring that a building or construction work project is completed at the lowest reasonable cost, by the highest quality and most professional work force, and in a timely manner without labor disruptions such as strikes, lockouts, or slowdowns") (attached as attachment 1 to the 2020 Lazer declaration, which in turn is attached as Exhibit E to the city's statement of material facts, ECF No. 80-1).

## IV. THE INTERVENORS ARE NOT ENTITLED TO SUMMARY JUDGMENT ON THE PLAINTIFFS' CLAIMS UNDER THE CITY CHARTER

The city charter requires contracts to be awarded to the "lowest responsible bidder"—and the *only* exception to this rule is for city *ordinances* that establish "bid preferences for businesses located in or doing business in Philadelphia." Philadelphia Home Rule Charter § 8-200(1) (emphasis added). This makes no allowance for the mayor to impose his own bid preferences by executive order, or to depart from the charter's requirement to award city contracts to the "lowest responsible bidder."

The intervenors argue that section 8-200(1) merely *authorizes* the city council to establish bid preferences for local business, and does not restrict the mayor's authority in any way. *See* Intervenors' Br., ECF No. 77-2, at 14–15. That construction of the city charter is implausible. Section 8-200(1) is an exception to the rule that requires city contracts to be awarded to the lowest responsible bidder. And by authorizing the city council—and *only* the city council—to decide whether to depart from this rule by conferring bid preferences upon businesses located within the city, the necessary implication is that no other departures from the lowest-responsible-bidder rule are allowed. And it assuredly forecloses any contention that the *mayor* can create his own bid preferences through a unilateral edict.

## CONCLUSION

The intervenors' motion for summary judgment should be denied.

Respectfully submitted.

 /s/ Jonathan F. Mitchell 

| | |
|---|---|
| WALTER S. ZIMOLONG | JONATHAN F. MITCHELL |
| Pennsylvania Bar No. 89151 | Pennsylvania Bar No. 91505 |
| Zimolong, LLC | Mitchell Law PLLC |
| P.O. Box 552 | 111 Congress Avenue, Suite 400 |
| Villanova, Pennsylvania 19085 | Austin, Texas 78701 |
| (215) 665-0842 (phone) | (512) 686-3940 (phone) |
| wally@zimolonglaw.com | (512) 686-3941 (fax) |
| | jonathan@mitchell.law |

Dated: December 20, 2021         *Counsel for Plaintiffs*

# CERTIFICATE OF SERVICE

I certify that on December 20, 2021, I served this document through CM/ECF upon:

AMY M. KIRBY
LYDIA FURST
Deputy City Solicitor
City of Philadelphia Law Department
1515 Arch Street, 15th Floor
Philadelphia, Pennsylvania 19102
(215) 683-3566
amy.kirby@phila.gov
lydia.furst@phila.gov

*Counsel for Defendants*

EDWARD T. KANG
SUSAN MOON O
123 South Broad Street, Suite 1670
Philadelphia, Pennsylvania 19109
(215) 525-5850 (phone)
(215) 525-5860 (fax)
ekang@khflaw.com
so@khflaw.com

*Counsel for Intervenors*

                                                /s/ Jonathan F. Mitchell
                                                JONATHAN F. MITCHELL
                                                *Counsel for Plaintiffs*