**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| Road-Con, Inc., Neshaminy Constructors, Inc., | : | |
| Loftus Construction, Inc., PKF-Mark III, and | : | |
| Scott A. Lavaca | : | |
| Plaintiffs | : | CIVIL ACTION |
| | : | NO. 2:19-cv-01667-JS |
| vs. | : | |
| | : | |
| City of Philadelphia and James Kenney, in his official | : | |
| Capacity as Mayor of the City of Philadelphia | : | |
| Defendants | : | |

**DEFENDANTS' REPLY BRIEF IN SUPPORT OF THEIR
SECOND MOTION FOR SUMMARY JUDGMENT**

**I.    Introduction**

Plaintiffs' response provides no support for denying the City of Philadelphia and Mayor James Kenney's (the "City" or "Defendants") Second Motion for Summary Judgment. First, Plaintiffs' claims are moot for several reasons. Second, Plaintiffs continue to lack standing to bring their claims. Lastly, sweeping relief Plaintiffs' request related to PLAs is not appropriate and should not be granted.

**II.    Plaintiffs' Attempt to Avoid Mootness Fails.**

Plaintiffs argue their claims are not moot for three reasons. Each of these arguments fails. *First*, Plaintiffs claim that their claims are not moot because the City could revoke Executive Order 5-20 and return to the PLA processes that it used under previous Executive Orders. But there are no material facts suggesting this is so. To the contrary, the undisputed record in this case shows that the Mayor's issuance of Executive Order 5-20 reflects a genuine change in the City's approach to PLAs based on developments in the law. In May of 2019, just five months after the Pennsylvania Commonwealth Court's decision in *Allan Myers*, the City's Labor

Department began the process of evaluating whether the City's PLA processes should be revised in light of recent changes in the law. *See* 2019 Lazer Decl. ¶ 4 (Dkt. No. 9-3). In March of 2020, the Court denied the City's motion to dismiss as to Plaintiffs' First Amendment claim, holding that if Plaintiffs' allegations in their Complaint were true, then the provision of past City PLAs requiring union membership was prohibited by *Janus. See* Dkt. No. 20 at 14. In October of 2020, the Mayor issued a new Executive Order on PLAs. The new Executive Order (EO 5-20) not only tailored the City's PLA review process to the "extraordinary circumstances" recognized in *Allan Myers* but also **prohibited** future City PLAs from requiring union membership or payment of dues as a prerequisite to working on City projects subject to a PLA. *See* Ex. E, Att. 1 to City 2nd MSJ, EO 5-20 at 3. This significant change reflects *Janus*, as interpreted and applied by the Court in this case.

Plaintiffs argue that their claims cannot be moot because the City maintains that its prior PLA practices were lawful, at least as applied to Plaintiffs in the factual circumstances of this case. But, as the Third Circuit explained in *Hartnett v. Pennsylvania State Educ. Ass'n,* "the touchstone of the voluntary-cessation doctrine is not how willingly the defendant changed course. . ." 963 F.3d 301, 307 (3d Cir. 2020). Here, the City is not fighting to keep its prior PLA practices in place. Rather, the City has, after careful internal review and taking into account *Janus*, *Allan Myers*, and the law of this case, changed its PLA practices by issuing a new Executive Order. Plaintiffs' First Amendment and state law claims are now moot. *See Knights of Columbus Star of Sea Council 7297 v. City of Rehoboth Beach, Delaware*, 506 F. Supp. 3d 229, 236 (D. Del. 2020) (applying *Hartnett* and holding case moot where defendants defended prior policy in litigation but also revised prior policy to address plaintiffs' concerns).

*Second*, Plaintiffs argue that their claims are not moot because the new Executive Order includes diversity goals which, Plaintiffs allege, will prevent USW from participating. But the record is undisputed that USW are committed to using best efforts to recruit and maintain a diverse membership and the City is committed to providing the USW an opportunity to sign on to future PLAs. *See* Ex. E to City 2nd MSJ, 2021 Lazer Decl. ¶¶ 7-9; Ex. I to City 2nd MSJ, USW Letter at 2. There is nothing in the record to suggest that USW will be excluded from future PLA projects on the basis of diversity. Further, USW have indicated that they are willing, consistent with *Allan Myers*, to sign on to the same PLA terms to which other signatory labor unions are bound. *See* Ex. I to City 2nd MSJ, USW Letter at 2. Plaintiffs' claim that PLAs issued under the new Executive Order will exclude or disadvantage the USW are both speculative and unsupported by record evidence.

*Third*, Plaintiffs argue their claims are not moot because they seek nominal damages pursuant to 42 U.S.C. § 1983. But a claim for damages only defeats mootness if it is viable. *Rumber v. District of Columbia*, 595 F.3d 1298, 1300-1301 & n.1 (D.C. Cir. 2010) (holding damages claims moot because "we see no basis on which they may collect damages"). As explained in the City's Memorandum of Law in Support of its Second Motion for Summary Judgment, none of the Plaintiffs have established an injury that would entitle them to even nominal damages. The Contractor Plaintiffs and Mr. LaCava were never compelled to join or financially support a union. *See* City Stmt. Of Undisputed Facts for 2nd MSJ at ¶¶ 32-89 ("City Facts"). The Third Amended Complaint vaguely alleges that "the contractor plaintiffs have refrained from submitting bids on several city public-works projects that are subject to a project labor agreement." Dkt. No. 70, ¶ 101. But the Contractor Plaintiffs were not deprived of their opportunity to bid on the two projects at issue in this case, as the City removed the PLA

3

requirements to allow Contractor Plaintiffs to bid. City Facts ¶ 31. Nearly two years after this lawsuit was initiated, Plaintiffs have not established any material facts explaining how they were damaged by the City's use of PLAs.

## III.   Plaintiffs' Attempt to Avoid Lack of Standing Fails

Plaintiffs' attempt to avoid lack of standing fails. *First*, Plaintiffs argue that the Court should evaluate standing not at the time of its voluntary Third Amended Complaint, but rather at the time of its original Complaint. Plaintiffs are wrong. The Third Circuit has applied the Supreme Court's holding in *Rockwell International Corp. v. United States*, 549 U.S. 457 (2007) to hold that an amended complaint is the "operative pleading for standing purposes." *Santomenno ex rel. John Hancock Tr. v. John Hancock Life Ins. Co. (U.S.A.)*, 677 F.3d 178, 185 (3d Cir. 2012) (holding plaintiffs lacked standing where ownership interest was terminated prior to filing of amended pleading). Here, at the time of the Third Amended Complaint, the City had addressed Plaintiffs' First Amendment and competitive bidding concerns by not only removing the PLA requirements from the 15th Street Bridge and Runway Projects, clearing the way for Plaintiff Contractors to bid on those projects, but had also issued an entirely new Executive Order that ensured no contractor employees would be compelled to join a union as a condition to employment on a City project.

Plaintiffs cannot have it both ways. They sought leave of the Court to file a third amended pleading adding a Section 1981 Equal Protection claim, at which point there was no injury-in-fact as to their First Amendment or competitive bidding claims. Plaintiffs lack standing as to these claims.

*Second*, Plaintiffs claim they may assert an Equal Protection and Section 1981 claim based on alleged racial discrimination against the USW because Plaintiff Mr. LaCava, a white

male and USW member, may have been unable to work on some City projects that were subject to a PLA. But this argument is contrary to the undisputed record. Mr. LaCava himself testified that he has had ample employment on construction projects with Road-Con and that he has no particular desire to work on City projects. *See* Ex. M to City 2nd MSJ, LaCava Tr. At 22:14-19.

*Third*, Plaintiffs claim that they need not establish an impact or injury to their speech to have standing to assert a First Amendment claim. But if plaintiffs challenging governmental action are not themselves chilled or impacted in the exercise of their First Amendment rights, they lack a personal stake in the controversy essential to standing. *See Laird v. Tatum*, 408 U.S. 1, 13 (1972); *see also Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734, (2008) (internal quotations omitted) ("Standing is not dispensed in gross.  Rather, a plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought."); *Rumsfeld v. Forum for Acad. & Institutional Rights, Inc.*, 547 U.S. 47, 49 (2006) (A compelled speech violation occurs when the "complaining speaker's own message [is] affected by the speech it was forced to accommodate."); *Harris v. Quinn*, 573 U.S. 616, 657 n.30 (2014) (A compelled speech claim based upon alleged compelled unionization will only be ripe for review when compelled unionization and compulsory payment of dues is imminent.). Plaintiffs again point to Mr. LaCava as having an injury-in-fact that can confer standing on them all. But again, Mr. LaCava has testified that he has never been asked to join or financially support a union so that Road-Con can bid on a City PLA project. These Plaintiffs' First Amendment rights have not been impacted by the government conduct that is challenged here. As a result, they lack standing as to their First Amendment claim.[1]

---

[1] Plaintiffs argue that the question of First Amendment injury is relevant to the merits of their case but not to standing.  But whether viewed through the lens of standing or the merits of

IV.     **Plaintiffs' Request Sweepingly Overbroad Relief With No Justification.**

In their Response Plaintiffs argue that its sweeping relief is appropriate unless the City can articulate here the "extraordinary circumstances" required for PLA inclusion. This is not possible nor required in order for this Court to determine that the future use of PLAs is appropriate. Instead, the extraordinary circumstances are determined at the time of bid, based on a fact specific inquiry. The City cannot determine blanket extraordinary circumstances here, nor would they be extraordinary if they were applied in a general fashion. Plaintiffs' continued request that this Court invalidate all PLAs regardless of their factual context is relief both far beyond their own interest and far beyond any facts before this Court. Plaintiffs essentially are insisting on a sweeping (as well as incorrect) advisory opinion. [2]

V.      **CONCLUSION**

For all the above reasons contained in Defendants' Second Motion for Summary Judgment and this Reply, Defendants respectfully request that the Court grant summary judgment in favor of the City of Philadelphia and James Kenney, in his official capacity as Mayor of the City of Philadelphia.

Date:  December 27, 2021                      Respectfully Submitted,

                                              /s/ Lydia Furst_____
                                              Amy M. Kirby
                                              Deputy City Solicitor
                                              Lydia M. Furst

_____

Plaintiffs' First Amendment claim, the lack of any evidence of impact to Plaintiffs' First Amendment rights is fatal to their First Amendment claim.

[2] For the same reason, it would be an unwarranted and extraordinary burden on this Court to pre-clear the use of every PLA in the future, turning the Court into some kind of super-contracting approval board.  First, Pennsylvania law does not require it. Further, this determination is fact-sensitive and best determined after a review of project requirements under guidelines such as those established by the new Executive Order.

Deputy City Solicitor
City of Philadelphia Law Department

## CERTIFICATE OF SERVICE

I hereby certify that, on the date set forth below, I served a true and correct copy of the foregoing by Notice of Docket Activity sent automatically by CM/ECF on the following counsel who are registered as CM/ECF filing users and have consented to accepting electronic service through CM/ECF:

Walter S. Zimolong
Zimolong, LLC
P.O. Box 552
Villanova, Pennsylvania 19085
(215) 665-0842
wally@zimolonglaw.com

Jonathan F. Mitchell
Mitchell Law PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
(512) 686-3940 (phone)
(512) 686-3941 (fax)
jonathan@mitchell.law

*Counsel for Plaintiffs*

Edward T. Kang
Michael Weinert
Kang Haggerty & Fetbroyt LLC
123 S Broad St
Suite 1670
Philadelphia, PA 19109
215-525-5850
ekang@khflaw.com
mweinert@khflaw.com

*Counsel for Movants/Intervenors*

By:     /s/ Amy M. Kirby
         Deputy City Solicitor

Dated:  December 27, 2021