UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
PHILADELPHIA DIVISION

| | |
|---|---|
| **Road-Con, Inc.**; **Neshaminy Constructors, Inc.**; **Loftus Construction, Inc.**; **PKF-Mark III, Inc.**; and **Scott A. LaCava**,<br><br>                Plaintiffs,<br><br>v.<br><br>**City of Philadelphia**; and **James Kenney**, in his official capacity as mayor of the City of Philadelphia,<br><br>                Defendants. | Case No. 2:19-cv-01667-JS |

**PLAINTIFFS' REPLY TO THE DEFENDANTS' AND INTERVENORS' RESPONSES TO THE PLAINTIFFS' STATEMENT OF MATERIAL FACTS FOR WHICH THERE IS NO GENUINE ISSUE TO BE TRIED**

The plaintiffs respectfully submit this reply to the defendants' and intervenors' responses to the plaintiffs' statement of material facts for which there is no genuine issue to be tried. The plaintiffs will reply only to the paragraphs that the defendants or intervenors have disputed. The plaintiffs will also respond to each of the "additional facts" that the defendants and intervenors have offered.

**I.      Undisputed Facts Regarding The City's Project Labor Agreements**

14.   The plaintiffs acknowledge that the "Philadelphia Public Projects Labor Agreement," which is attached as Exhibit "D" to the Plaintiffs' Requests for Admission, is a "template meant to be modified as needed for each City project that uses a Project Labor Agreement," as well as a "template that the City can modify for particular projects for which a PLA is imposed."

27.   The defendants dispute whether Neshaminy was qualified to perform work on the 15th Street Bridge Project. But Mr. Canuso's sworn affidavit states that Neshaminy *is* qualified to perform this work, and the defendants have failed to produce affidavits or evidence to contradict paragraph 13 of Mr. Canuso's affidavit. Mr. Canuso's affidavit is therefore unrebutted on this point. *See* Canuso Affidavit ¶ 13, attached as Ex. 2 to Pls.' Statement of Undisputed Facts, ECF No. 75-2.

30.   The defendants and intervenors are correct to observe that the city removed its PLA from the 15th Street Bridge Project after the plaintiffs filed their lawsuit. Paragraph 30 should therefore be rephrased to say:

> Because Road-Con, Neshaminy, and Loftus maintain a collective bargaining agreement with the United Steelworkers, they ***could not*** perform work on the 15th Street Bridge Project with their current workforces ***at the time the original complaint in this lawsuit was filed on April 18, 2019***. *See* Affidavit of Albert D. Hoffman ¶ 16 (attached as Exhibit 1); Affidavit of Joseph P. Canuso ¶ 15 (attached as Exhibit 2); Affidavit of Kevin J. Loftus ¶ 15 (attached as Exhibit 3).

There should not be any dispute over this revised version of paragraph 30.

41.   The plaintiffs continue to believe that paragraph 41 is accurate and undisputed because neither the defendants nor the intervenors do assert that *any* of the project labor agreements that the city had *previously* imposed on city contracts allowed the United Steelworkers to perform city work. The hypothetical possibility that the city might impose a future project labor agreement that includes the United Steelworkers does nothing to undermine the truth of paragraph 41, which is phrased in the past tense, and refers to the facts that existed at the time the original complaint was filed.

42.   The plaintiffs continue to believe that paragraph 42 is accurate and undisputed because neither the defendants nor the intervenors do assert that *any* of the project labor agreements that the city had *previously* imposed on city contracts allowed the United Steelworkers to perform city work. The hypothetical possibility that the city might impose a

future project labor agreement that includes the United Steelworkers does nothing to undermine the truth of paragraph 42, which is phrased in the past tense, and refers to the facts that existed at the time the original complaint was filed.

## II.    Undisputed Facts Regarding The City's Project Labor Agreements

44.   The plaintiffs continue to believe that paragraph 44 is accurate and undisputed. The paragraph never uses the word "quota," and the defendants admit that the executive orders "require" diversity goals. All unions and contractors that perform city work subject to a project labor agreement are required to implement the diversity-and-inclusion provisions described in Schedule C of the Philadelphia Public Projects Labor Agreement. It is undisputed that they are required to set diversity goals.

45.   The plaintiffs continue to believe that paragraph 45 is accurate and undisputed. The intervenors complain that paragraph 45 provides "an incomplete recitation to the Executive Order," but they do not dispute the accuracy of its recitation.

46.   The plaintiffs continue to believe that paragraph 46 is accurate and undisputed. The intervenors complain that paragraph 46 provides "an incomplete recitation to the Executive Order," but they do not dispute the accuracy of its recitation.

47.   The plaintiffs continue to believe that paragraph 47 is accurate and undisputed. The "goals" described in Schedule C of the Philadelphia Public Projects Labor Agreement are accurately described as "requirements," because unions and contractors that perform city work subject to a project labor agreement are *required* to set these goals. Section 2(b) of Schedule C provides: "The Union(s) *shall* set participation goals *that will significantly increase* participation of minority males and women." Pls.' Requests for Admission at Ex. D (attached as Exhibit 7) (Philadelphia Public Projects Labor Agreement) (emphasis added). Section 3(b) of Schedule C says: "The Contractors *shall* use their best efforts to add minority males and women to their permanent or steady workforces. The Contractors *shall* provide workforce demographic information to the City in advance of project commencement." *Id.* (emphasis added). And section 3(d) of Schedule C says: "The Contractors

*shall* use their best efforts to meet or exceed the goals established for minority males and women participation in Section 1 of this Schedule C." *Id.* (emphasis added). These are requirements; they are not helpful suggestions or friendly advice.

48. The plaintiffs continue to believe that paragraph 48 is accurate and undisputed. It describes the percentages as "goals." And it is undisputed that unions and contractors are required to adopt these percentages as goals, even if they are not required to meet them. The intervenors complain that paragraph 48 provides "an incomplete recitation to Schedule C to the Philadelphia Public Project Labor Agreement," but they do not dispute the accuracy of its recitation.

49. The plaintiffs continue to believe that paragraph 49 is accurate and undisputed. The "goals" described in Schedule C of the Philadelphia Public Projects Labor Agreement are accurately described as "diversity requirements," because unions and contractors that perform city work subject to a project labor agreement are *required* to set these goals. Section 2(b) of Schedule C provides: "The Union(s) *shall* set participation goals *that will significantly increase* participation of minority males and women." Pls.' Requests for Admission at Ex. D (attached as Exhibit 7) (Philadelphia Public Projects Labor Agreement) (emphasis added). These are requirements; they are not helpful suggestions or friendly advice. The participating unions are *required* to set goals, and they are *required* to "significantly increase participation of minority males and women." The intervenors complain that paragraph 49 provides "an incomplete recitation to Schedule C to the Philadelphia Public Project Labor Agreement," but they do not dispute the accuracy of its recitation.

50. The plaintiffs continue to believe that paragraph 50 is accurate and undisputed. The "goals" described in Schedule C of the Philadelphia Public Projects Labor Agreement are accurately described as "diversity requirements," because unions and contractors that perform city work subject to a project labor agreement are *required* to set these goals. Section 3(b) of Schedule C says: "The Contractors *shall* use their best efforts to add minority males and women to their permanent or steady workforces. The Contractors *shall* provide

workforce demographic information to the City in advance of project commencement." Pls.' Requests for Admission at Ex. D (attached as Exhibit 7) (Philadelphia Public Projects Labor Agreement) (emphasis added). These are requirements; they are not helpful suggestions or friendly advice. The participating contractors are *required* to use their best efforts to add minority males and women to their permanent or steady workforces, and they are *required* to provide workforce demographic information to the city. The intervenors complain that paragraph 50 provides "an incomplete recitation to Schedule C to the Philadelphia Public Project Labor Agreement," but they do not dispute the accuracy of its recitation.

51.   The plaintiffs continue to believe that paragraph 51 is accurate and undisputed. The "goals" described in Schedule C of the Philadelphia Public Projects Labor Agreement are accurately described as "diversity requirements," because unions and contractors that perform city work subject to a project labor agreement are *required* to set these goals. Section 3(d) of Schedule C says: "The Contractors *shall* use their best efforts to meet or exceed the goals established for minority males and women participation in Section 1 of this Schedule C." Pls.' Requests for Admission at Ex. D (attached as Exhibit 7) (Philadelphia Public Projects Labor Agreement) (emphasis added). These are requirements; they are not helpful suggestions or friendly advice. The participating contractors are *required* to use their best efforts to meet or exceed the goals established for minority males and women. The intervenors complain that paragraph 51 provides "an incomplete recitation to Schedule C to the Philadelphia Public Project Labor Agreement," but they do not dispute the accuracy of its recitation.

### III.   Undisputed Facts Regarding The City's Unwillingness To Include The United Steelworkers In Its Project Labor Agreements

52.   The plaintiffs continue to believe that paragraph 52 is accurate and undisputed. The intervenors complain that this material fact is "based on or constitutes" hearsay, but this material fact is not hearsay or based on hearsay for several reasons. First, any statements made by Mr. Zimolong are not hearsay. *See* Fed. R. Evid. 801(c)(1) ("'Hearsay'

means a statement that . . . the declarant does not make"). So any averments in Mr. Zimolong's declaration supported or based upon letters or e-mails that *he* authored are not hearsay. *See* Zimolong Decl. ¶¶ 20–23; 25–30; Exs. G, J, L–M (ECF Nos. 57-8, 57-10, 57-12 to 57-14). In addition, any factual assertions from Mr. Zimolong regarding the *existence* of letters authored by others are not hearsay either. *See* Fed. R. Evid. 801(c)(2) ("'Hearsay' means a statement that . . . a party offers in evidence to prove the truth of the matter asserted in the statement."); *see also* Zimolong Decl. ¶¶ 7–16; 18–19; 24, 31–34; Exs. A–F, K, N (ECF Nos. 75-1 to 75-7, 57-12, 57-14); Zimolong Decl. ¶ 2 ("I have personal knowledge of the matters contained in this declaration, and all of the facts stated in this declaration are true and correct.").

Second, the contents of the letters authored by others are admissible because they are being offered to impeach the credibility of Richard Lazer, who has stated that the city's sole reason for excluding the United Steelworkers from its project labor agreements was because the Steelworkers were unwilling to agree to the city's diversity-and-inclusion regime. *See Goodman v. Pennsylvania Turnpike Comm'n*, 293 F.3d 655, 666 (3d Cir. 2002) ("A party can attack a witness's credibility using otherwise inadmissible evidence, but cannot pretend that inadmissible hearsay evidence is being used to impeach a witness so that the jury will hear its substance."). And the contents of those letters are also admissible under the business-records exception and the residual exception to hearsay rule. *See* Fed. R. Evid. 803(6)(b); Fed. R. Evid. 807.

Third, any statements in Mr. Zimolong's declaration supported by e-mails, letters, or statements made by the city of Philadelphia, its representatives, or its agents are not hearsay. *See* Fed. R. Evid. 801(d)(2); *see also* Zimolong Decl. ¶¶ 17, 24; Exs. G, K (ECF Nos. 57-8, 57-11).

The defendants' objections to Mr. Zimolong's affidavit based on *Maldonado v. Ramirez*, 757 F.2d 48, 51 (3d Cir. 1985), are meritless. Mr. Zimolong's affidavit is based

on "personal knowledge," *see* Zimolong Decl. ¶ 2 ("I have personal knowledge of the matters contained in this declaration, and all of the facts stated in this declaration are true and correct."), and it sets forth facts, not conclusions.

53. The plaintiffs continue to believe that paragraph 53 is accurate and undisputed, for the reasons set forth in our reply to ¶ 52, *supra*.

54. The plaintiffs continue to believe that paragraph 54 is accurate and undisputed, for the reasons set forth in our reply to ¶ 52, *supra*.

55. The plaintiffs continue to believe that paragraph 55 is accurate and undisputed, for the reasons set forth in our reply to ¶ 52, *supra*.

56. The intervenors correctly observe that the letter from the city's law department to Joseph M. Padavan states: "During the last 15 years, no other labor organizations except those affiliated with the Philadelphia Building and Construction Trade has been identified as capable or stepped forward to request inclusion in a City sponsored project labor agreement." Zimolong Decl. Ex. B (ECF No. 75-12). The defendants' objections to Mr. Zimolong's affidavit based on *Maldonado v. Ramirez*, 757 F.2d 48, 51 (3d Cir. 1985), are meritless for the reasons set forth in our reply to ¶ 52, *supra*.

57. The plaintiffs continue to believe that paragraph 57 is accurate and undisputed. The intervenors complain that paragraph 57 provides "an incomplete paraphrase" and "an incomplete recitation" of the city law department's letter of April 12, 2011, to Joseph M. Padavan, but they do not dispute the accuracy of its recitation. The defendants' objections to Mr. Zimolong's affidavit based on *Maldonado v. Ramirez*, 757 F.2d 48, 51 (3d Cir. 1985), are meritless for the reasons set forth in our reply to ¶ 52, *supra*.

58. The plaintiffs continue to believe that paragraph 58 is accurate and undisputed, for the reasons set forth in our reply to ¶ 52, *supra*. The intervenors complain that paragraph 58 provides "an incomplete recitation" of the letter, but they do not dispute the accuracy of its recitation.

59.  The plaintiffs continue to believe that paragraph 59 is accurate and undisputed, for the reasons set forth in our reply to ¶ 52, *supra*. The intervenors also complain that paragraph 59 provides "an incomplete recitation" of the letter, but they do not dispute the accuracy of its recitation.

60.  The plaintiffs continue to believe that paragraph 60 is accurate and undisputed, for the reasons set forth in our reply to ¶ 52, *supra*.

61.  The plaintiffs continue to believe that paragraph 61 is accurate and undisputed, for the reasons set forth in our reply to ¶ 52, *supra*.

62.  The plaintiffs continue to believe that paragraph 62 is accurate and undisputed, for the reasons set forth in our reply to ¶ 52, *supra*.

63.  The plaintiffs continue to believe that paragraph 63 is accurate and undisputed, for the reasons set forth in our reply to ¶ 52, *supra*.

64.  The plaintiffs continue to believe that paragraph 64 is accurate and undisputed, for the reasons set forth in our reply to ¶ 52, *supra*.

65.  The plaintiffs continue to believe that paragraph 65 is accurate and undisputed, for the reasons set forth in our reply to ¶ 52, *supra*.

66.  The plaintiffs continue to believe that paragraph 66 is accurate and undisputed, for the reasons set forth in our reply to ¶ 52, *supra*.

67.  The plaintiffs continue to believe that paragraph 67 is accurate and undisputed, for the reasons set forth in our reply to ¶ 52, *supra*. The intervenors complain that paragraph 67 provides "an incomplete recitation" of the letter, but they do not dispute the accuracy of its recitation.

68.  The plaintiffs continue to believe that paragraph 68 is accurate and undisputed, for the reasons set forth in our reply to ¶ 52, *supra*. The intervenors complain that paragraph 68 provides "an incomplete recitation" of the letter, but they do not dispute the accuracy of its recitation. Paragraph 68 does not use the word "quota" or "quotas," so the intervenors have no basis for objecting on the ground that "the letter specifies the use of diversity goals,

not diversity quotas." Schedule C of the Philadelphia Public Projects Labor Agreement still *requires* participating unions to adopt the city's goals, so it is accurate to describe Schedule C as containing "diversity-and-inclusion *requirements*."

69. The plaintiffs continue to believe that paragraph 69 is accurate and undisputed, for the reasons set forth in our reply to ¶ 52, *supra*. The intervenors complain that paragraph 69 provides "an incomplete recitation" of the letter, but they do not dispute the accuracy of its recitation. Paragraph 68 does not use the word "quota" or "quotas," so the intervenors have no basis for objecting on the ground that "the letter specifies the use of diversity goals, not diversity quotas." Schedule C of the Philadelphia Public Projects Labor Agreement still *requires* participating unions to adopt the city's goals, so it is accurate to describe Schedule C as containing "diversity-and-inclusion *requirements*."

70. The plaintiffs continue to believe that paragraph 70 is accurate and undisputed, for the reasons set forth in our reply to ¶ 52, *supra*.

71. The plaintiffs continue to believe that paragraph 71 is accurate and undisputed, for the reasons set forth in our reply to ¶ 52, *supra*.

74. The plaintiffs continue to believe that paragraph 74 is accurate and undisputed, for the reasons set forth in our reply to ¶ 52, *supra*.

75. The plaintiffs continue to believe that paragraph 75 is accurate and undisputed, for the reasons set forth in our reply to ¶ 52, *supra*.

76. The plaintiffs continue to believe that paragraph 76 is accurate and undisputed, for the reasons set forth in our reply to ¶ 52, *supra*.

78. The plaintiffs acknowledge that Mr. Lazer's responded to Mr. Zimolong by e-mail on March 14, 2019. *See* Pls.' Statement of Material Facts, ECF No. 75, at ¶ 80. But it remains undisputed that Mr. Lazer did not reply to Mr. Zimolong's e-mail of March 5, 2019, until Mr. Zimolong sent a follow-up e-mail on March 14, 2019.

89. The plaintiffs continue to believe that paragraph 89 is accurate and undisputed, for the reasons set forth in our reply to ¶ 52, *supra*.

94.   The plaintiffs continue to believe that paragraph 94 is accurate and undisputed, for the reasons set forth in our reply to ¶ 52, *supra*.

96.   The plaintiffs continue to believe that paragraph 96 is accurate and undisputed, for the reasons set forth in our reply to ¶ 52, *supra*. Neither the defendants nor the intervenors deny that the existence of the city's diversity-and-inclusion goals prevented the United Steelworkers from joining the PLA as a signatory. In all events, the statement in paragraph 11 of Mr. Lazer's declaration speaks for itself and the Court can decide how Mr. Lazer's statement should be characterized. No one questions the existence or authenticity of Mr. Lazer's statement in paragraph 11 of his declaration.

97.   The plaintiffs continue to believe that paragraph 97 is accurate and undisputed, for the reasons set forth in our reply to ¶ 52, *supra*. Neither the defendants nor the intervenors deny that the existence of the city's diversity-and-inclusion goals prevented the United Steelworkers from joining the PLA as a signatory. In all events, the statement in paragraph 11 of Mr. Lazer's declaration speaks for itself and the Court can decide how Mr. Lazer's statement should be characterized. No one questions the existence or authenticity of Mr. Lazer's statement in paragraph 11 of his declaration.

## IV.   Undisputed Facts Regarding The City Of Philadelphia's Discrimination Against Steelworker-Affiliated Contractors

99.   The plaintiffs continue to believe that paragraph 99 is accurate and undisputed. Mr. Hoffman stated in his declaration that the city failed to sign a contract with Road-Con during the required 60-day window. Hoffman Dep. 32:9–18 (ECF No. 75-14) ("That's actually happened on two occasions over the last five years where we bid and we were a low bidder and the City failed to execute the contract within the 60-day limit that's in that contract for the City. The other project was at the Philadelphia Airport. It did not include a PLA. It was to put some safety bollards in front of the over—or in front of the terminal. And, again, the 60 days was allowed to expire without them signing the contract with us."). That qualifies as a "refusal" to sign the contract. Either way, the parties to do not dispute

that: (a) Road-Con submitted the lowest responsible bid for the Philadelphia Airport project; and (b) the city did not sign a contract with Road-Con for that project despite the fact that it submitted the lowest responsible bid.

100. The plaintiffs continue to believe that paragraph 100 is accurate and undisputed. The statement in Mr. Hoffman's declaration is not hearsay and would be admissible at trial because it was made by the city of Philadelphia, its representatives, or its agents. *See* Fed. R. Evid. 801(d)(2). Mr. Hoffman's declaration makes clear that this statement was made the city's representatives and agents:

> A. Same situation back then, we were low bidder, there was no PLA on the project, so we bid it. We were the lowest responsible bidder. The City was not moving forward with an award. We inquired about it. *They said they were having some internal issues*.
>
> We went down for a scope meeting to review the project, and during the meeting, off the record, *they had said they really did not want to award the project to us*. And at that time, we let the award expire, we did not fight that situation.
>
> Q. Was a reason given as to why the City did not want to award the project to Road-Con?
>
> A. Verbally, off the record, *I asked them* to let me know if there was a problem, and verbally, off the record, *he said we were not of the right union type and it was causing some internal friction inside the City*.

Hoffman Dep. 35:9–18 (ECF No. 75-14) (emphasis added).

102. The plaintiffs continue to believe that paragraph 102 is accurate and undisputed, for the reasons provided in ¶¶ 99–100. In addition, the statement in paragraph 102 does not assert the city's reasons for failing to execute the contracts with Road-Con.

## V.  Undisputed Facts Regarding Executive Order 5-20

103. The plaintiffs agree that the Executive Order should be referred to as "5-20" rather than "4-20."

104. The plaintiffs continue to believe that paragraph 104 is accurate and undisputed, because Executive Order 5-20 reaffirms the need for "diversity and inclusion goals" and

does not purport or attempt to replace the regime in Schedule C of Philadelphia Public Projects Labor Agreement with anything else. *See* Executive Order 5-20 §§ 1(a)(iv), 4(c) (ECF No. 75-15). Executive Order 5-20 rescinds Executive Order 8-15, but it does not claim to rescind Schedule C of the Philadelphia Public Projects Labor Agreement, which was not part of Executive Order 8-15.

### PLAINTIFFS' RESPONSE TO THE DEFENDANTS' ADDITIONAL FACTS

1. Undisputed.

2. Undisputed.

3. Undisputed.

4. Undisputed, but with the following clarification: Road-Con also considers whether the project has a PLA in deciding whether to bid. *See* Hoffman Dep. 14:13–22 (attached as Exhibit 14 to plaintiffs' statement of undisputed facts).

5. Undisputed.

6. Undisputed.

7. Undisputed.

8. Undisputed.

9. Undisputed.

10. Undisputed.

11. Undisputed.

12. Undisputed.

13. Undisputed.

14. Undisputed.

15. Undisputed.

16. Undisputed.

17. Undisputed.

18. Undisputed.

19. Undisputed.

20. Undisputed.

21. Undisputed.

22. Undisputed.

23. Undisputed.

24. Undisputed.

25. Undisputed.

26. Undisputed.

27. Undisputed.

28. Undisputed.

29. Undisputed.

30. Undisputed.

31. Undisputed.

32. Undisputed.

33. Undisputed.

34. Undisputed.

35. Undisputed.

36. Undisputed.

37. Undisputed.

38. Undisputed.

39. Undisputed.

40. Undisputed.

41. Undisputed.

42. Undisputed.

43. Undisputed.

44. Undisputed.

45. Undisputed.

46. Undisputed.

47. Undisputed.

48. Undisputed.

49. Undisputed.

50. Undisputed.

51. Disputed in part. The plaintiffs admit that "[t]he City's PLAs also include diversity and inclusion goals." The plaintiffs dispute the existence of a casual relationship between the city-imposed PLAs and the increased diversity of workforces on City projects that use PLAs. Mr. Lazer's declaration says that he has "seen improvement in the diversity of workforces used on City projects that require PLAs," but correlation is not evidence of causation. *See* Lazer Decl. (2020) ¶ 6 (attached as Exhibit E to the city's statement of material facts, ECF No. 80-1). And Lazer's subjective belief that "these improvements are due, at least in part, to the City's use of PLAs" is not evidence of a causal relationship. *See id.*

52. Undisputed.

53. Undisputed.

54. Disputed in part. The plaintiffs admit that Executive Order 5-20 requires project labor agreements to "[i]nclude diversity goals for Appropriate Labor Organizations and contractors." Executive Order 5-20 § 4(c) (Attachment 1 of Exhibit E to the city's statement of material facts, ECF No. 80-1). The plaintiffs dispute that this requirement appears in section 4(d) of Executive Order 5-20; it appears in section 4(c) of the executive order. *See id.* The plaintiffs dispute the city's claim that section 4(c) is the only provision of Executive Order 5-20 that addresses diversity-and-inclusion requirements, as section 1(a)(iv) of the executive order defines "appropriate labor organization" as a union that "has identified member diversity as an organizational value and has established objectives for maintaining and increasing diversity among its apprentice and journeyman members." Executive Order 5-20 § 1(a)(iv) (Attachment 1 of Exhibit E to the city's statement of material facts, ECF

No. 80-1). Finally, the plaintiffs dispute the city's insinuation that section 4(c) of Executive Order 5-20 repeals, either expressly or by implication, the diversity-and-inclusion requirements that appear in Schedule C of the Philadelphia Public Projects Labor Agreement (which the city refers to as the "template PLA"), as Executive Order 5-20 contains no language that purports to alter or repeal Schedule C. *See* Philadelphia Public Projects Labor Agreement (attached as Exhibit "D" to Exhibit 7 to the Plaintiffs' Statement of Material Facts, ECF No. 75-7).

55. Disputed in part. The plaintiffs also deny that the city's template PLA "contains no requirements related to the racial makeup of workforces," as section 2(b) of Schedule C of the city's template PLA says:

> The Union(s) shall set participation goals that will significantly increase participation of minority males and women. Such goals shall be consistent with the Commission Report and such Commission updates as may be issued.

Philadelphia Public Projects Labor Agreement (attached as Exhibit "D" to Exhibit 7 to the Plaintiffs' Statement of Material Facts, ECF No. 75-7). Sections 3(b) and 3(d) of Schedule C also specify diversity requirements for participating contractors. Section 3(b) says:

> The Contractors shall use their best efforts to add minority males and women to their permanent or steady workforces. The Contractors shall provide workforce demographic information to the City in advance of project commencement.

*Id.* And section 3(d) says:

> The Contractors shall use their best efforts to meet or exceed the goals established for minority males and women participation in Section 1 of this Schedule C.

*Id.* These provisions indisputably impose "requirements related to the racial makeup of workforces on City projects." The plaintiffs admit that article IX, section 2 of the city's template PLA says that "[t]he parties also agree that increasing participation by women and minorities employees on the Public Works Project is a desirable goal. Accordingly, the parties shall undertake the activities identified in Schedule C to support the City, Union and

Contractor objective of increased opportunities for participation in the Union(s) and for actual work performed." *Id.* The plaintiffs admit that Schedule C of the city's template PLA states the city's goals for workforce diversity in City and City-funded construction projects, which are "at least" 32% of all construction employment hours for male minorities and 7% of all construction employment hours for women. *Id.* at Schedule C, § 1(c). The plaintiffs dispute the city's insinuation that these goals do not bind the unions and contractors that work on city projects subject to a PLA. The plaintiffs also admit that section 3(b) of Schedule C of the city's template PLA requires city contractors to "use their best efforts to add minority males and women to their permanent or steady workforces," and that section 3(d) of Schedule C requires city contractors to "use their best efforts to meet or exceed the goals established for minority males and women participation in Section 1."

56.   Disputed in part. The plaintiffs admit that section 2 of Schedule C of the city's template PLA requires participating unions to "set participation goals that will significantly increase participation of minority males and women," to "actively recruit minority males and women," and to collect and report demographic data to city officials. The plaintiffs dispute the city's claim that contractors and labor organizations "are not required to satisfy any quota or percentage for minority participation." Section 2(b) of Schedule C requires participating union goals that "will significantly increase participation of minority males and women." Philadelphia Public Projects Labor Agreement (attached as Exhibit "D" to Exhibit 7 to the Plaintiffs' Statement of Material Facts, ECF No. 75-7). That indisputably establishes a quota, because it takes the existing percentages of minority and female workers as a floor below which the union cannot fall, and compels the union to set a new floor for minority and female workers that is "significantly" higher than the existing percentages. Section 3(d) also establishes a quota and percentage for city contractors, because it requires them to "use their best efforts to *meet or exceed* the goals established for minority males and women participation in Section 1 of this Schedule C." *Id.* (emphasis added).

57. Disputed in part. The plaintiffs admit that the United Steelworkers have never been a signatory to a City PLAs. The plaintiffs dispute that this exclusion occurred "[f]or a variety of reasons." The evidence is clear that the United Steelworkers were excluded because the Steelworkers were unable or unwilling to agree to the diversity-and-inclusion regime that appears in Schedule C of the Philadelphia Public Projects Labor Agreement, and that this was the but-for cause of the Steelworkers' exclusion from the city's PLAs. *See* Declaration of Richard Lazer (2020) ¶ 11 ("[I]n or around 2018 the City engaged in discussions with the United Steelworkers in an attempt to include the United Steelworkers as a signatory to the City's PLAs. The discussions were ultimately unsuccessful ***because*** the United Steelworkers believed that their organization could not comply with the diversity and inclusion goals of the City's PLAs." (emphasis added)) (attached as Exhibit E to the city's statement of material facts, ECF No. 80-1).

58. Undisputed.

59. Disputed in part. The plaintiffs admit that Mr. Kilbert's letter of January 3, 2019, stated that the United Steelworkers was "concerned" about the third-party monitoring required by Schedule C. The plaintiffs dispute that Mr. Kilbert's letter said that the United Steelworkers was "committed to increasing the diversity of its members." Instead, Mr. Kilbert wrote:

> The USW desires to increase the representation of minority men and women in construction occupations, and it would take seriously its obligations under Schedule C if it became a party to a City of Philadelphia PLA.

Decl. of Walter S. Zimolong ¶ 18 (ECF No. 75-12); Ex. H to Zimolong Decl. (ECF No. 75-12). The plaintiffs also dispute the city's insinuation that Mr. Kilbert's letter expressed concerns only about the third-party monitoring required by Schedule C. Mr. Kilbert's letter also expressed concern about the extent of the city's "participation goals" and the "types of outreach efforts" that would be required. *See id.*

60. Undisputed.

61. Disputed. The plaintiffs are not alleging that "the City did not allow the United Steelworkers to sign on to the City's PLAs because the United Steelworkers' membership was not sufficiently diverse." The plaintiffs have alleged only that the United Steelworkers were unwilling to agree to the diversity-and-inclusion requirements in Schedule C of the Philadelphia Public Project Labor Agreement, and that the existence of the this diversity-and-inclusion regime is what prevented the United Steelworkers from joining the city's PLA as a signatory. These facts are not in dispute.

62. Disputed. Section 2(b) of Schedule C requires participating union goals that "will significantly increase participation of minority males and women." Philadelphia Public Projects Labor Agreement (attached as Exhibit "D" to Exhibit 7 to the Plaintiffs' Statement of Material Facts, ECF No. 75-7). That indisputably establishes a quota, because it takes the existing percentages of minority and female workers as a floor below which the union cannot fall, and compels the union to set a new floor for minority and female workers that is "significantly" higher than the existing percentages. Section 3(d) also establishes a quota and percentage for city contractors, because it requires them to "use their best efforts to *meet or exceed* the goals established for minority males and women participation in Section 1 of this Schedule C." *Id.* (emphasis added).

63. Undisputed.

64. Disputed in part. The plaintiffs admit that the Commonwealth Court of Pennsylvania issued an opinion in *Allan Myers, L.P. v. Department of Transportation*, 202 A.3d 205 (Pa. Cmwlth. 2019), on January 11, 2019. The plaintiffs dispute the city's characterization of the opinion in *Allan Myers. Allan Myers* holds that Pennsylvania's competitive-bidding laws prohibit project labor agreements absent "extraordinary circumstances,"[1] and it disapproved PennDOT's PLA not only because it conferred preferential treatment on the United Steelworkers but also because it discriminated against non-union contractors. *See*

---

1. *See Allan Myers*, 202 A.3d at 215 ("The use of a PLA is permitted where the contracting agency can establish extraordinary circumstances, and PennDOT did not make that demonstration in this case.").

*id.* at 214 ("[T]he PLA does not place nonunion contractors "on an equal footing" with union contractors. Unlike contractors affiliated with the Local Unions or United Steelworkers, a nonunion contractor that bids on the Markley Street Project cannot use its own experienced workforce." (citation omitted)). The plaintiffs also dispute the city's claim that *Allan Myers* "impacted the City's negotiations with the United Steelworkers, because the City's proposal for including the United Steelworkers had been based on the PennDOT model that *Allan Myers* disapproved." The city cites no evidence to support its claim that *Allan Myers* affected the city's negotiations with the United Steelworkers,[2] and (more importantly) *Allan Myers* disapproved project labor agreements even when they treat all participating unions equally. If the city were seeking to comply with *Allan Myers*, then it would have amended its project labor agreements to allow non-union contractors to participate with their own workforces, as required by that decision. *See Allan Myers*, 202 A.3d at 214 ("[T]he PLA does not place nonunion contractors "on an equal footing" with union contractors. Unlike contractors affiliated with the Local Unions or United Steelworkers, a nonunion contractor that bids on the Markley Street Project cannot use its own experienced workforce." (citation omitted)). The city's failure to take these steps in response to *Allan Myers* belies the city's claim that its continued exclusion of the United Steelworkers was caused by the city's desire to comply with *Allan Myers*. Finally, a project labor agreement that categorically excludes the United Steelworkers violates the holding of *Allan Myers* no less than a PLA that allows United Steelworkers to participate but exempts the Steelworkers from requirements imposed on other unions. *See id.* at 214–15.

65.   Disputed in part. The plaintiffs admit that the city repeatedly ignored communications from the United Steelworkers and representatives of Steelworker-affiliated contractors in early 2019. Decl. of Walter S. Zimolong ¶¶ 18–36 (ECF No. 75-12); Exs. H–O to

---

2.   The city cites only Mr. Lazer's letter of November 26, 2018, which is attached as Exhibit F to the city's statement of material facts (ECF No. 80-1). But this letter pre-dates the ruling in *Allan Myers* by 46 days, and it makes no mention of *Allan Myers* or an anticipated ruling in that case.

Zimolong Decl. (ECF No. 75-12). The plaintiffs dispute the city's claim that its non-responsiveness was caused by a desire to comply with the *Allan Myers* opinion. The only evidence that the city cites to support this claim is Mr. Lazer's 2021 declaration, but Mr. Lazer's declaration never says that he and the city failed to respond to the inquiries from Steelworker-affiliated contractors because of *Allan Myers*. Instead, Mr. Lazer's declaration says:

> I understood the *Allan Myers* decision to mean that the City could not treat one signatory labor organization differently from the others, and I became concerned that the United Steelworkers would not agree to this subsection of Schedule C and that the manner in which we were attempting to include the United Steelworkers would not be in compliance with *Allan Myers*.

Decl. of Richard Lazer (2021) ¶ 8 (attached as Ex. H to city's statement of material facts). None of this purports to explain why Mr. Lazer (and the city) failed to respond to the repeated inquiries from Steelworker-affiliated contractors.

66. Disputed in part. The plaintiffs admit that they filed their initial complaint in April 2019. The plaintiffs also do not dispute the statement in paragraph 13 of Mr. Lazer's 2020 declaration, which says that the city "has refrained from using PLAs on projects" since the plaintiffs sued, with the one exception described in paragraph 13 of Mr. Lazer's declaration. Decl. of Richard Lazer (2020) ¶ 13 (attached as Ex. E to city's statement of material facts). The plaintiffs dispute the city's claim that it has "suspended its use of PLAs entirely" because: (1) Mr. Lazer acknowledges that PLAs continue to be used on projects that were originally bid before this lawsuit was filed, *see* Decl. of Richard Lazer (2020) ¶ 13 (attached as Ex. E to city's statement of material facts); and (2) Executive Order 5-20 authorizes and encourages the continued use of PLAs, *see* Decl. of Richard Lazer (2020), attachment 1 (attached as Ex. E to city's statement of material facts).

67. Undisputed.

68. Undisputed.

69. Disputed. Mr. Lazer has not "stated unequivocally" that the United Steelworkers will be provided an opportunity to sign on to future PLAs. His actual statement is hedged: "If the City decides to use a PLA on a project in the future ***and it is a project for which the United Steelworkers may be an appropriate labor organization***, the United Steelworkers will be provided an opportunity to sign on to the PLA before bids are solicited for the project." Decl. of Richard Lazer (2020) ¶ 16 (emphasis added) (attached as Ex. E to city's statement of material facts).

70. Undisputed.

## PLAINTIFFS' RESPONSE TO THE INTERVENORS' ADDITIONAL FACTS

1. Undisputed.

2. Disputed. The plaintiffs acknowledge that the text of Executive Order 5-20 says that project labor agreements "are a valuable public contracting approach for ensuring that a building or construction work project is completed at the lowest reasonable cost, by the highest quality and most professional work force, and in a timely manner without labor disruptions such as strikes, lockouts, or slowdowns." Executive Order 5-20 (ECF No. 75-15). The plaintiffs, however, deny that the city's motivation for imposing project labor agreements was to attain these goals, because the city has not produced evidence of its actual motivations for imposing project labor agreements..

3. Undisputed.

4. Undisputed.

5. Undisputed.

6. Undisputed.

7. Undisputed.

8. Undisputed.

9. Undisputed.

10. Undisputed.

11. Undisputed.

12. Disputed. The intervenors mischaracterize the deposition testimony of Mr. Loftus. Mr. Lotfus acknowledged that every project labor agreement that he has read is different, but Mr. Lotfus was not limiting that remark to project labor agreements "used by the City," and he did not state or imply in his deposition testimony that he has read more than one project labor agreement "used by the City."

Respectfully submitted.

 /s/ Jonathan F. Mitchell

<table>
<tr>
<td>

WALTER S. ZIMOLONG
Pennsylvania Bar No. 89151
Zimolong, LLC
P.O. Box 552
Villanova, Pennsylvania 19085
(215) 665-0842 (phone)
wally@zimolonglaw.com

</td>
<td>

JONATHAN F. MITCHELL
Pennsylvania Bar No. 91505
Mitchell Law PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
(512) 686-3940 (phone)
(512) 686-3941 (fax)
jonathan@mitchell.law

</td>
</tr>
<tr>
<td>

Dated: December 27, 2021

</td>
<td>

*Counsel for Plaintiffs*

</td>
</tr>
</table>

# CERTIFICATE OF SERVICE

I certify that on December 27, 2021, I served this document through CM/ECF upon:

AMY M. KIRBY
LYDIA FURST
Deputy City Solicitor
City of Philadelphia Law Department
1515 Arch Street, 15th Floor
Philadelphia, Pennsylvania 19102
(215) 683-3566
amy.kirby@phila.gov
lydia.furst@phila.gov

*Counsel for Defendants*

EDWARD T. KANG
SUSAN MOON O
123 South Broad Street, Suite 1670
Philadelphia, Pennsylvania 19109
(215) 525-5850 (phone)
(215) 525-5860 (fax)
ekang@khflaw.com
so@khflaw.com

*Counsel for Intervenors*

         /s/ Jonathan F. Mitchell
         JONATHAN F. MITCHELL
         *Counsel for Plaintiffs*