IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ROAD-CON, INC., et al. | : | CIVIL ACTION |
| | : | |
| v. | : | No. 19-1667 |
| | : | |
| THE CITY OF PHILADELPHIA, et al. | : | |

**M E M O R A N D U M**

**Chief Judge Juan R. Sánchez**                                                                                           **March 27, 2023**

Plaintiffs Road-Con, Inc., Neshaminy Constructions, Inc., Loftus Construction, Inc., PFK-Mark III, and Scott LaCava brought this action against Defendants the City of Philadelphia and Mayor James Kenney ("the City") in 2019, alleging the City's use of Project Labor Agreements ("PLAs") violated Plaintiffs' federal, state, and local rights. Mechanical Contractors Association of Eastern Pennsylvania and National Electrical Contractors Association ("the Associations") intervened as Defendants. The Court now considers the only remaining claim on cross motions for summary judgment. This claim concerns the City's use of diversity and inclusion goals to encourage employment of women and minorities on construction projects, which Plaintiffs argue violates their Equal Protection rights. Because Plaintiffs have not shown they are subject to differential treatment, their Equal Protection claim will be denied.

**BACKGROUND**[1]

The City's PLA includes Schedule C, "Increasing Opportunities for Women and Minorities in the Building Trades Union(s) and the Public Works Projects." PLA Schedule C, ECF No. 75-7 at 141-43. Schedule C has three sections which outline expectations for the City, the union signatory, and the contractor signatory. *Id.* The first section sets goals for City construction projects

---

[1] Since the Court writes for the Parties, it only includes the provisions relevant to this claim.

1

to include minority men on at least thirty-two percent of all employment hours, and women on at least seven percent of all employment hours. *Id.* at Section 1(c), ECF No. 75-7 at 141. To support these goals, Schedule C states contractors "shall use their best efforts to meet or exceed the goals." *Id.* at Section 3(d), ECF No. 75-7 at 143. It also states contractors shall (1) use apprenticeship programs to support the City's diversity goals and (2) try to add women and minorities to their workforces.[2] *Id.* at Sections 3(a)-(b), ECF No. 75-7 at 142-43.

**DISCUSSION**

In Count II, Plaintiffs assert a constitutional claim under the Equal Protection Clause of the Fourteenth Amendment, arguing Schedule C "discriminates among city contractors based on the racial makeup of their workforce." Third Am. Compl. ¶ 143, ECF No. 70. The Equal Protection Clause of the Fourteenth Amendment provides "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, § 1. To prevail on an equal protection claim under 42 U.S.C. § 1983, a plaintiff must show the government intentionally discriminated against them by treating two or more persons or groups differently on the basis of a protected characteristic. *See, e.g.*, *Hassan v. City of New York*, 804 F.3d 277, 298 (3d Cir. 2015). Then, if the plaintiff makes this showing, the government bears the burden of demonstrating the

---

[2] The exact language is as follows:

> (a)   The Contractors shall support the City and Union efforts to increase the participation of minority males and women in the Public Works Project through apprenticeship programs and other initiatives.
>
> (b)   The Contractors shall use their best efforts to add minority males and women to their permanent or steady workforces. The Contractors shall provide workforce demographic information to the City in advance of project commencement.
>
> . . . .
>
> (d)   The Contractors shall use their best efforts to meet or exceed the goals established for minority males and women participation in Section 1 of this Schedule C.

classification is valid under the appropriate standard (*i.e.*, strict scrutiny, intermediate scrutiny, or rational basis review). *Id.* at 298, 301. The City and the Associations argue Plaintiffs have not shown differential treatment, and therefore have not shown an equal protection injury. Defs.' Suppl. Br. 7-10, ECF No. 107; Int.-Defs.' Suppl. Br. 2-3, ECF No. 106. The Court agrees.

"An equal protection claim must allege facts to show that plaintiffs received treatment different from that received by other similarly-situated persons." *Johnson v. City of Phila.*, 397 F. Supp. 3d 692, 710 (E.D. Pa. 2019), *aff'd*, 975 F.3d 394 (3d Cir. 2020). To establish differential treatment, a plaintiff must prove they are "(1) a member of a protected class; (2) similarly situated to members of an unprotected class; and (3) treated differently from members of the unprotected class." *Green v. Chester Upland Sch. Dist.*, 89 F. Supp. 3d 682, 693 (E.D. Pa. Jan. 30, 2015) (citing *Oliveira v. Twp. of Irvington*, 41 F. App'x 555, 559 (3d Cir. 2002); *Keenan v. City of Phila.*, 983 F.2d 459, 465 (3d Cir. 1992)). In equal protection cases involving contracting, the third element occurs when "a discriminatory classification prevent[s] the plaintiff from competing on an equal footing." *Adarand Constructors, Inc. v. Pena*, 515 U.S. 200, 211 (1995) (internal quotation marks and citation omitted).

Plaintiffs in this case argue "the city is discriminating against the contractor plaintiffs by requiring them to add minority males and women to their permanent or steady workforces as a condition of receiving city work." Pls.' Resp. Defs.' Br. Supp. Mot. Summ. J. 11, ECF No. 85 (quoting Schedule C) (internal quotation marks and emphasis omitted). They also contend "a contractor that has mostly white employees, and any contractor that falls short of the city's diversity goals, must undertake its best efforts to change the racial makeup of its workforce as a condition of receiving city work" and that this requirement "foist[s] a best efforts requirement only on the subset of city contractors that are insufficiently female or minority." *Id.* at 12-13 (quoting

3

Schedule C) (internal quotation marks omitted). In short, Plaintiffs argue that contractors whose employees are majority male and white are being treated differently from contractors with a greater percentage of female and minority employees.

There is not, however, a shred of evidence on the record to support this contention. Plaintiffs have never had to add women or minorities to their workforce under a PLA, because they have never been a PLA signatory. (And, as the Court already held, this was due to violations of Pennsylvania's competitive bidding law, not due to race.) To the extent this argument might apply to future bids or contracts, Plaintiffs have not shown their employees are majority male and white, thus forcing them to compete an on unequal footing with hypothetical contractors who have more racial and gender diversity in their workforce.[3] Indeed, the Associations point to Plaintiffs' agreement with the United Steelworkers ("USW"), which states: "[t]he Union agrees to supply qualified minority and female workers . . . when requested by the Company." Agreement Art. VI § 14, ECF No. 75-7 at 23. Because Plaintiffs are contractually bound to the USW, and the USW agrees to provide qualified minority and female workers upon request, there is simply no merit to the argument that Plaintiffs will be disadvantaged compared to other contractors.

Plaintiffs also argue the City discriminates against the individual plaintiff, Scott LaCava, "by limiting the available construction employment hours available to white men and discouraging contractors and unions from employing white men on city construction projects." Pls.' Resp. Defs.'

---

[3] In contrast to Plaintiffs' case herein, the case law has examples of plaintiff contractors who showed differential treatment in bidding and contracting. *See, e.g.*, *Adarand Constructors*, 515 U.S. at 205 (considering a claim by a contractor who submitted a low bid, but lost to a contractor certified as a small business controlled by socially and economically disadvantaged individuals); *Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville, Fla.*, 508 U.S. 656, 658 (1993) (challenging city ordinances that precluded non-minority-owned businesses from bidding on certain contracts); *City of Richmond v. J.A. Croson Co.*, 488 U.S. 469, 477 (1989) (considering a requirement to subcontract at least 30% of city contracts to minority-owned businesses, while also exempting minority-owned general contractors from this requirement).

Br. Supp. Mot. Summ. J. 6, ECF No. 85. This argument also lacks merit: even if a contractor fully meets the City's goals and assigns 7% of construction hours to women (whether minority or white) and 30% of construction hours to minority men, it would still leave 63% of the construction hours – well over half – for white men like LaCava. In a case such as this one, "[t]he only harm to white males is that they must compete against a larger pool of qualified applicants. This, of course, is not an appropriate objection, and does not state a cognizable harm." *Hammer v. Ashcroft*, 383 F.3d 722, 725 (8th Cir. 2004) (internal quotation marks and citation omitted). Plaintiffs' argument is also belied by the facts of this case. LaCava is a member of the USW, which, as stated *supra*, has its own diversity goals. He has been steadily employed for years and does not have any particular desire to work on City construction projects. Defs.' Statement Material Facts ¶¶ 47-48, ECF No. 80. Accordingly, LaCava has not been subjected to differential treatment.

Because Plaintiffs have not shown they have suffered, or will suffer, differential treatment due to the City's diversity and inclusion goals, the Court will deny Plaintiffs' Motion for Summary Judgment on their Equal Protection claim and grant the Motions of the City and the Associations.[4] An appropriate Order follows.

BY THE COURT:

  /s/ Juan R. Sánchez
Juan R. Sánchez, C.J.

---

[4] This holding eliminates the need to consider the second step in an equal protection analysis, legal justification.