**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 23-1782
_____

ROAD-CON, INC.; NESHAMINY CONSTRUCTORS,
INC.; LOFTUS CONSTRUCTION, INC.; PKF-MARK III,
INC.; SCOTT A. LACAVA,
Appellants

v.

THE CITY OF PHILADELPHIA; MAYOR OF
PHILADELPHIA

MECHANICAL CONTRACTORS ASSOCIATION OF
EASTERN PENNSYLVANIA, INC., D/B/A
MECHANICAL AND SERVICE CONTRACTORS
ASSOCIATION OF EASTERN PENNSYLVANIA;
NATIONAL ELECTRICAL CONTRACTORS
ASSOCIATION, PENN-DEL-JERSEY CHAPTER,
(Intervenors in District Court)
_____

On Appeal from the United States District Court for the
Eastern District of Pennsylvania
(D.C. Civil No. 2:19-cv-01667)
District Judge: Honorable Juan R. Sánchez
_____

Argued April 3, 2024

Before: RESTREPO, MATEY, and McKEE, *Circuit Judges*

(Filed: October 29, 2024)
_____

Jonathan F. Mitchell **[ARGUED]**
111 Congress Avenue
Suite 400
Austin, TX 78701
    *Counsel for Appellants*

Craig R. Gottlieb **[ARGUED]**
City of Philadelphia Law Department
1515 Arch Street
17th Floor
Philadelphia, PA 19102
    *Counsel for Appellees*

Edward T. Kang
Susan M. O
Kang Haggerty
123 S. Broad Street
Suite 1950
Philadelphia, PA 19109
    *Counsel for Intervenor-Appellees*

_____

OPINION OF THE COURT
_____

2

MATEY, *Circuit Judge*.

Philadelphia's policies prevented Plaintiffs from bidding on public contracts. Because their suit raises a justiciable controversy under Article III of the Constitution, we will vacate the District Court's judgment and remand for further proceedings.

**I.**

Road-Con, Inc. (Road-Con), Neshaminy Constructors (Neshaminy), Inc., Loftus Construction, Inc., (Loftus) and PKF-Mark III (PKF) are contractors working in the Philadelphia area. Scott LaCava worked for Road-Con. All regularly handled public works initiatives for the Pennsylvania Department of Transportation (PennDOT) and the Southeastern Pennsylvania Transit Authority, but none have worked on public projects for the City of Philadelphia. Since 1995, Philadelphia has required "project labor agreements" (PLAs), a kind of collective-bargaining agreement with "conditions of employment for a particular construction project," including terms "recognizing a union as the workers' exclusive bargaining representative and paying the workers union wages." *Pennsylvania v. Cmty. Coll. of Allegheny Cnty.*, 81 F.4th 279, 283 (3d Cir. 2023).[1] In 2011, Philadelphia

---

[1] Philadelphia started using PLAs under a pilot program established by Executive Order 5-95. In 2011, Philadelphia city agencies were told they "should" use PLAs for all projects with estimated construction budgets of $5 million or more absent "clear countervailing considerations." App. 617. That number was lowered to $3 million or more in 2015, and

3

introduced a standard Template for PLAs.[2] Article III of the Template, titled Union Recognition and Employment, required contractors and their employees to recognize, become members of, and pay dues to designated unions to work on any public works project. Those designated unions must be "affiliated with the Philadelphia Building and Construction Trades Council," App. 750, an organization of more than fifty local unions. Schedule C of the Template, titled Increasing Opportunities for Women and Minorities in the Building Trades Union(s) and the Public Works Projects, required contractors to "use their best efforts to add minority males and women to their permanent or steady workforces" that meet or exceed "the goals established" by Philadelphia.[3] App. 671. The

---

Philadelphia began using PLAs "on a majority of the public-works construction projects" above that threshold. App. 731.

[2] Executive Order 15-11 established the Template in 2011, which was then modified by Executive Order 8-15 in 2015.

[3] Schedule C required Philadelphia to "establish goals for workforce diversity in City and City-funded construction projects." App. 669. Section 1(c) of the Schedule established those goals "based on the March 2009 Report of the Mayor's Advisory Commission on Construction Industry Diversity." App. 669. Section 2(b) of the Schedule required unions to "set participation goals that will significantly increase participation of minority males and women," and those goals must be "consistent with the [Mayor's Advisory] Commission [on Construction Industry Diversity] Report and such Commission updates as may be issued." App. 670. Sections 3(a) through (d) of the Schedule requires contractors to 1) "support the City and Union efforts to increase the participation of minority males

4

established goals called for male minorities to work 32% of all construction employment hours for a project, and 7% worked by women.

In April 2019, Plaintiffs challenged the PLAs used for projects at the 15th Street Bridge in Philadelphia and runway at the Northeast Philadelphia Airport.[4] Road-Con, Neshaminy, and Loftus all alleged their interest in bidding for the 15th Street Bridge Project, and Road-Con wanted to bid for the Airport Project. But all were ineligible because of their existing collective bargaining agreements with the United Steelworkers,[5] which is "neither a member nor an affiliate" of

---

and women . . . through apprenticeship programs and other initiatives"; 2) "use their best efforts to add minority males and women to their permanent or steady workforces" and "provide workforce demographic information to the City in advance of project commencement"; and 3) "use their best efforts to meet or exceed the goals established for minority males and women participation in . . . Schedule C." App. 5 n.2.

[4] In the Third Amended Complaint filed in September 2021, Plaintiffs alleged that Philadelphia's use of the Template violated their rights under 1) the First Amendment, as applied via the Fourteenth Amendment and interpreted by the Supreme Court in *Janus v. American Federation of State, County, & Municipal Employees, Council 31*, 585 U.S. 878 (2018), 2) the Fourteenth Amendment Equal Protection Clause, 3) 42 U.S.C. § 1981, 4) Pennsylvania state competitive bidding laws, and 5) the Philadelphia Home Rule Charter.

[5] The United Steelworkers is "North America's largest industrial union," with "1.2 million members and retirees." United Steelworkers, *Our Union*, https://perma.cc/WTQ9-

5

the Philadelphia Building and Construction Trades Council. App. 40. Nor did the United Steelworkers commit to the workforce diversity goals. Five days after Plaintiffs sued, Philadelphia rescinded the PLAs for both projects.[6]

The District Court granted summary judgment to Philadelphia. As relevant to this appeal, the District Court concluded that Plaintiffs 1) lacked standing to challenge the Template's union-eligibility requirement; and 2) failed to show the Template's diversity requirement caused any harm on

---

SX52. Road-Con, Neshaminy, and Loftus are members of the Pennsylvania Heavy and Highway Contractors Bargaining Association, whose collective-bargaining agreement with the United Steelworkers governs the terms of employment. PKF is not a member of the Pennsylvania Heavy and Highway Contractors Bargaining Association but has signed a separate collective bargaining agreement with United Steelworkers Local 15024. Scott LaCava is a member of the United Steelworkers.

[6] In 2020, while this suit was still pending, Philadelphia's Mayor rescinded Executive Order 8-15 to "[m]ake clear that no employee shall be required to be or become a member of an Appropriate Labor Organization or pay any agency fees to an Appropriate Labor Organization, as a condition of performing work under the Project Labor Agreement." App. 859 (Executive Order 5-20). Further, "[a]ny provision in a Project Labor Agreement that requires an employee to be, or become, a member of Appropriate Labor Organization, or to pay any agency fees to an Appropriate Labor Organization, shall be unenforceable, null, and void." App. 859.

account of their race. Seeing error in those conclusions, we will vacate and remand.[7]

## II. The First Amendment Claims

Plaintiffs allege that Article III of the Template compels city contractors to join a specified union to work on a public project and so violates the First Amendment, as asserted via a § 1983 claim. As remedies, they seek declaratory injunctive relief and nominal and compensatory damages. The District Court agreed that the Template violates the First Amendment, but determined Plaintiffs lacked standing. That was error.

### A. Plaintiffs Have Standing

Standing is an "irreducible constitutional minimum" that requires a plaintiff to "establish (1) an injury in fact (2) that is fairly traceable to the challenged conduct . . . [and] (3) a remedy that is likely to redress that injury." *Uzuegbunam v. Preczewski*, 592 U.S. 279, 285 (2021) (citation and internal quotations omitted). The plaintiff bears the burden of showing these three elements, *Associated Builders & Contractors W. Pa. v. Cmty. Coll. of Allegheny Cnty.*, 81 F.4th 279, 287 (3d

---

[7] The District Court had jurisdiction under 28 U.S.C. §§ 1331, 1343, and 1367, and we have jurisdiction under 28 U.S.C. § 1291. We "review anew the District Court's summary judgment decisions, applying the same standard it must apply." *Ellis v. Westinghouse Elec. Co.*, 11 F.4th 221, 229 (3d Cir. 2021). To prevail on summary judgment, the moving party is required to "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

Cir. 2023), and likewise "must demonstrate standing separately for each form of relief sought," *Friends of the Earth v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000). "[S]tanding is assessed 'at the time the action commences'"— that is, at the time the plaintiff brought the lawsuit. *Carney v. Adams*, 592 U.S. 53, 60 (2020) (quoting *Friends of the Earth*, 528 U.S. at 191). A "case or controversy exists . . . when at least one plaintiff establish[es] that [she] ha[s] standing to sue." *Murthy v. Missouri*, 144 S. Ct. 1972, 1985 (2024) (citation and internal quotations omitted) (alterations in original). As we explain, Road-Con, Neshaminy, and Loftus have standing and "[i]f at least one plaintiff has standing, the suit may proceed." *Biden v. Nebraska*, 143 S. Ct. 2355, 2365 (2023).

The District Court determined that Plaintiffs failed to establish an injury in fact,[8] "'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016), *as revised*, (May 24, 2016) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). "When a plaintiff seeks retrospective (backward-looking) relief in the form of money damages, they can establish standing through evidence of a past injury." *Yaw v. Del. River Basin Comm'n*, 49 F.4th 302, 317–18 (3d Cir. 2022). "But when a plaintiff seeks *prospective* (forward-looking) relief in

---

[8] Although Defendants "do not dispute causation or redressability," App. 21 n.49, we "are under an independent obligation to examine [our] own jurisdiction," *United States v. Hays*, 515 U.S. 737, 742 (1995) (citation and internal quotations omitted). We agree the alleged injury is traceable to Philadelphia's Template and can be redressed with damages and prospective relief.

the form of an injunction or a declaratory judgment, they must show that they are 'likely to suffer *future* injury.'" *Id.* at 318 (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983)).

The complaint satisfies this standard. The First Amendment guards against abridging the freedom of speech and grants a "corresponding right to associate with others in pursuit of a wide variety of political, social, economic, educational, religious, and cultural ends." *Roberts v. U.S. Jaycees*, 468 U.S. 609, 622 (1984); *see also Janus*, 585 U.S. at 891–92. As this Court explained in another case involving a PLA, "a plaintiff . . . suffers injury to his legally protected First Amendment interest . . . when the state forces him to speak . . . or associate." *Associated Builders*, 81 F.4th at 288. That includes contractors and their employees who are "forced to recognize a union as the exclusive representative of employees, hire employees from a union's job-referral system[], and financially contribute to unions in order to work on PLA-covered public projects." *Id.* at 289 (citation and internal quotations omitted) (alteration in original). And that is the case here.

The alleged injury is also concrete and particularized. An injury is concrete when it is "real" and "not abstract," *Spokeo*, 578 U.S. at 340, with a "close relationship to harms traditionally recognized as providing a basis for a lawsuit in American courts," including "harms specified by the Constitution itself," *TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021). And "because Plaintiffs allege an injury to themselves, not someone else, there is no particularity issue." *Associated Builders*, 81 F.4th at 288. Under *Associated Builders*, Plaintiffs' injury is concrete because it is a "harm to

9

their legally protected First Amendment interest" in voluntary association. *Id.* at 289.

Finally, the alleged injuries are actual and imminent. Philadelphia's use of the Template left Plaintiffs ineligible to work on city projects, given their excluded union affiliation. *See* App. 493–94 (affidavit from Loftus), 488–89 (Neshaminy), 484–86 (Road-Con). Because standing is assessed at the time of the suit, *Carney*, 592 U.S. at 60, the Template blocked Plaintiffs from winning work for the 15th Street Bridge and Airport Projects, unless they switched their union affiliation.

Plaintiffs' future injuries are also imminent. "[F]uture injury [is imminent] if the threatened injury is *certainly impending*, or there is a *substantial risk* that the harm will occur." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (citation and internal quotations omitted) (emphases added); *see also Murthy*, 144 S. Ct. at 1986. As the Supreme Court explained in *Adarand Constructors, Inc. v. Pena*, imminent injury considers whether the contractor "has made an adequate showing that sometime in the relatively near future it will bid." 515 U.S. 200, 211 (1995). In contrast, where a contractor declares that "they never have and never will bid on PLA-covered projects" and shows no "desire to . . . [or] inten[t] to work on PLA-covered public projects," the injury lacks imminence. *Associated Builders*, 81 F.4th at 289–90.

Plaintiffs' future injuries—their ineligibility to work on PLA-covered projects without changing unions[9]—are

---

[9] *See also* App. 42 ("Because Road-Con, Neshaminy, and Loftus maintain a collective bargaining agreement with the

10

imminent because several intended to bid on PLA-covered projects. *See* Oral Arg. Tr. at 31:7–32:13 (Plaintiffs "were interested in applying or bidding for work on the 15th Street Bridge Project and the [Airport] Project at the moment the lawsuit was filed."). Road-Con intended to bid on the 15th Street Bridge and Airport Projects. Neshaminy and Loftus were "interested in submitting bids for the 15th Street Bridge Project at the time the original complaint was filed." App. 41. That is imminence under *Adarand*, 515 U.S. at 212, because "an intent to bid is the proxy we may use for assuming an injury is imminent." *Associated Builders*, 81 F.4th at 290.

### B. Plaintiffs' Claims Are Not Moot

The District Court did not reach Philadelphia's separate argument—pressed again on appeal—that Plaintiffs' First Amendment claims are now moot. Philadelphia says there is no longer a live controversy because, after Plaintiffs sued, the PLAs for the 15th Street Bridge and Airport Projects were withdrawn and, later still, Philadelphia revised the Template to preclude compelled unionization. We disagree.

Mootness evaluates a plaintiff's "personal interest in the dispute" throughout the proceedings. *Uzuegbunam*, 592 U.S. at 282. A "case generally is moot" when "in the course of litigation[,] a court finds that it can no longer provide a plaintiff with any effectual relief." *Id.*; *see also Lutter v. JNESO*, 86 F.4th 111, 130 (3d Cir. 2023). Mootness, like standing, turns on the relief sought. *See Doe v. Delie*, 257 F.3d 309, 314 (3d Cir. 2001). And Philadelphia, as "the party seeking to

---

United Steelworkers, they cannot perform work on the 15th Street Bridge Project with their current workforces.").

11

demonstrate the loss of standing during the pendency of the litigation[,] bears the burdens of production and persuasion." *Lutter*, 86 F.4th at 130; *West Virginia v. EPA*, 597 U.S. 697, 719 (2022). Philadelphia does not carry that burden.

First, Plaintiffs seek damages for the alleged First Amendment violations. And "an award of nominal damages by itself can redress a past injury." *Uzuegbunam*, 592 U.S. at 282–83, 290 (citing *Webb v. Portland Mfg. Co.*, 29 F. Cas. 506, 508 (C.C.D. Me. 1838) (Story, J.) ("The law tolerates no farther inquiry than whether there has been the violation of a right . . . . When a right is violated, that violation 'imports damage in the nature of it' and 'the party injured is entitled to a verdict for nominal damages.'")).[10] Philadelphia's changed conduct after the suit was commenced does not alter that outcome. Nor does it moot Plaintiffs' claims for compensatory damages, for past violations of their rights. *See Phillips v. Borough of Keyport*, 107 F.3d 164, 177 (3d Cir. 1997) (en banc) (holding that Plaintiffs' § 1983 damages claim was not mooted, even though the defendant municipality had changed the offending ordinance); *Khodara Env't, Inc. ex rel. Eagle Env't L.P. v. Beckman*, 237 F.3d 186, 196 (3d Cir. 2001) (holding that a claim for damages based on the past application of a law

---

[10] *See also Burns v. PA Dep't of Corr.*, 544 F.3d 279, 284 (3d Cir. 2008) (rejecting mootness based on availability of nominal damages); *Delie*, 257 F.3d at 314 & n.3 (describing how nominal damages survive mootness because "availability of damages or other monetary relief almost always avoids mootness" (citation omitted)); *see also* 13C Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice & Procedure: Jurisdiction § 3533.3 (3d ed. updated 2024) ("Nominal damages also suffice to deflect mootness.").

12

invested the plaintiff "with a continuing, concrete stake in the outcome of this litigation that has not been redressed by the passage of" an amended law).

Second, Plaintiffs pair their demand for damages with a request for prospective relief, including a declaration that the Template violates the First Amendment, and a permanent injunction against Philadelphia from imposing the Template on future projects. This remains a live controversy because "[i]t is well settled that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice." *Friends of the Earth*, 528 U.S. at 189 (citation and internal quotations omitted). Put differently, a defendant may not moot a case "by the simple expedient of suspending its challenged conduct after it is sued." *Fed. Bureau of Investigation v. Fikre*, 601 U.S. 234, 241 (2024). Rather, the "defendant claiming that its voluntary compliance moots a case bears the *formidable burden* of showing that it is *absolutely clear* the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth*, 528 U.S. at 190 (citation and internal quotations omitted) (emphases added). This standard is the same "for governmental defendants no less than for private ones." *Fikre*, 601 U.S. at 241.

Philadelphia responds to this "formidable burden" by noting it is unlikely to return to the old Template compelling affiliation with the Philadelphia Building and Construction Trades Council because of the Supreme Court's decision in

13

*Janus*.[11] That was the result in *Hartnett v. Pennsylvania State Education Ass'n*, which held that the legal change effected by *Janus* demonstrated mootness in circumstances that are lacking here. 963 F.3d 301, 306–07 (3d Cir. 2020).

Unlike in *Hartnett*, in which the defendant conceded that under *Janus* its previous scheme violated the First Amendment, *id*. at 307, Philadelphia has never conceded error. Instead, Philadelphia argued that "its past usage of PLAs did not violate the First Amendment rights of Plaintiff[s] . . . even under *Janus*, because discovery in this case revealed no instances of compelled speech or compelled association." Dist. Ct. Dkt. 79 at 4 n.1. Although it "acknowledge[d] that *Janus* altered the law of freedom of association and compelled speech," Philadelphia only noted that it "re-evaluat[ed]" its practices and "decided to change" them "going forward." Dist. Ct. Dkt. 79 at 4 n.1. That is not a concession of a past error. Mere voluntary cessation "because of a new statute or a ruling in a completely different case," while still maintaining "that its conduct was lawful all along" is insufficient. *Hartnett*, 963 F.3d at 306.

Then there is the timing. After *Janus*, the defendants in *Hartnett* "immediately" ceased the challenged conduct, 963 F.3d at 307, but here Philadelphia admits it "did not immediately respond to *Janus*," Response Br. 34; *see also* Oral Arg. Tr. at 19:17 (conceding that "[i]t . . . took a while"). That is an understatement. The Executive Order rescinding the

---

[11] *Allan Myers v. PennDOT* also held that PennDOT violated state competitive bidding laws by utilizing PLAs that placed different classes of bidders on unequal footing. 202 A.3d 205, 210–16 (Pa. Commw. Ct. 2019).

14

Template compelling unionization was signed over two years after *Janus*, and five days after this suit was filed. That course of conduct makes it more likely that litigation, not a change in law, prompted Philadelphia's choice. *See United States v. Gov't of V.I.*, 363 F.3d 276, 285 (3d Cir. 2004) (rejecting mootness based on voluntary cessation where the conduct occurred, as here, "*just five days after the [plaintiff] moved to invalidate it*" because it "strongly suggest[ed] that the impending litigation was the cause of the termination" and thus provided "no assurance" that it would not happen again (emphasis added)). Taken together, Plaintiffs' First Amendment claims are not moot.

### III. The Equal Protection Claims

The District Court granted Philadelphia summary judgment because Plaintiffs had "not shown an equal protection injury," since they could not prove "differential treatment." App. 5–6. And it found that Plaintiffs' § 1981 claim failed because "race was not a but for cause of their inability to work on City projects with PLAs." App. 25. We will vacate both determinations and remand.

#### A. Standing

We start with Plaintiffs' standing to raise an Equal Protection claim, applying the same tests to these claims for 1) damages, 2) a declaration that Schedule C is unlawful, and 3) an injunction preventing Philadelphia from enforcing Schedule C. The Supreme Court has explained that if "the government erects a barrier that makes it more difficult for members of one group to obtain a benefit than it is for members of another group," then "a member of the former group seeking to

15

challenge the barrier need not allege that he would have obtained the benefit but for the barrier in order to establish standing." *N.E. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville*, 508 U.S. 656, 666 (1993). Rather, "[t]he injury in fact in a[] . . . case of this variety is the denial of equal treatment from the imposition of the barrier, not the ultimate inability to obtain the benefit." *Id.* (internal quotations omitted); *see also Hassan v. City of New York*, 804 F.3d 277, 294 (3d Cir. 2015), *as amended* (2016) ("Unequal treatment is a type of personal injury [that] ha[s] long [been] recognized as judicially cognizable." (citation and internal quotations omitted)). This is because a "discriminatory classification is itself a penalty," and thus "qualifies as an actual injury for standing purposes, where a citizen's right to equal treatment is at stake." *Hassan*, 804 F.3d at 290 (citation and internal quotations omitted).

In contracting cases, the Supreme Court has further recognized that "the injury in fact is the inability to compete on an equal footing in the bidding process," which does not require a showing that a party "would have received a contract." *N.E. Fla. Chapter of Associated Gen. Contractors of Am.*, 508 U.S. at 658, 666. Instead, standing is satisfied when a party can "demonstrate that it is able and ready to bid on contracts and that a discriminatory policy prevents it from doing so on an equal basis." *Id.* at 666; *see also Adarand*, 515 U.S. at 212.

Those standards are met here because Road-Con, Neshaminy, and Loftus established that they are ready and able to bid on the projects covered by Schedule C and intend to do so. *See Adarand*, 515 U.S. at 211–12. And this same intent to bid in the future is enough to support Plaintiffs' claim for

16

prospective relief. *See id.* at 212; *cf. Schurr v. Resorts Int'l. Hotel, Inc.*, 196 F.3d 486, 495 (3d Cir. 1999) (finding no standing for prospective relief for an Equal Protection challenge where there was no evidence of future action).

Philadelphia responds that Plaintiffs' Equal Protection claim belongs to their union, United Steelworkers, which has not filed suit. But the possibility that another party might also have standing to sue does not defeat the claims filed. Rather, "that hundreds or thousands (or even millions) of other persons may have suffered the same injury does not change the individualized nature of the asserted rights and interests at stake." *Hassan*, 804 F.3d at 291. The "right to equal protection of the laws" is "*personal*," *Adarand*, 515 U.S. at 227, and "where a plaintiff is asserting [his or her] own [equality] right, a claim of discrimination, even where it affects a broad class, is not an abstract concern or generalized grievance," *Hassan*, 804 F.3d at 291 (citation and internal quotations omitted) (alterations in original). Plaintiffs have shown that they suffered an Equal Protection injury, and that is all standing requires.[12] And because Plaintiffs have standing for their Equal Protection claim, they also have standing to raise their claim under § 1981. *See Gratz v. Bollinger*, 539 U.S. 244, 276 n.23 (2003); *see also Contractors Ass'n of E. Pa., Inc. v. City of Philadelphia*, 6 F.3d 990, 995–96 (3d Cir. 1993).

---

[12] Causation and redressability are also satisfied. Plaintiffs have shown that their injury is fairly traceable to Philadelphia's implementation of Schedule C, and that their requested relief would remedy that alleged harm.

17

## B. Intentional Discrimination

Claims under § 1983 alleging an Equal Protection violation require proof of "purposeful discrimination" or "different treatment from that received by other individuals *similarly situated*." *Shuman ex rel. Shertzer v. Penn Manor Sch. Dist.*, 422 F.3d 141, 151 (3d Cir. 2005); *Hassan*, 804 F.3d at 294; *see also Stradford v. Sec. Pa. Dep't. of Corr.*, 53 F.4th 67, 73 (3d Cir. 2022). Once that showing is satisfied, the burden shifts to the defendant to demonstrate the classification passes the relevant level of scrutiny. *Hassan*, 804 F.3d at 298–99.

"[D]irect evidence of [discriminatory] intent is supplied by the policy itself" when the policy is "facially discriminatory, meaning that the policy by its own terms" singles out a group "for different treatment." *Id.* at 294–95. That is the case here, as Schedule C mandated a percentage of construction hours based on race and sex. And that "express classification" is sufficient because "the protected trait by definition plays a role in the decision-making process, inasmuch as the policy explicitly classifies people on that basis." *Id.* at 295 (citation and internal quotations omitted). Intentional discrimination shown, we will remand to the District Court to analyze the Template's Schedule C under the appropriate level of scrutiny.[13] As to Plaintiffs' § 1981 claim,

---

[13] "[T]he Fourteenth Amendment requires strict scrutiny of all race-based action by state and local governments." *Adarand*, 515 U.S. at 222. The question of which level of scrutiny to apply to racial quotas or goals created by state and local governments was already resolved in

18

the District Court found that "race was not a but for cause of [Plaintiffs'] inability to work on City projects with PLAs." App. 25. Because Plaintiffs' Equal Protection claim can proceed, we will vacate and remand the § 1981 claim as well, expressing no view on the merits.

\* \* \*

We will vacate and remand to the District Court to proceed to considering the merits of Plaintiffs' First Amendment, Equal Protection Clause, and § 1981 claims.

---

*Richmond v. J.A. Croson Co.*, 488 U.S. 469 (1989) because "[a] majority of the Court in *Croson* held that 'the standard of review under the Equal Protection Clause is not dependent on the race of those burdened or benefited by a particular classification,' and that the single standard of review for racial classifications should be 'strict scrutiny.'" *Adarand*, 515 U.S. at 22 (quoting *Croson*, 488 U.S. at 493–94). Schedule C's sex-based classifications are subject to intermediate scrutiny. *United States v. Virginia*, 518 U.S. 515, 533 (1996); *Contractors Ass'n of E. Pa., Inc.*, 6 F.3d at 999.

19